**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1]<br><br>　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 19-12153 (KBO)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., *et al.*,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C.; BDCM OPPORTUNITY FUND IV, L.P.; BLACK DIAMOND COMMERCIAL FINANCE, L.L.C.; SAM FARAHNAK; PHIL RAYGORODETSKY; ROB ARCHAMBAULT; TERRY TAFT; and BOB UNFRIED,<br><br>　　　　　　　　Defendants. | Adv. Proc. No.: 21-51013 (KBO)<br><br>**Re: Adv. D.I. 1** |

**OPENING BRIEF IN SUPPORT OF
<u>INDEPENDENT DIRECTORS' MOTION TO DISMISS</u>**

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783).

BENESCH, FRIEDLANDER, COPLAN &
     ARONOFF LLP

Jennifer R. Hoover (No. 5111)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com

-and-

Sven T. Nylen (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Email: snylen@beneschlaw.com

*Counsel to Defendants Rob Archambault, Terry
Taft, and Bob Unfried*

November 22, 2021

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 2

     A.    The Debtors............................................................................................ 2

     B.    The Equity Sponsor Acquires the Business. ............................................. 4

     C.    Debtors Sell The Vinton Facility And Return Capital To
Their Debt And Equity Holders. ............................................................. 5

     D.    Debtors Continue To Struggle, And Equity Sponsor
Provides Financing On Subordinated Basis To Support
Liquidity Needs. ................................................................................... 6

ARGUMENT ................................................................................................................... 7

    I.    LEGAL STANDARD ...................................................................................... 7

     A.    The Trustee Must Plead A Plausible Claim To Relief. ............................. 7

    II.    ALL CLAIMS AGAINST THE INDEPENDENT DIRECTORS
SHOULD BE DISMISSED. .................................................................... 8

     A.    The Trustee's Breach Of Fiduciary Duty Claim Fails. ............................. 8

     B.    The Trustee's Corporate Waste Claim Fails. ......................................... 14

     C.    The Trustee's Equitable Subordination Claim Fails. ............................. 14

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................7

*In re Ashinc Corporation*,
  629 B.R. 154 (Bankr. D. Del. 2021) ...........................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 570 (2007)) ............................................................................7

*In re Citigroup Inc. S'holder Derivative Litig.*,
  964 A.2d 106 (Del.Ch. 2009)......................................................................13

*In re Cornerstone Therapeutics Inc., Stockholder Litig.*,
  115 A.3d 1173 (Del. 2015) .......................................................................9, 13

*CSH Theatres, LLC v. Nederlander of San Francisco Associates*,
  2015 WL 1839684 (Del. Ch. 2015) ...............................................................3

*Elf Atochem N. Am., Inc., v. Jaffari*,
  727 A.2d 286 (Del. 1999) ..............................................................................3

*Fowler v. UMPC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)...........................................................................7

*Miller v. Anconnect, LLC, et al., (In re Our Alchemy, LLC)*, Ch. 7 Case No. 16-
  11596(KG), Adv. No. 18-50633(KG), 2019 WL 4447541, at *10 (Bankr. D.
  Del. Sept. 16, 2019) .................................................................................8, 10

*Obeid v. Hogan*,
  No. CV 11900-VCL, 2016 WL 3356851 (Del. Ch. June 10, 2016) .................11, 12

*Off. Comm. of Unsecured Creditors v. Comvest Grp. Holdings, LLC* (*In re HH
  Liquidation, LLC*),
  590 B.R. 211 (Bankr. D. Del. 2018) ..............................................................8

*Off. Comm. of Unsecured Creditors v. Kemeny, et al. (In re TEU Holdings, Inc.)*,
  287 B.R. 26 (Bankr. D. Del 2002) ...............................................................13

*R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*,
  2008 WL 3846318 (Del.Ch. 2008) ................................................................3

*In re the Walt Disney Co. Der. Litig.*,
    906 A.2d 27 (Del. 2006) ........................................................................................14

*In re W.J. Bradley Mortg. Capital, LLC*,
    598 B.R. 150 (Bankr. D. Del. 2019) ...................................................................2, 8

**Statutes**

Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. .........................................3

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rule 7012........................................................................7

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................................7

This is the opening brief of Defendants Rob Archambault, Terry Taft, and Bob Unfried (collectively, the "Independent Directors") in support of their motion to dismiss each of the claims asserted against them in this adversary proceeding. For the convenience of the Court, and to promote efficiency, the Independent Directors hereby adopt and incorporate by reference the legal arguments and analyses of the other Defendants in support of their motion to dismiss filed on the date hereof, to the extent relevant, as if fully set forth herein.

## INTRODUCTION

The Complaint[1] brought by George L. Miller as chapter 7 Trustee (the "Plaintiff" or the "Trustee"), seeks a judgment for more than $65 million and other relief on account of damages allegedly suffered by the Debtors resulting from two prepetition transactions:

1.　　The $30 million Distribution paid by Debtor BD LaPlace to BDCM Opportunity Fund IV, L.P. (the "Equity Sponsor") on March 17, 2017; and

2.　　The Debtors' entry into a Subordinated Loan and Security Agreement on or about December 21, 2017 (referred to in the Complaint and herein as the BD Term Loan) and, in connection therewith, the Debtors' grant of junior liens (referred to in the Complaint and herein as the BD Lien Grant) to the Equity Sponsor and an affiliate that provided the BD Term Loan financing to the Debtors.

*See*, *e.g.*, Compl. ¶¶ 1, 62-69, 117-119.

The Independent Directors, along with two individuals who were managing directors of Black Diamond, were members of the Board of Directors of Bayou Steel BD Holdings, L.L.C., and are collectively referred to as the Director Defendants in the Complaint and herein. Compl. ¶¶ 20-24, 51-53. Of the thirteen claims asserted in the Complaint, the Trustee asserts the following three claims against the Director Defendants, each predicated on the Distribution and the BD Lien Grant (together, the "Challenged Transactions"):

---

[1]　　Capitalized terms not otherwise defined herein shall have the meanings provided in the Complaint.

- Ninth Claim: Breach of Fiduciary Duty;

- Eleventh Claim: Corporate Waste; and

- Twelfth Claim: Equitable Subordination.

Compl. ¶¶ 203-211, 217-223.

The Complaint includes only bare conclusory assertions that all Director Defendants somehow "favored the interests of Black Diamond over those of the Debtors (and the Debtors' creditors),"[2] yet fails to allege any specific conduct on the part of the Independent Directors with respect to the Challenged Transactions.  The Trustee cannot circumvent his burden to allege specific facts connecting the Independent Directors to the Challenged Transactions by relying on their mere membership on the Board or formulaic recitations to the elements of his claims.  As a result, the Complaint fails to state claims against the Independent Directors upon which relief can be granted and must be dismissed with prejudice.

## **STATEMENT OF FACTS**[3]

### A.    The Debtors.

The Debtors here are Bayou Steel BD Holdings, L.L.C. ("Bayou Holdings"), BD Bayou Steel Investment LLC ("Bayou Investment"), and BD LaPlace LLC ("BD LaPlace").  Compl. ¶ 1. Bayou Holdings is the 100% owner of both Bayou Investment and BD LaPlace.  *Id.* ¶ 47  The Debtors "recycle[ed] scrap to produce a variety of structural steel, merchant bar, and specialty products."  *Id.* ¶ 15.

---

[2]    Compl. ¶ 57; *see also*, *e.g.*, *id.* ¶¶ 208-210.

[3]    The following facts are based on the allegations in Complaint (which are assumed to be true for purposes of this motion only), documents integral to the Complaint, and documents that are a matter of public record.  *In re W.J. Bradley Mortg. Capital, LLC*, 598 B.R. 150, 164 (Bankr. D. Del. 2019).

Each of the Debtors is a Delaware limited liability company (an "LLC") established pursuant to the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq. (the "Delaware LLC Act").  An LLC is an alternative business entity that "combines corporate-type limited liability with partnership-type flexibility and tax advantages." *Elf Atochem N. Am., Inc., v. Jaffari*, 727 A.2d 286, 290 (Del. 1999).  It is the policy of the Delaware LLC Act to provide maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements, thus providing LLC members with broad discretion to establish the governance of the LLC, including fiduciary duties.[4]

Consistent with those powers, Bayou Investment and BD LaPlace "exclusively vested" their management powers in their sole member and manager, Bayou Holdings (formerly BD Long Products).  *See* Ex. A hereto (the "Bayou Investment LLC Agreement") at § 4.1(a); Ex. B (the "BD LaPlace LLC Agreement") at § 4.1(a).  These LLC agreements further provide that "[n]o Member or Manager shall be liable for breach of any duty (including any fiduciary duty) provided for in the Act or otherwise, other than to the extent not permitted to be eliminated under the Act." Ex. A at § 9.3; Ex. B at § 9.3.

Bayou Holdings, in turn, established a board of directors (the "Board") with the power to "manage the business and affairs of the Company" consistent with the Delaware LLC Act and the terms of the LLC Agreement.  *See* Ex. C (the "Bayou Holdings LLC Agreement") at § 3.1(a).  The

---

[4]     *See* Del. Code Ann. tit. 6, § 18-1101(b), (c), and (e).  "Limited liability companies are creatures of contract, and the Delaware Limited Liability Company Act states that '[i]t is the policy of this chapter to give the maximum effect to the principle of freedom of contract.'" *CSH Theatres, LLC v. Nederlander of San Francisco Associates*, 2015 WL 1839684, at *11 (Del. Ch. 2015) (citing Section 18-1101(b) of Delaware LLC Act).  *See also R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*, 2008 WL 3846318, at *4 (Del.Ch. 2008) ("Delaware's LLC Act leaves to the members of a limited liability company the task of arrang[ing] a manager/investor governance relationship; the Act generally provides defaults that can be modified by contract.") (citations omitted).

Bayou Holdings LLC Agreement contemplates that either the Board or "Class A Members holding at least a majority of the outstanding Class A Units" may authorize company actions in accordance with the Bayou Holdings LLC Agreement.[5]  *Id.* at § 1.6(b).  The Bayou Holdings LLC agreement further specifies that "no Director, Officer or Member shall have any personal liability whatsoever in such Person's capacity as a Director, Officer or Member, . . . to the creditors of the Company or to any other third party, for the debts, liabilities, commitments[,] or any other obligations of the Company or for any losses of the Company."  *Id.* at § 3.9(a).

> **B.     The Equity Sponsor Acquires the Business.**

In 2015, Defendant Black Diamond began exploring the potential purchase of several steel processing facilities from ArcelorMittal.  *See*, *e.g.*, Compl. ¶¶ 30-31.  Though a difficult time for the steel industry, Black Diamond had engineered a turnaround of some of these assets a decade earlier—a "home run," by one account—and believed it could repeat its earlier success.  *Id.* ¶¶ 28-29, 34.  Its diligence revealed that ArcelorMittal had "undermanaged" the plants, as it sought to "quickly generate cash, at the expense of margin and profits."  *Id.* ¶¶ 35-42.

Early the following year, the Equity Sponsor (*i.e.*, Defendant Fund IV)—a private-equity fund managed by Black Diamond—agreed to purchase two steel facilities for $90.2 million: headquarter operations in LaPlace, Louisiana, and a facility in Vinton, Texas.  *Id.* ¶ 43-48.  The purchase price was funded by a combination of equity and debt.  *Id.* ¶ 46.  The Equity Sponsor

---

[5]     The signature page and Exhibit A (List of Members, Outstanding Units and Capital Contributions) to the Bayou Holdings LLC Agreement reflect that Bayou Steel BD Holdings II, L.L.C. is the sole Class A Member.  *See* Ex. C at page 36 and Exhibit A thereto.  The Independent Directors submit that it cannot reasonably be disputed that Bayou Steel BD Holdings II, L.L.C. is an intermediate holding company and ultimately owned by the Equity Sponsor.

made an initial member contribution of $59.6 million and thereafter owned 100% of Bayou Holdings, which in turn owned 100% of Bayou Investment and BD LaPlace. *Id*. ¶ 47.

## C.    Debtors Sell The Vinton Facility And Return Capital To Their Debt And Equity Holders.

Black Diamond began to implement its turnaround plan.  It recruited Alton Davis, an experienced steel-industry executive, to serve as President and Chief Operating Officer.  *See* Compl. ¶¶ 36, 54-55.  Black Diamond appointed as directors two of its own managing directors (Defendants Farahnak and Raygorodetsky), as well as the three Independent Directors unaffiliated with Black Diamond: (1) Bob Unfried (a former steel industry executive), (2) Rob Archambault (a private-equity executive), and (3) Terry Taft (a former metals industry executive).  *Id*. ¶¶ 52-53.

Black Diamond also pursued, for Debtors' benefit, a sale of the Vinton facility.  *Id.* ¶ 61-62.  In December 2016, it sold the Vinton facility to Kyoei Steel for $49 million.  *Id.* ¶ 62.

The sale proceeds were used to return capital to the Debtors' debt and equity holders. Compl. ¶¶ 62-65.  To that end, Debtors reduced the balance on the Revolving Loan.  *Id*. ¶ 63.  In addition, BD LaPlace paid a $30 million Distribution to the Equity Sponsor on March 17, 2017. *Id*. ¶ 69-70.  The Distribution had been contemplated prior to the sale of the Vinton facility (*id*. ¶ 67) and was approved by both BoA and SunTrust under the Revolving Loan agreement, as reflected in the First Amendment to the Revolving Loan entered into on March 16, 2017, *id*. ¶ 68. There is no evidence reflecting the involvement of the Independent Directors in connection with the Distribution (*id*. ¶ 79), and there are no resolutions or written consents of the Board with respect to the Distribution or the First Amendment, *id*. ¶ 80.

**D.      Debtors Continue To Struggle, And Equity Sponsor Provides Financing On Subordinated Basis To Support Liquidity Needs.**

Despite Black Diamond's turnaround efforts, the Debtors' business struggled. *Id*. ¶¶ 93-113.  By late 2017, Debtors were "running out of cash." *Id*. ¶ 114.  Black Diamond "explored injecting cash into the business" through a subordinated loan. *Id*.

In December 2017, the Debtors entered into that certain *Subordinated Loan and Security Agreement* (referred to as the BD Term Loan) with the Equity Sponsor and Defendant Black Diamond Commercial Finance, L.L.C. (referred to as BDCF) as lenders.  *Id*. ¶ 117.  The Term Loan provided an initial $15 million credit line, drawable in increments of $5 million.  *Id*.  In exchange for the Term Loan, the Debtors granted the Equity Sponsor and BDCF a continuing security interest and lien on substantially all their property (referred to as the BD Lien Grant).  *Id*. ¶ 119.  Senior lenders BoA and SunTrust approved the additional borrowing pursuant to the Revolving Loan agreement.  *Id*. ¶¶ 115, 121.

Notwithstanding the cash infusion, the "Debtors' financial and operational difficulties continued." *Id*. ¶ 134.  In a further effort to rehabilitate the Debtors, the Equity Sponsor and BDCF agreed to provide additional capital on several occasions, which was "necessary for Debtors to operate at the most basic level." *Id*. ¶ 150.  The BD Term Loan was twice amended to increase the maximum commitment—first to $30 million (in January 2019), then to $40 million (in May 2019). *Id*. ¶¶ 122-123.  By September 2019, the Debtors had drawn down $33 million on the BD Term Loan. *Id*. ¶ 125.  The "Debtors did not repay any portion of the BD Term Loan." *Id*. ¶ 129.

Despite the additional financing, the Debtors' "operational and financial performance were dismal" and BoA issued default notices under the Revolving Loan while simultaneously undertaking increasing oversight of the Debtors in August through September 2019. *Id*. ¶¶ 150-

52. On October 1, 2019, the Debtors filed voluntary chapter 11 petitions. *Id.* ¶ 153. On February

25, 2020, this Court entered an order converting the bankruptcy cases to chapter 7. *Id.* ¶ 11.

<u>**ARGUMENT**</u>

I.    **LEGAL STANDARD**

    A.    **The Trustee Must Plead A Plausible Claim To Relief.**

    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this

proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, this Court may dismiss

an action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6),

Fed. R. Bankr. P. 7012.

    A motion to dismiss will be granted under Rule 12(b)(6) if the complaint does not "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007)). Courts conduct a two-part analysis to determine whether a plaintiff has met their

burden. *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (analyzing *Twombly*

and *Iqbal*). First, the factual and legal elements of a claim should be separated. The Court must

accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions.

*Id.* Second, the Court must determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a plausible claim for relief. *Id.* In other words, a complaint must do

more than allege the plaintiff's entitlement to relief. *Id.* A complaint has to show such an

entitlement with its facts. *Id.* Where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that

the pleader is entitled to relief. *Id.* This 'plausibility' determination will be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense. *Id.*

## II.    ALL CLAIMS AGAINST THE INDEPENDENT DIRECTORS SHOULD BE DISMISSED.

### A.    The Trustee's Breach Of Fiduciary Duty Claim Fails.

As a threshold matter, the Trustee fails to establish that the Director Defendants owe fiduciary duties to the Debtors.  *See Miller v. Anconnect, LLC, et al., (In re Our Alchemy, LLC)*, Ch. 7 Case No. 16-11596(KG), Adv. No. 18-50633(KG), 2019 WL 4447541, at *10 (Bankr. D. Del. Sept. 16, 2019) ("The Trustee must plead sufficient facts showing both the existence of a fiduciary duty and that the fiduciary breached that duty.").  The Complaint treats the Debtors—three different LLCs—as a singular entity with a singular governing board.  *See* Compl. ¶ 51 ("Black Diamond had the right to appoint all members of the Debtors' Board of Directors, and it did so.").  Similarly, in conclusory fashion, the Complaint alleges that the "Director Defendants owed fiduciary duties of loyalty and care to the Debtors."  Compl. ¶ 204.  As such, the Trustee does not even attempt to separately allege the existence of fiduciary duties on a company-by-company and director-by-director basis as required by Delaware law.  *See Off. Comm. of Unsecured Creditors v. Comvest Grp. Holdings, LLC* (*In re HH Liquidation, LLC*), 590 B.R. 211, 274 (Bankr. D. Del. 2018) ("Delaware courts are clear that a breach of fiduciary duty analysis must occur on a company-by-company and director-by-director basis.").  For this reason alone, the fiduciary duty claim should be dismissed.

Furthermore, each of the Debtors' LLC agreements[6] contain provisions that either eliminate fiduciary duties or exculpate the Independent Directors such that the fiduciary duty claims against them are barred.  Therefore, the breach of fiduciary duty claims against the

---

[6]    An LLC's "Operating Agreement should be the point of departure for a Trustee claiming breaches of fiduciary duties."  *In re W.J. Bradley Mortgage Capital, LLC*, 598 B.R. 150, 164, 166 (Bankr. D. Del., 2019) (finding LLC agreement to be integral document in connection with considering motion to dismiss fiduciary duty claim).

Independent Directors must be dismissed.  *See*, *e.g.*, *In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1775-76 (Del. 2015) ("A plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct.").[7]

Even assuming *arguendo* that the Independent Directors owe fiduciary duties to the Debtors or are not otherwise immunized based on these exculpatory provisions, the Trustee fails to specifically allege that the Independent Directors breached any fiduciary duties.  The insufficiency of the pleading is fatal for multiple reasons.  *First*, the Trustee does not allege any specific facts as to any Independent Director authorizing the Distribution or BD Lien Grant.  *Second*, the Trustee admits that his claim against the Independent Directors is deficient with respect to the Distribution.  *Finally*, analogies to Delaware corporations do not salvage the Trustee's allegations.

### 1.    <u>The Trustee Does Not Allege Specific Facts.</u>

The Complaint is devoid of any facts connecting the Independent Directors to the Challenged Transactions.  This Court has previously discussed the necessity of alleging facts to demonstrate a breach of fiduciary duties:

> A complaint fails to state a claim against an alleged officer for breach of fiduciary duty when it fails to allege facts demonstrating that (1) he took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in doing so .... *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del. 2008).
>
> To state a plausible claim for a breach of fiduciary duty, the plaintiff should allege specific conduct by each individual officer or director in authorizing the challenged transaction.  *In re PennySaver USA Publ'g, LLC*, 587 B.R.

---

[7]    *See* brief in support of other Defendants' motion to dismiss for further discussion of this issue.

445, 465-66 (Bankr. D. Del. 2018) (holding that the facts a trustee must show to establish a fraudulent transfer include (1) the "specific facts as to which transactions a particular defendant authorized ... (2) what authority a particular defendant had to approve such transactions" and (3) the Trustee must not lump defendants together (without supplying specific facts as to each defendant's wrongdoings)."; *In re Conex Holdings, LLC*, 514 B.R. 405, 413 (Bankr. D. Del. 2014) (dismissing a breach of fiduciary claim for failing to plead with specificity about which individual defendant authorized the challenged transaction); *In re Troll Commc'ns, LLC*, 385 B.R. 110, 120 (Bankr. D. Del. 2008) (dismissing a breach of fiduciary claim because the complaint was vague and lacked adequate detail about each defendant's conduct).

*Our Alchemy*, at *10.

Here, the Complaint includes allegations concerning the planning and implementation of the Distribution (Compl. ¶¶ 65-78), but fails to plead any facts demonstrating specific conduct on the part of any of the three Independent Directors in connection with the Distribution. Similarly, the Complaint includes allegations concerning the implementation of the BD Term Loan (Compl. ¶¶ 114-126), but fails to plead any facts demonstrating specific conduct on the part of any of the three Independent Directors in connection with the BD Term Loan and BD Lien Grant.

Instead, the Trustee improperly lumps all Director Defendants together in the conclusory statements relied on for asserting the Ninth, Eleventh, and Twelfth Claims. *See, e.g.*, Compl. ¶¶ 1, 24, 57, 132, 203-211, 217-223, and subparts (d) and (e) of the request for relief at Section VI on page 48. The Trustee also lumps the Director Defendants and the Equity Sponsor together in conclusory allegations, either explicitly or effectively, by claiming that the Equity Sponsor aided and abetted the Director Defendants' alleged breaches of fiduciary duties. Compl. ¶ 132 (alleging the Board was mere instrumentality of Equity Sponsor), ¶¶ 212-216. Those allegations do not satisfy the standards discussed in *Our Alchemy*, requiring dismissal for failure to state a claim against the Independent Directors.

2.    **The Trustee Admits He Cannot Establish The Independent Directors Violated Fiduciary Duties With Respect To The Distribution.**

With respect to the Distribution, the Trustee affirmatively pleads that the Independent Directors were not involved in the authorization of the Distribution:

> 79.    As for the other Director Defendants—Taft, Unfried, and Archambault—the records available to the Trustee reflect no involvement or participation on their part in the decision to authorize the Distribution and no inquiry as to the impact the Distribution would have on the Debtors.
>
> 80.    The Board did not execute any resolutions or written consents approving the First Amendment or the Distribution.

Compl. ¶¶ 79-80.

In light of the fact that the Trustee is suing the Independent Directors for breaches of fiduciary duties, these two paragraphs presuppose that either (i) the Challenged Transactions were approved by each of the Independent Directors or (ii) the Independent Directors must have been derelict by not participating in the Board's consideration or otherwise inquiring as to the Distribution's impact.  In light of the stringent pleading requirements for stating a viable fiduciary duty claim as discussed in *Our Alchemy*, those propositions must be alleged with specific facts and not inferred from the sheer fact that the Independent Directors were members of the Board.

3.    **Analogy To Corporations Does Not Salvage The Allegations.**

As discussed above, the Trustee makes no attempt to analyze the Debtors' LLC Agreements and apply the facts to the provisions establishing the governance mechanisms established thereunder.  As such, the inclusion of the Independent Directors as Defendants in this adversary proceeding appears entirely dependent on their Board membership.

The Delaware LLC Act permits "the drafters of an LLC agreement" to "create an LLC with bespoke governance features or design an LLC that mimics the governance features of another familiar type of entity."  *Obeid v. Hogan*, No. CV 11900-VCL, 2016 WL 3356851, at *6 (Del. Ch.

June 10, 2016).  The Delaware Court of Chancery has held that, "[i]f the drafters have opted for a manager-managed entity, created a board of directors, and adopted other corporate features, then the parties to the agreement should expect a court to draw on analogies to corporate law." *Id*. However, "[i]t is important not to embrace analogies to other entities or legal structures too broadly or without close analysis, because 'the flexibility inherent in the limited liability company form complicates the task of fixing such labels or making such comparisons.'" *Id*. (citing Robert L. Symonds, Jr. & Matthew J. O'Toole, Delaware Limited Liability Companies, § 1.04[C][1], at 1-17 (2015)).

Here, analogies to corporate law based on the establishment of a Board do not salvage the Trustee's deficient allegations against the Independent Directors merely because they were members of the Board.  As a preliminary matter, the Board established in the Bayou Holdings LLC Agreement[8] is distinct from a corporation's board of directors because: (i) the management authority of Bayou Holdings' Board is "subject to the ultimate control and authority of the Class A Members," which vested the Board with "powers and rights…by the [Delaware LLC] Act and th[e] [LLC] Agreement with respect to the management and control of the Company." (Ex. C at § 3.1(a)) and (ii) Class A Members holding a majority of Class A Units have management power to authorize company action in accordance with the Bayou Holding Agreement  (Ex. C. at § 1.6(b)).[9]

---

[8]     Only Debtor Bayou Holdings was established with a board of directors.  Ex C. at § 3.1(a). Bayou Investment and BD LaPlace both vested management in their sole member and manager, Bayou Holdings.  Ex. A at § 4.1(a), Ex. B at § 4.1(a).

[9]     It is entirely reasonable to expect a private equity company investing tens of millions of dollars in a portfolio company wanting the flexibility to (i) delegate management powers to a board of directors made-up of both sponsor executives and unaffiliated individuals possessing relevant industry or operational experience while at the same time (ii) maintaining control over its investment.

Any analysis of the intent of the drafters in establishing the Board in the Bayou Holdings LLC Agreement must be informed by these provisions.

More critically, even if the Board was intended to function exactly like a corporation's board of directors, the Trustee must still allege facts from which one could reasonably conclude directors breached their fiduciary duty.[10]   A claim based on a challenged decision of directors requires facts demonstrating a grossly negligent process employed by the board of directors.  *See Off. Comm. of Unsecured Creditors v. Kemeny, et al. (In re TEU Holdings, Inc.)*, 287 B.R. 26, 32 (Bankr. D. Del 2002).  A claim based on dereliction, otherwise referred to as "oversight liability," requires facts demonstrating "that the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 123 (Del.Ch. 2009) (emphasis in original) (discussing that showing of bad faith is necessary to establish oversight liability).

As discussed above, the Complaint fails to plead facts establishing conduct by the Independent Directors connecting them to the implementation of the Challenged Transactions. Likewise, the Complaint does not plead particularized facts that permit a reasonable inference that the Independent Directors acted in bad faith such that oversight liability would be plausible.  To the contrary, the Bayou Holdings LLC Agreement reflects the concomitant management authority of the Class A Member in its own right and the Complaint reflects exercise of that authority in consultation with Debtors' management.  *See, e.g.*, Compl. ¶67(iv) (management opining that cash flow would permit $32.8 million draw).

---

[10]     This presumes the Trustee pleads non-exculpated claims which is not the case here.  *See In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1775-76 (Del. 2015).

In light of the foregoing, the breach of fiduciary duty claim against the Independent Directors should be dismissed with prejudice.

### B.     The Trustee's Corporate Waste Claim Fails.

The Eleventh Claim of the Complaint asserts that the Challenged Transactions constituted corporate waste and the Director Defendants are "jointly and severally liable for the damages associated with [corporate waste]."  Compl. at ¶¶217-219.

In order to state a claim for corporate waste, a plaintiff needs to show that the company has entered into a transaction "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re the Walt Disney Co. Der. Litig.*, 906 A.2d 27, 74 (Del. 2006).  This is considered a stringent standard that is only met in the "rare and unconscionable case where directors irrationally squander or give away corporate assets." *Id.*

Since the corporate waste claim is premised on the approval of the Challenged Transactions by each Independent Director, the Eleventh Claim as to the Independent Directors must be dismissed with prejudice for the very same reasons set forth above with respect to the breach of fiduciary duty claims.

### C.     The Trustee's Equitable Subordination Claim Fails.

Finally, in the Twelfth Claim, the Trustee seeks to equitably subordinate the proof of claims filed by the Independent Directors on the basis that the Director Defendants "engaged and/or knowingly participated in inequitable conduct with respect to the Debtors." Compl. at ¶¶220-223.

As this Court has stated:

> There is no standardized test for what constitutes "unfair conduct." And courts look to the particularized facts before them to determine whether the conduct and injury demand equitable subordination.  In cases of fiduciary or insider claimants, courts have found, based on the facts of the case before them, unfair conduct where the insider or fiduciary: (i) dominated and

exploited the debtor; (ii) violated the "rules of fair play and good conscience;" (iii) engaged in illegal or fraudulent conduct; (iv) breached fiduciary duties owed to the debtor, stockholders, or creditors; (v) used "the debtor as a mere instrumentality or alter ego;" (vi) breached a contract; or (vii) if a controlling stockholder, undercapitalized the debtor or capitalized the debtor with debt.

*In re Ashinc Corporation*, 629 B.R. 154, 217–18 (Bankr. D. Del. 2021).

The Complaint makes conclusory allegations that "the Director Defendants and the Black Diamond Entities engaged and/or knowingly participated in inequitable conduct with respect to the Debtors, including: (i) causing the Debtors to make the Distribution to enrich the Black Diamond Entities, and (ii) intentionally causing the Debtors to enter into secured loan agreements which the Debtors could never hope to repay and which had the effect of elevating the Black Diamond Entities to secured creditors in advance of Debtors' bankruptcy filing." Compl. at ¶ 221.

Since the equitable subordination claim is premised on the approval of the Challenged Transactions by each Independent Director, the Twelfth Claim as to the Independent Directors must be dismissed with prejudice for the very same reasons set forth above with respect to the breach of fiduciary duty and corporate waste claims.

*-Remainder of Page Intentionally Blank-*

## CONCLUSION

WHEREFORE, for the foregoing reasons, and those set forth in the other Defendants' motion to dismiss that are incorporated herein, the Independent Directors respectfully request that the Court grant their motion to dismiss the Ninth, Eleventh, and Twelfth Claims with prejudice.

Dated:  November 22, 2021
       Wilmington, Delaware

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

 */s/ Jennifer R. Hoover*
Jennifer R. Hoover (No. 5111)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com

-and-

Sven T. Nylen (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Email: snylen@beneschlaw.com

*Counsel to Defendants Rob Archambault, Terry Taft, and Bob Unfried*

16