# Exhibit B

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
### of
### BD LAPLACE, LLC
#### (A Delaware Limited Liability Company)

This Amended and Restated Limited Liability Company Agreement, dated as of the 5th day of April, 2016, by and between BD LaPlace, LLC, a Delaware limited liability company (the "Company"), and BD Bayou Steel Investment, LLC, a Delaware limited liability company and the sole Member (as hereinafter defined), amends and restates the Limited Liability Company Agreement of the Company dated April 4, 2016 (the "Previous Agreement").

### RECITALS

WHEREAS, the Company was originally incorporated as "Bayou Steel Corporation (of La Place)" on May 26, 1988, by the filing of a Certificate of Incorporation (the "Certificate of Incorporation") with the Office of the Secretary of State of the State of Delaware, and changed its name to "Bayou Steel Corporation" on July 19, 1988;

WHEREAS, the Company was converted to a limited liability company, organized under the laws of the State of Delaware, pursuant to a Certificate of Conversion filed with the Secretary of State of the State of Delaware on September 28, 2007 (the "Conversion");

WHEREAS, since the Conversion, the business and affairs of the Company were governed by that certain Limited Liability Company Agreement of ArcelorMittal LaPlace, LLC, dated September 28, 2007, as amended by that certain First Amendment to the Limited Liability Company Agreement, dated March 4, 2009 (collectively, the "Original Agreement"), and the Company was wholly owned BD Bayou Steel Investment, LLC, a Delaware limited liability company (the "Original Member");

WHEREAS, on April 4, 2016, the Original Member transferred, sold, conveyed and assigned all of its membership interests in the Company to Member pursuant to that certain Securities Purchase Agreement (the "Purchase Agreement"), dated March 23, 2016, by and among ArcelorMittal USA LLC, a Delaware limited liability company, and ArcelorMittal Bayou Acquisition LLC, a Delaware limited liability company, on the one hand, and BD Long Products, LLC, a Delaware limited liability company ("BD Long Products"), on the other hand, and the other transaction documents contemplated therein;

WHEREAS, immediately prior to the consummation of the transactions contemplated by the Purchase Agreement on April 4, 2016, the Original Agreement was terminated by the Original Member pursuant to that certain Termination of Limited Liability Company Agreement of ArcelorMittal LaPlace, LLC, dated as of April 4, 2016, and the Company and the Member entered into the Previous Agreement;

WHEREAS, on the date hereof, the Company changed its name from "ArcelorMittal LaPlace, LLC" to "BD LaPlace, LLC"; and

WHEREAS, the Member and the Company have agreed to amend and restate the Previous Agreement to govern the affairs of the Company and the conduct of its business.

NOW, THEREFORE, the Member and the Company hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

As used herein the following terms have the following meanings:

"Act" means the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.), as amended from time to time.

"Agreement" means this Amended and Restated Limited Liability Company Agreement of the Company, as amended from time to time pursuant to Section 10.1.

"Certificate of Formation" has the meaning set forth in Section 2.1.

"Certificate of Incorporation" has the meaning set forth in the Recitals.

"Company" has the meaning set forth in the Preamble.

"Interests" means membership interests in the Company.

"DGCL" has the meaning set forth in Section 9.2(a).

"Manager" has the meaning set forth in Section 4.1(a).

"Member" means BD Bayou Steel Investment, LLC and/or any other Person receiving a membership interest pursuant to Article 6.

"Original Agreement" has the meaning set forth in the Recitals.

"Original Member" has the meaning set forth in the Recitals.

"Person" means and includes any individual, corporation, partnership, association, limited liability company, trust, estate or other entity.

"Previous Agreement" has the meaning set forth in the Preamble.

## ARTICLE 2
## ORGANIZATION

**Section 2.1** **Formation**.  The Company was incorporated as a corporation pursuant to the laws of the State of Delaware on May 26, 1988.  The Company was converted from a corporation to a limited liability company under the laws of the State of Delaware on September 28, 2007 and the Company filed a Certificate of Formation (the "Certificate of Formation") with the Secretary of State of the State of Delaware on September 28, 2007 pursuant to the Act.  The Company shall be operated pursuant the provisions of this Agreement.  The rights and liabilities of the Member shall be determined pursuant to the Act and this Agreement.

**Section 2.2** **Name**.  The name of the Company is "BD LaPlace, LLC", and the business of the Company shall be conducted under that name or such other name or names as may be approved by the Manager from time to time.

**Section 2.3** **Registered Agent and Office**.  The registered agent of the Company in the State of Delaware shall be the registered agent named in the Certificate of Formation, as amended from time to time, or such other Person or Persons as the Manager may designate from time to time.  The registered office of the Company in the State of Delaware shall be the registered office named in the Certificate of Formation, as amended from time to time, or such other office (which need not be a place of business of the Company) as the Manager may designate from time to time.

**Section 2.4** **Principal Office**.  The principal office of the Company shall be at such place as the Manager may designate from time to time either within or without the State of Delaware, and the Company shall maintain records there for inspection as required by the Act.  The Company may have such other offices as the Manager may designate from time to time either within or without the State of Delaware.

**Section 2.5** **Purposes**.  The Company has been formed for the purpose of, and the nature of the business to be conducted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any activities necessary, convenient or incidental thereto.

**Section 2.6** **Term**.  The term of the Company commenced on the date of filing of the Certificate of Incorporation in accordance with applicable law and shall continue in perpetuity; provided that the Company may be dissolved, wound up and terminated in accordance with Article 8.

**Section 2.7** **Title to Company Assets**.  Title to the assets of the Company, whether real, personal or mixed and whether tangible or intangible, shall be deemed to be owned by the Company as an entity, and no Member, individually or collectively, shall have any ownership interest in such Company assets or any portion thereof.  Title to any or all of the Company assets may be held in the name of the Company or one or more nominees, as the Manager may determine.  All Company assets

shall be recorded as the property of the Company in its books and records, irrespective of the name in which record title to such Company assets is held.

## ARTICLE 3
## MEMBERS; INTERESTS

**Section 3.1**    **Members**.  A Person shall only be admitted as a Member if such Person acquires one or more Interests in accordance with the provisions of this Agreement, and executes this Agreement and agrees to be bound by the provisions hereof.

**Section 3.2**    **Interests**.  Membership interests in the Company shall be represented by Interests.  The Company has authority to issue 1,000 Interests, all of which have been issued to BD Bayou Steel Investment, LLC.

**Section 3.3**    **Events of Bankruptcy**.  A Person shall not cease to be a Member upon the happening of any of the events described in Section 18-304 of the Act.

**Section 3.4**    **Register**.

(a)    The Company shall keep or cause to be kept on behalf of the Company a register that, subject to any requirements of the Manager, will provide for the registration and transfer of Interests.

(b)    The transferee of Interests shall become a Member with respect to the Interests so transferred to such Person only when any such transfer is reflected in the Company's books and records and such transfer has complied with all applicable provisions of this Agreement.

## ARTICLE 4
## MANAGEMENT

**Section 4.1**    **Management of the Company's Affairs**.

(a)    *Manager*.  All management powers over the business and affairs of the Company shall be exclusively vested in a Manager, who need not be a Member, who shall constitute a "manager" of the Company within the meaning of the Act (the "Manager").  As of the date of this Agreement, BD Long Products shall be the sole Manager.

(b)    *Authority*.  No Member, in his, her or its capacity as such, shall have any management power over the business and affairs of the Company or actual or apparent authority to enter into contracts on behalf of, or to otherwise bind, the Company.

(c)    *Additional Powers*.  In addition to the powers that now or hereafter can be granted to managers under the Act and to all other powers granted under any other provision of this Agreement, the Manager shall have full power and authority to do all

things on such terms as it, in its sole discretion, may deem necessary or appropriate to conduct, or cause to be conducted, the business and affairs of the Company.

(d) *Officers*. The Manager shall have the power to appoint officers and agents to act for the Company, with such titles, if any, as the Manager deems appropriate and to delegate to such officers or agents such of the powers as are granted to the Manager hereunder, including the power to execute documents on behalf of the Company, as the Manager may in its sole discretion determine. Except as may be prescribed otherwise by the Manager, all such officers shall hold their offices at the pleasure of the Manager for an unlimited term and need not be reappointed annually or at any other periodic interval. Any action taken by an officer of the Company pursuant to authorization of the Manager shall constitute the act of and serve to bind the Company. The Manager, in its sole discretion, may by written consent ratify any act previously taken by an officer or agent acting on behalf of the Company.

**Section 4.2**      **Compensation**.    The Manager shall be entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of its service hereunder.

## ARTICLE 5
## ALLOCATIONS AND DISTRIBUTIONS

**Section 5.1**      **Allocations of Profits and Losses**.  All profits and losses will be allocated to the Member(s).

**Section 5.2**      **Distributions**.  Subject to Section 18-607 of the Act, the Manager may from time to time declare, and the Company may pay, such distributions or dividends as the Manager may determine in its sole discretion.

## ARTICLE 6
## TRANSFER OF RIGHTS

**Section 6.1**      Each Member may freely assign or otherwise transfer all or part of its Interests. Notwithstanding the foregoing, no assignee of Interests shall become a Member of the Company without executing this Agreement or an instrument otherwise indicating such assignee's acceptance of the terms, conditions, representations and warranties contained herein.

## ARTICLE 7
## TAX STATUS

**Section 7.1**      BD Bayou Steel Investment, LLC hereby intends that the Company shall be treated as a disregarded entity for federal, state and local income tax purposes for so long as BD Bayou Steel Investment, LLC constitutes the sole Member.

## ARTICLE 8
## DISSOLUTION

**Section 8.1**     **Events Causing Dissolution**.   The Company shall be dissolved and its affairs shall be wound up upon the first to occur of the following:

(a)     The written consent of the Member; or

(b)     The entry of a decree of judicial dissolution under Section 18-802 of the Act.

**Section 8.2**     **Winding Up**.   Upon dissolution, the Manager shall wind up the Company's affairs pursuant to Section 18-803 of the Act.

**Section 8.3** .    **Distribution of Assets**.   Upon the winding up of the Company, the assets of the Company shall be distributed in accordance with Section 18-804 of the Act.

## ARTICLE 9
## LIABILITY TO THIRD PARTIES AND INDEMNIFICATION

**Section 9.1**     **Liability to Third Parties**.

(a)     Notwithstanding anything to the contrary set forth in this Agreement, and except as otherwise set forth in the Act, no Member, Manager, employee or agent of the Company shall be liable in such capacity for a debt, obligation or liability of the Company solely due to such Person's status as a Member, Manager, employee or agent of the Company.

(b)     No Member, Manager, employee or agent of the Company shall be a proper party to a proceeding by or against the Company, except when the object is to enforce such Person's rights against or liability to the Company.

(c)     Any amendment, modification or repeal of this Section 9.1 or any provision hereof shall be prospective only and shall not in any way affect the limitations on liability under this Section 9.1 as in effect immediately prior to such amendment, modification or repeal with respect to claims arising from or relating to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may be asserted.

**Section 9.2**     **Indemnification**.

(a)     Each Member and Manager shall be indemnified and held harmless by the Company from and against any and all judgments, settlements, penalties, fines and expenses (including reasonable legal fees and expenses) to the extent indemnification would be either mandatory or permissive under Section 145 of the General Corporation Law of the State of Delaware (the "DGCL") if such Member or Manager were an officer or director of a Delaware corporation.

(b)     Expenses incurred by any Member or Manager in defending an action, suit or proceeding, as described in Section 9.2(a), shall be paid by the Company in advance of the final disposition of such action, suit or proceeding if authorized by the Manager, without regard to whether any participating Member or Manager is party to such action, suit or proceeding, upon receipt of an undertaking by or on behalf of such Member or Manager to repay such amount if it shall ultimately be determined that such Member or Manager is not entitled to be indemnified by the Company.   Any indemnification or advancement of expenses pursuant to this Section 9.2 shall be made only out of the assets of the Company.

(c)     The provisions of this Section 9.2 are for the benefit of the Member(s), the Manager(s), and their respective heirs, successors, assigns and administrators, and shall not be deemed to create any rights for the benefit of any other Persons.

(d)     No amendment, modification or repeal of this Section 9.2 or any provision hereof shall in any manner terminate, reduce or impair either the right of any past, present or future Member or Manager to be indemnified by the Company or the obligations of the Company to indemnify any such indemnitee under and in accordance with the provisions of this Section 9.2 as in effect immediately prior to such amendment, modification or repeal with respect to claims arising from or relating to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may be asserted.

**Section 9.3**     **Liability for Actions**.  No Member or Manager shall be liable for breach of any duty (including any fiduciary duty) provided for in the Act or otherwise, other than to the extent not permitted to be eliminated under the Act.

## ARTICLE 10
## MISCELLANEOUS

**Section 10.1**     **Amendment**.   This Agreement and the Certificate of Formation may be amended at any time upon written consent of the Manager.

**Section 10.2**     **Governing Law.**  This Agreement shall be governed by the internal laws of the State of Delaware without regard to the conflicts of law principles thereof.

*[Signatures Appear on the Following Page]*

{JX195581.2}7

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date and year first written above.

**COMPANY:**

BD LAPLACE, LLC

By: _____
Name:  Sam Farahnak
Its: Vice President

**SOLE MEMBER:**

BD BAYOU STEEL INVESTMENT, LLC

By: _____
Name:  Sam Farahnak
Its: Vice President

**Signature Page to BD LaPlace, LLC – Amended and Restated Limited Liability Company Agreement**