## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,<br><br>　　　　　　　　　　Debtors, | **Chapter 7**<br><br>**Case No. 19-12153 (KBO)**<br>**(Jointly Administered)**<br><br>**Adv. No. 21-51013 (KBO)** |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., *et al.*,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C.; BDCM OPPORTUNITY FUND IV, L.P.; BLACK DIAMOND COMMERCIAL FINANCE, L.L.C.; SAM FARAHNAK; PHIL RAYGORODETSKY; ROB ARCHAMBAULT; TERRY TAFT; and BOB UNFRIED,<br><br>　　　　　　　　　　Defendants. | **Re: Adv. D.I. 1** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C., BDCM OPPORTUNITY FUND IV, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C, SAM FARAHNAK, AND PHIL RAYGORODETSKY'S MOTION TO DISMISS

FOX ROTHSCHILD LLP
Seth A. Niederman (DE No. 4588)
919 N. Market Street, Suite 300
Wilmington, DE  19801-3062
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

ROBBINS, RUSSELL, ENGLERT, ORSECK
   & UNTEREINER LLP

Lawrence S. Robbins (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Leslie C. Esbrook (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

-and-

ZAIGER LLC
Jeffrey H. Zaiger (admitted *pro hac vice*)
Judd A. Linden (admitted *pro hac vice*)
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for Defendants Black Diamond Capital
Management, L.L.C., BDCM Opportunity Fund
IV, L.P., Black Diamond Commercial Finance,
L.L.C., Sam Farahnak, and Phil Raygorodetsky*

November 22, 2021

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION AND SUMMARY OF PROCEEDINGS ...................................... 1

SUMMARY OF ARGUMENT .............................................................................. 2

STATEMENT OF FACTS .................................................................................... 4

    A.   The Debtors ....................................................................................... 4

    B.   Fund IV Purchases Struggling LaPlace And Vinton Facilities ............................ 5

    C.   Debtors Sell The Vinton Facility And Return Capital To Their Debt And Equity Holders ............................................................. 6

    D.   Debtors Continue To Struggle, And Fund IV Extends A Lifeline ..................... 7

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ..................................................................................................... 8

  I.   The Trustee Has Not Stated A Claim To Avoid The Lien Grant (Counts IV-VII) ....... 8

    A.   The Constructive Fraud Claims Fail Because The Lien Grant Was Supported By Reasonably Equivalent—Indeed, Mathematically Identical—Value (Counts V, VII) ....................................................... 9

    B.   The Actual Fraud Claims Fail Because The Lien Grant Did Not Harm, Much Less Defraud, Debtors' Other Creditors (Counts IV, VI) ........................ 11

  II.  The Trustee Has Not Stated A Claim To Avoid The Distribution (Counts I-III) ........ 13

    A.   The Trustee's Avoidance Claims Are Barred By § 546(e)'s Safe Harbor .......... 13

    B.   The Trustee's Avoidance Claims Are Time-Barred Under Delaware Law ........ 17

      1.   Delaware LLC Act § 18-607(c) Extinguishes Claims To Recover Distributions After Three Years ................................................ 17

      2.   The Bankruptcy Code Does Not Preempt § 18-607(c) .............................. 19

  III.  The Trustee Has Not Stated A Claim For Breach Of Fiduciary Duty (Counts IX-X) ...................................................................................... 22

i

A.  The Trustee Does Not Specify What Duties Were Breached, To Which Entity, Or How ................................................................................................. 23

B.  The Operative LLC Agreements Exculpate The Director Defendants From Liability ........................................................................................................... 23

IV.  The Trustee's Remaining Claims Fail .......................................................................... 26

A.  The Trustee's Unjust Enrichment Claim Is A Nonstarter (Count VIII) .............. 26

B.  The Trustee Has Not Alleged Inequitable Conduct To Warrant Equitable Subordination (Count XII) ................................................................................... 27

C.  The Trustee's Surcharge Claim Is Deficient And Premature (Count XIII) ......... 27

CONCLUSION .................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Amcad Holdings, LLC*,
579 B.R. 33 (Bankr. D. Del. 2017) ...................................................................9

*In re Antex, Inc.*,
397 B.R. 168 (B.A.P. 1st Cir. 2008) ...............................................................20

*AP Servs. LLP v. Silva*,
483 B.R. 63 (S.D.N.Y. 2012)...........................................................................26

*In re Aphton Corp.*,
423 B.R. 76 (Bankr. D. Del. 2010) .................................................................10

*In re Appleseed's Intermediate Holdings, LLC*,
470 B.R. 289 (D. Del. 2012)............................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................8

*In re Ashinc Corp.*,
629 B.R. 154 (Bankr. D. Del. 2021) ...............................................................27

*In re Baum's Bologna, Inc.*,
50 B.R. 689 (Bankr. E.D. Penn. 1985) ...........................................................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................8

*Crescent Res. Litig. Tr. ex rel. Bensimon v. Duke Energy Corp.*,
500 B.R. 464 (W.D. Tex. 2013).......................................................................16

*In re Berjac of Or.*,
538 B.R. 67 (D. Or. 2015) ...............................................................................20

*In re Bernard L. Madoff Inv. Sec. LLC*,
445 B.R. 206 (Bankr. S.D.N.Y. 2011).............................................................20

*In re Bernard L. Madoff Inv. Sec. LLC*,
773 F.3d 411 (2d Cir. 2014).......................................................................15, 16

*In re Bldgs. by Jamie, Inc.*,
230 B.R. 36 (Bankr. D.N.J. 1998) ...................................................................22

*In re Boston Generating LLC*,
   617 B.R. 442 (Bankr. S.D.N.Y. 2020) .................................................................15, 16, 18

*Bragdon v. Bayshore Prop. Owners' Ass'n, Inc.*,
   251 A.3d 661 (Del. Ch. 2021) ...........................................................................................18

*In re Bridgeport Holdings, Inc.*,
   388 B.R. 548 (Bankr. D. Del. 2008) ...................................................................................26

*Buchwald Capital Advisors LLC v. Papas*,
   584 B.R. 161 (E.D. Mich. 2018) ........................................................................................16

*In re C.S. Assocs.*,
   29 F.3d 903 (3d Cir. 1994) ..................................................................................................27

*Cal. Pub. Emps'. Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017) ........................................................................................................21

*In re Casa de Cambio Majapara S.A. de C.V.*,
   390 B.R. 595 (N.D. Ill. 2008) .............................................................................................16

*Cheswold Volunteer Fire Co. v. Lamberton Constr. Co.*,
   489 A.2d 413 (Del. 1984) ....................................................................................................21

*CML V, LLC v. Bax*,
   6 A.3d 238 (Del. Ch. 2010)...............................................................................................5, 24

*Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*,
   385 F. Supp. 2d 449 (D. Del. 2004)....................................................................................26

*Coopers and Lybrand v. Shapira*,
   101 F.3d 689 (3d Cir. 1996)................................................................................................20

*In re Cornerstone Therapeutics Inc., Stockholder Litig.*,
   115 A.3d 1173 (Del. 2015) ..................................................................................................25

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   966 F. Supp. 2d 1031 (C.D. Cal. 2013) ..............................................................................20

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987)...............................................................................................................22

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014).................................................................................................................20

*DG BF, LLC v. Ray*,
   No. CV 2020-0459-MTZ, 2021 WL 776742 (Del. Ch. Mar. 1, 2021) ..............................24

iv

*In re Die Fliedermaus, LLC*,
    323 B.R. 101 (Bankr. S.D.N.Y. 2005) ...............................................................................19

*In re Dornier Aviation (N. Am.), Inc.*,
    453 F.3d 225 (4th Cir. 2006) .........................................................................................12

*In re Duke and King Acquisition Corp.*,
    508 B.R. 107 (Bankr. D. Minn. 2014) .............................................................................12

*Elf Atochem N. Am., Inc., v. Jaffari*,
    727 A.2d 286 (Del. 1999) ...............................................................................................4

*Estate of Eller v. Barton*,
    31 A.3d 895 (Del. 2011) .................................................................................................23

*In re EPD Inv. Co.*,
    523 B.R. 680 (B.A.P. 9th Cir. 2015)...............................................................................22

*Simmons (Ex rel. Estate of Elliott) v. United States*,
    421 F.3d 1199 (11th Cir. 2005) .....................................................................................20

*In re Extended Stay, Inc.*,
    No. 09-13764-JLG, 2020 WL 10762310 (S.D.N.Y. Aug. 8, 2020)
    ..............................................................................................................13, 14, 26, 27

*In re EZCORP Inc. Consulting Agreement Derivative Litig.*,
    No. 9962-VCL, 2016 WL 301245 (Del. Ch. Jan. 25, 2016)............................................24

*FDIC v. First Horizon Asset Sec. Inc.*,
    291 F. Supp. 3d 364 (S.D.N.Y. 2018).............................................................................20

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ...............................................................................27

*In re Fitness Holdings Int'l, Inc.*,
    529 F. App'x 871 (9th Cir. 2013) ............................................................................10, 11

*In re Greater Se. Cmty. Hosp. Corp.*,
    333 B.R. 506 (Bankr. D.D.C. 2005) ...............................................................................26

*In re Greektown Holdings, LLC*,
    765 F. App'x 132 (Mem.) (6th Cir. 2019) .......................................................................16

*In re Gulf Fleet Holdings, Inc.*,
    491 B.R. 747 (W.D. La. 2013).........................................................................................12

*In re Hechinger Inv. Co.*,
    274 B.R. 71 (D. Del. 2002)..............................................................................................13

*In re Hechinger Inv. Co. of Del.*,
   327 B.R. 537 (D. Del. 2005) ............................................................................27

*In re HH Liquidation, LLC*,
   590 B.R. 211 (Bankr. D. Del. 2018) ...........................................................23, 24

*Holliday v. Credit Suisse Sec. (USA) LLC*,
   No. 20 Civ. 5404 (GBD), 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021) ..................15, 16

*Johnson v. First Nat'l Bank*,
   81 B.R. 87 (Bankr. N.D. Fla. 1987) ......................................................... *passim*

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013) .........................................................................14

*In re Kaplan Breslaw Ash, LLC*,
   264 B.R. 309 (Bankr. S.D.N.Y. 2001) .............................................................9

*In re Kelley*,
   7 B.R. 384 (Bankr. D.S.D. 1980) ..................................................................10

*In re Lehman Bros. Holdings Inc.*,
   469 B.R. 415 (Bankr. S.D.N.Y. 2012) ...........................................................16

*In re Lehman Bros. Holdings Inc.*,
   855 F.3d 459 (2d Cir. 2017) .........................................................................15

*In re LSC Wind Down, LLC*,
   610 B.R. 779 (Bankr. D. Del. 2020) ..............................................................21

*In re Luciani*,
   584 B.R. 449 (Bankr. D. Mass. 2018) .......................................................11, 12

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ..........................................................................23

*In re Mason*,
   189 B.R. 932 (Bankr. N.D. Iowa 1995) ..........................................................10

*In re Midway Games Inc.*,
   428 B.R. 303 (Bankr. D. Del. 2010) ..............................................................12

*Monroe Cty. Emps. Ret. Sys. v. Carlson*,
   No. 4587-CC, 2010 WL 2376890 (Del. Ch. June 7, 2010) ..................................24

*In re N. Merch., Inc.*,
   371 F.3d 1056 (9th Cir. 2004) ......................................................................11

*In re Nine West LBO Sec. Litig.*,
    482 F. Supp. 3d 187 (S.D.N.Y. 2020)...............................................................................14

*O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props.,*
    *LLC)*,
    488 B.R. 394 (B.A.P. 9th Cir. 2013)..................................................................................15

*In re Opus East, LLC*,
    528 B.R. 30 (Bankr. D. Del. 2015) ...................................................................................27

*In re Our Alchemy, LLC*,
    No. 16-11596 (KG), 2019 WL 4447535 (D. Del. Sept. 16, 2019) ....................................11

*In re Palombo Farms of Colo., Inc.*,
    43 B.R. 709 (Bankr. D. Colo. 1984) .................................................................................28

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................................8

*In re Parker Sch. Uniforms, LLC*,
    No. 18-10085 (CSS), 2021 WL 4553016 (Bankr. D. Del. Oct. 5, 2021) ............................9

*In re Pfeifer*,
    No. 12-13852 (ALG), 2013 WL 3828509 (Bankr. S.D.N.Y. July 23, 2013) ...............9, 10

*In re Phar-Mor, Inc. Sec. Litig.*,
    178 B.R. 692 (W.D. Penn. 1995)........................................................................20, 21, 22

*Matter of Princeton-New York Inv'rs., Inc.*,
    219 B.R. 55 (D.N.J. 1998) ...............................................................................................22

*Rosenberg v. DVI Receivables XVII, LLC*,
    835 F.3d 414 (3d Cir. 2016).......................................................................................19, 20

*In re SemCrude, L.P.*,
    No. 08-11525 (BLS), 2013 WL 2490179 (Bankr. D. Del. June 10, 2013).......................13

*Sherman v. State*,
    133 A.3d 971 (Del. 2016) .................................................................................................21

*In re SportCo Holdings, Inc.*,
    No. 19-11299 (JKS), 2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021) ........................26

*In re SRC Liquidation LLC*,
    581 B.R. 78 (D. Del. 2017), *aff'd*, 765 F. App'x 726 (3d Cir. 2019) .................................9

*Stein v. Blankfein*,
    No. CV 2017-0354-SG, 2019 WL 2323790 (Del. Ch. May 31, 2019).............................24

*In re SubMicron Sys. Corp.*,
    432 F.3d 448 (3d Cir. 2006) .............................................................................27

*In re SunEdison, Inc.*,
    620 B.R. 505 (S.D.N.Y. 2020) .........................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................8

*In re The Brown Sch., Inc.*,
    368 B.R. 394 (Bankr. D. Del. 2007) ................................................................27

*Tornetta v. Musk*,
    250 A.3d 793 (Del. Ch. 2019) ..........................................................................24

*In re Towne, Inc.*,
    536 F. App'x 265 (3d Cir. 2013) ......................................................................28

*In re: Tribune Co. Fraudulent Conveyance Litig.*,
    11md2296, 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019) ...............................14

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019) ...............................................................................14

*In re Tropicana Entm't, LLC*,
    520 B.R. 455 (Bankr. D. Del. 2014) ................................................................27

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
    892 F. Supp. 2d 805 (N.D. Tex. 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014) ....................13

*VFB, LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3d Cir. 2007) ...............................................................................9

*In re W.J. Bradley Mortg. Capital, LLC*,
    598 B.R. 150 (Bankr. D. Del. 2019) .............................................................4, 11, 15, 23

*Witco Corp. v. Beekhuis*,
    38 F.3d 682 (3d Cir. 1994) ...............................................................................21

*Zhurbin v. State*,
    104 A.3d 108 (Del. 2014) .................................................................................19

Statutes, Regulations and Rules

United States Bankrtupcy Code, 11 U.S.C. § 101 *et seq.*
    § 101(49)(xiii)............................................................................................15
    § 101(49)(xiv)............................................................................................15
    § 101(54)....................................................................................................14
    § 101(54)(D)(i)..........................................................................................14
    § 108(a)......................................................................................................20
    § 506(c)......................................................................................................28
    § 510(c)......................................................................................................27
    § 544..........................................................................................................20
    § 544(b)...............................................................................................13, 20
    § 544(b)(1).................................................................................................20
    § 546....................................................................................................21, 22
    § 546(a)(1)(A)......................................................................................19, 20
    § 546(e)............................................................................................. *passim*
    § 546(g)......................................................................................................17
    § 548..........................................................................................................11
    § 548(a)(1)(A)............................................................................................11
    § 548(a)(1)(B)..............................................................................................9
    § 548(a)(2)....................................................................................................9
    § 550..........................................................................................................13
    § 741(7)(A)(i), (xi)...............................................................................15, 16

Del. Code Ann. tit. 6
    § 18-303.....................................................................................................25
    § 18-303(a).................................................................................................25
    § 18-601 *et seq.* .............................................................................. *passim*
    § 18-607(b)...........................................................................................18, 19
    § 18-607(c)........................................................................................ *passim*
    § 18-1101(b).................................................................................................5
    § 18-1101(c).................................................................................................5
    § 18-1101(e)............................................................................................5, 24
    § 1304(a)(1)...............................................................................................11
    § 1304(a)(2).................................................................................................9
    § 1308(f)(3)...............................................................................................12

Del. Code Ann. tit. 8
    § 102(b)(7)...........................................................................................22, 24
    § 170..........................................................................................................22

Fed. R. Bankr. P.
    7012............................................................................................................8
    7017..........................................................................................................21

Fed. R. Civ. P. 12(b)(6)........................................................................................8

Uniform Fraudulent Transfer Act, § 3, cmt. 3 ...........................................................................9

Other Authorities

2 *Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations* § 20.7 (4th ed. 2021) ..................................................................................25

2 COLLIER ON BANKRUPTCY ¶ 108.02 (16th ed. 2021) ...........................................................20

5 COLLIER ON BANKRUPTCY ¶ 555.06 (16th ed. 2021). ..........................................................26

1 SYMONDS & O'TOOLE ON DE LIMITED LIABILITY COS. (2019)
§ 7.05[A] ...................................................................................................................................19
§ 15.03......................................................................................................................................21

Office of the Comptroller of the Currency Financial Institution List,
https://bit.ly/3Bw068p ...........................................................................................................14

Restatement (Third) of Agency § 1.01 (2006).........................................................6, 7, 14, 15

S. Rep. No. 95-989 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787 ....................................19

Defendants Black Diamond Capital Management, L.L.C. ("BDCM"), BDCM Opportunity Fund IV, L.P. ("Fund IV"), Black Diamond Commercial Finance, L.L.C ("BDCF") (collectively, with BDCM and Fund IV, the "Black Diamond Entities"), Sam Farahnak, and Phil Raygorodetsky (together, the "Director Defendants," and, collectively with the Black Diamond Entities, the "Black Diamond Defendants") submit this memorandum in support of their motion to dismiss Plaintiff's Complaint.

## INTRODUCTION AND SUMMARY OF PROCEEDINGS

No good deed goes unpunished, indeed. Hoping to repeat its successful turnaround of Bayou Steel a decade earlier, the Black Diamond Entities invested nearly $60 million to purchase the struggling steel facilities in 2016. When the Debtors later ran low on cash, the Black Diamond Entities extended, on multiple occasions, a credit line that eventually rose to $40 million—despite having no obligation to provide anything. Their reward? The equity is worthless, not a single penny of the loan has been repaid, and the Trustee now seeks to avoid the (subordinated) security interest that was granted in connection with the loan. Adding insult to injury, the Trustee further seeks to unwind a distribution from more than four years ago, which returned to the Black Diamond Entities only a fraction of the capital they've sunk into Bayou Steel over the years.

The Complaint should be dismissed. The Trustee cannot state a fraudulent-transfer claim as regards to the subordinated lien because the lien had no net effect on Debtors' estate, gave no preference to any preexisting obligation, and was quintessentially equivalent in value to the debt it secured. Nor can the Trustee unwind the March 2017 distribution: that transaction is protected by the Bankruptcy Code's "safe harbor" provision for securities contracts, and, even if it weren't, the Trustee's avoidance claim is time-barred under Delaware law.

The Trustee's claims against the Director Defendants fare no better.  The Complaint alleges that those individuals breached fiduciary duties to the undifferentiated "Debtors."  But this ignores both the corporate form and black-letter Delaware law: fiduciary duties must be analyzed on a company-by-company basis, not lumped together.  The Trustee also overlooks that each of the Debtors was governed by an LLC agreement that exculpated its managers for breaches of fiduciary duty.

The Trustee's tacked-on claims for unjust enrichment, corporate waste, equitable subordination, and surcharge all fail for substantially the same reasons.  The Complaint should be dismissed with prejudice.

## SUMMARY OF ARGUMENT

The Trustee's claims are legally deficient and should be dismissed for the following reasons:

1.    **No Constructive Fraudulent Transfer (BD Lien Grant).**  The Trustee has failed to state a claim for constructive fraudulent transfer relating to the Lien Grant[1] (Counts V, VII).  In an effort to rehabilitate Debtors, Fund IV extended to them a $40 million credit line and, in exchange, received a subordinated lien on Debtors' assets.  A lien is, by definition, equivalent to the value of the debt it secures.  Because the Trustee has not plausibly alleged a lack of reasonably equivalent value for the Lien Grant, Counts V and VII should be dismissed.  (*See* Part I(A)).

2.    **No Actual Fraudulent Transfer (BD Lien Grant).**  The Trustee has likewise failed to state a claim for actual fraudulent transfer relating to the Lien Grant (Counts IV & VI).  The Lien Grant did not hinder, delay, or defraud Debtors' other creditors.  It *helped* them.  The

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Complaint.

Lien Grant secured a term loan of up to $40 million for the Debtors, at a time they were running low on cash, and was subordinated to Debtors' existing secured lenders.  The Lien Grant gave no preference to any antecedent debt, and the interest was to be paid-in-kind.  It cannot plausibly be said that the Lien Grant could have defrauded anyone.  Counts IV and VI should be dismissed. (*See* Part I(B)).

      **3**.     **Avoidance Claims (Distribution) Are Fatally Flawed.**  The Trustee's avoidance claims relating to the Distribution (Counts I-III) should also be dismissed.  Those claims founder on two independent doctrines:

      **A.**    *First*, Section 546(e)'s "safe harbor" for securities transactions bars the Trustee's claims.  Under Section 546(e), the Trustee is prohibited from avoiding, *inter alia*, any: (1) "transfer" (2) "made by or to (or for the benefit of) . . .  a financial institution …"; (3) "in connection with a securities contract."  The Distribution satisfies each of those elements.  Consequently, Counts I-III should be dismissed.  (*See* Part II(A)).

      **B.**    *Second*, the Trustee's claims are time-barred under Delaware law. Section 18-607(c) of the Delaware LLC Act contains a statute of repose that extinguishes, after three years, any claims (including avoidance claims) to unwind an LLC member distribution.  Del. Code Ann. tit. 6, § 18-607(c).  The Complaint alleges that Fund IV and BDCM were members of Debtor LLCs (Cplt. ¶¶ 44, 47) and that they received the Distribution on March 17, 2017 (Cplt. ¶ 70), more than three years before the Trustee filed suit.  Because the Bankruptcy Code does not preempt such statutes of repose, Counts I-III should be dismissed as time barred.  (*See* Part II(B)).

      **4.**    **Breach of Fiduciary Duty Claims Should be Dismissed.**  Delaware law requires that breaches of fiduciary duty be analyzed on a company-by-company basis.  Yet the Complaint

treats the Debtor LLCs as a monolith, making no effort to distinguish among the various entities, much less to articulate what duties were breached with respect to which entity.  In any case, the LLC agreements for each of the Debtors—all properly before the Court—exculpate their members for breaches of fiduciary duty.  Accordingly, the claims for breach of fiduciary duty (Count IX), aiding-and-abetting (Count X), and corporate waste (Count XI) should all be dismissed.  (*See* Part III).

5.    **Tag-a-Long Claims Fail.** For the same reasons, the Trustee's claims for unjust enrichment (Count VIII) and equitable subordination (Count XII) fail as well.  And the Trustee's alternative claim for surcharge (Count XIII) is both inadequately pled and premature.  (*See* Part IV).

## STATEMENT OF FACTS[2]

### A.    The Debtors

Debtors here are Bayou Steel BD Holdings LLC ("Bayou Holdings"), BD Bayou Steel Investment LLC ("Bayou Investment") and BD LaPlace LLC ("BD LaPlace").  *See* Cplt. ¶¶ 1, 47. Bayou Holdings is the 100% owner of both Bayou Investment and BD LaPlace.  *Id*.  Debtors "recycle[ed] scrap to produce a variety of structural steel, merchant bar, and specialty products." *Id*. ¶ 15.

Each of the Debtors is a Delaware LLC.  An LLC is an alternative business entity that "combines corporate-type limited liability with partnership-type flexibility and tax advantages." *Elf Atochem N. Am., Inc., v. Jaffari*, 727 A.2d 286, 290 (Del. 1999).  LLCs are "creatures of

---

[2] The following facts are based on the allegations in Complaint (which are assumed to be true for purposes of this motion only), documents integral to the Complaint and documents that are a matter of public record. *In re W.J. Bradley Mortg. Capital, LLC*, 598 B.R. 150, 164 (Bankr. D. Del. 2019).

contract," each organized by a bespoke agreement governing its affairs. *CML V, LLC v. Bax*, 6 A.3d 238, 250 (Del. Ch. 2010). It is the policy of Delaware LLC law to "give the maximum effect to the principle of freedom of contract" (Del. Code Ann. tit. 6, § 18-1101(b)), and so these entities are afforded significant freedom to determine their management structure, including the nature of, and any limits on liability relating to, any fiduciary duties. *See id.* §§ 18-1101(c) & (e).

Consistent with those powers, Bayou Investment and BD LaPlace "exclusively vested" their management powers in their sole member and manager, Bayou Holdings (formerly BD Long Products). *See* Ex. 1 (Bayou Investment Agreement) § 4.1(a); Ex. 2 (BD LaPlace Agreement) § 4.1(a).[3] Their LLC agreements further provide that "[n]o Member or Manager shall be liable for breach of any duty (including any fiduciary duty) provided for in the Act or otherwise, other than to the extent not permitted to be eliminated under the Act." Ex. 1 (Bayou Investment Agreement) § 9.3; Ex. 2 (BD LaPlace Agreement) § 9.3.

Bayou Holdings, in turn, vested its board of directors (the "Board") with the power to "manage the business and affairs of the Company" consistent with the Act and the terms of the LLC Agreement. *See* Ex. 3 (Bayou Holdings Agreement) § 3.1(a). Its LLC agreement specifies that "no Director, Officer or Member shall have any personal liability whatsoever in such Person's capacity as a Director, Officer or Member, . . . to the creditors of the Company or to any other third party, for the debts, liabilities, commitments[,] or any other obligations of the Company or for any losses of the Company." *Id.* at § 3.9(a).

## B.    Fund IV Purchases Struggling LaPlace And Vinton Facilities

In 2015, Defendant BDCM began exploring the potential purchase of several steel processing facilities from ArcelorMittal. *See, e.g.*, Cplt. ¶¶ 30-31. Though a difficult time for the

---

[3] All exhibits referenced herein are attached to the Declaration of William J. Trunk.

steel industry, BDCM had engineered a turnaround of some of these assets a decade earlier—a "home run," by one account—and believed it could repeat its earlier success. *Id*. ¶¶ 28-29, 34. Its diligence revealed that ArcelorMittal had "undermanaged" the plants, as it sought to "quickly generate cash, at the expense of margin and profits." *Id*. ¶¶ 35-42.

Early the following year, Fund IV—a private-equity fund managed by BDCM—agreed to purchase two steel facilities for $90.2 million: headquarter operations in LaPlace, Louisiana, and a facility in Vinton, Texas. *Id*. ¶ 45. The purchase price was funded by a combination of equity and debt. Fund IV made an initial member contribution of $59.6 million and thereafter owned 100% of Bayou Holdings, which in turn owned 100% of Bayou Investment and BD LaPlace. *Id*. The balance of the purchase price was funded through a revolving loan ("Revolving Loan") with Bank of America, N.A. ("BoA") and SunTrust Robinson Humphrey, Inc. ("SunTrust").

## C.    Debtors Sell The Vinton Facility And Return Capital To Their Debt And Equity Holders

BDCM began to implement its turnaround plan. It recruited Alton Davis, an experienced steel-industry executive, to serve as President and Chief Operating Officer. Cplt. ¶¶ 36, 55. BDCM appointed as directors two of its own managing directors (Defendants Farahnak and Raygorodetsky), as well as three Defendants unaffiliated with BDCM: (1) Bob Unfried (a former steel industry executive), (2) Rob Archambault (a private-equity executive), and (3) Terry Taft (a former metals industry executive). *Id*. ¶¶ 52-53.

BDCM also pursued, for Debtors' benefit, a sale of the Vinton facility. In December 2016, it sold the Vinton facility to Kyoei Steel for $49 million. *Id.* ¶ 62. The transaction was structured as the sale of 100% of LLC membership interests in the Vinton facility (all held by Bayou Holdings), including "all rights of the members . . . to profits, losses and distributions," and "to

participate in the management of the business and affairs" of the LLC.  Ex. 4 (Vinton BD Sale Agreement) § 1.1 & Exh. A; Ex. 5 (Executed Assignment of Membership Interests).

Debtors used the sale proceeds to return capital to their debt and equity holders.  Cplt. ¶¶ 62-63.  To that end, Debtors reduced the balance on the Revolving Loan.  *Id*. ¶ 63.  In addition, BD LaPlace paid a $30 million Distribution to Fund IV, its indirect owner, via a fund transfer from Bank of America Merrill Lynch to a J.P. Morgan Chase account belonging to Fund IV.  *Id*. ¶ 70. The Distribution had been contemplated prior to the sale of the Vinton facility (*id*. ¶ 67), and was approved by both BoA and SunTrust under the Revolving Loan agreement, *id*. ¶ 68.

### D.    Debtors Continue To Struggle, And Fund IV Extends A Lifeline

Despite BDCM's turnaround efforts, Debtors foundered.  *Id*. ¶¶ 93-113.  By late 2017, Debtors were "running out of cash."  *Id*. ¶ 114.  BDCM "explored injecting cash into the business" through a subordinated loan.  *Id*.

In December 2017, Debtors entered into a Subordinated Loan and Security Agreement (the "Term Loan") with Fund IV and BDCF.  *Id*. ¶ 117.  The Term Loan provided an initial $15 million credit line, drawable in increments of $5 million.  *Id*.  In return for the Term Loan, the Debtors granted Fund IV and BDCF a continuing security interest and lien on substantially all their property (the "Lien Grant").  *Id*. ¶ 119.  Senior lenders BoA and SunTrust approved the additional borrowing pursuant to the Revolving Loan agreement.  *Id*. ¶¶ 115, 121.

Notwithstanding the cash infusion, Debtors continued to face "financial and operational difficulties."  *Id*. ¶ 134.  In a further effort to rehabilitate Debtors, Fund IV and BDCF agreed to provide additional capital on several occasions, which was "necessary for Debtors to operate at the most basic level."  *Id*. ¶ 150.  The Term Loan was twice amended to increase the maximum commitment—first to $30 million (in January 2019), then to $40 million (in May 2019).  *Id*.

¶¶ 122-123.  By September 2019, Debtors had drawn down $33 million on the Term Loan.  *Id*.

¶ 125.  Not a penny was ever repaid to Fund IV pursuant to the Term Loan.  *Id*. ¶ 129.

Despite the Term Loan lifeline, Debtors' "operational and financial performance were dismal" and BoA issued default notices under the Revolving Loan while simultaneously undertaking increasing oversight of Bayou in August through September 2019.  *Id*. ¶¶ 150-52.  On October 1, 2019, Debtors filed voluntary Chapter 11 petitions.  *Id*. ¶ 153.  On February 25, 2020, the Bankruptcy Court entered an order converting these cases to Chapter 7.  *Id*. ¶ 11.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012, should be granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition to the allegations of the complaint, the court may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "relevant facts obtained from the public record," *Papasan v. Allain*, 478 U.S. 265, 283 (1986).

## ARGUMENT

## I.    **The Trustee Has Not Stated A Claim To Avoid The Lien Grant (Counts IV-VII)**

In an unsuccessful effort to rescue Debtors, Fund IV voluntarily extended tens of millions of dollars in new financing.  In return, Fund IV received a subordinated lien of equal value.  The Trustee now challenges the Lien Grant as a fraudulent transfer.  But the Lien Grant had no net effect on the Debtors' estates, gave no preference to any preexisting obligation, and was, by definition, equivalent in value to the debt it secured.  Because the Lien Grant had no negative

consequences for the Debtors' other creditors—much less did it "hinder," "delay," or "defraud" any of them—Counts IV-VII should be dismissed.

> **A.** **The Constructive Fraud Claims Fail Because The Lien Grant Was Supported By Reasonably Equivalent—Indeed, Mathematically Identical—Value (Counts V, VII)**

The Trustee has not plausibly alleged that Debtors received less than "reasonably equivalent value in exchange" for the Lien Grant. 11 U.S.C. § 548(a)(1)(B); Del. Code Ann. tit. 6, § 1304(a)(2); *In re SRC Liquidation LLC*, 581 B.R. 78, 97-98 & n.15 (D. Del. 2017), *aff'd*, 765 F. App'x 726 (3d Cir. 2019) (dismissing complaint that failed to "plausibly allege" absence of "reasonably equivalent value"); *accord In re Parker Sch. Uniforms, LLC*, No. 18-10085 (CSS), 2021 WL 4553016, at *9-10 (Bankr. D. Del. Oct. 5, 2021); *In re Amcad Holdings*, *LLC*, 579 B.R. 33, 41-42 (Bankr. D. Del. 2017).

A party receives "reasonably equivalent value" when it "gets roughly the value it gave." *VFB, LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007). Here, there is nothing "rough" about it: The Lien Grant was worth, to the penny, precisely the amount that Debtors drew down on the Term Loan. That is because a secured lender is entitled to collect from its collateral only the amount it is owed; nothing more. *See, e.g.*, *Johnson v. First Nat'l Bank*, 81 B.R. 87, 89 (Bankr. N.D. Fla. 1987) ("The extent of the interest transferred is only the amount of the loan secured by the mortgage, not the value of the property encumbered"); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 329 n.69 (Bankr. S.D.N.Y. 2001); *In re Pfeifer*, No. 12-13852 (ALG), 2013 WL 3828509, at *4 (Bankr. S.D.N.Y. July 23, 2013) (grant of collateral does not "expand the amount of a creditor's debt").[4]

---

[4] *See also* Uniform Fraudulent Transfer Act, § 3, cmt. 3 ("Under this Act, as under § 548(a)(2) of the Bankruptcy Code, a transfer for security is ordinarily for a reasonably equivalent value notwithstanding a discrepancy between the value of the asset transferred and the debt

For that reason, courts routinely hold that the conveyance of a security interest is supported by reasonably equivalent value—even where the security interest is granted to secure a *preexisting* debt. *In re Mason*, 189 B.R. 932, 935 (Bankr. N.D. Iowa 1995); *In re Pfeifer*, 2013 WL 3828509, at *4 (acknowledging the "per se rule" that the grant of collateral for a legitimate antecedent debt is not a constructive fraudulent transfer). This case is even more straightforward: The Lien Grant supported the infusion of *new* capital that would not have been available to the Debtors but for the Lien Grant. That is the textbook definition of reasonably equivalent value. *See In re Fitness Holdings Int'l, Inc.*, 529 F. App'x 871, 874 (9th Cir. 2013) (Trustee failed to plausibly allege lack of reasonably equivalent value where security interest was granted in exchange for $25 million loan); *In re Kelley*, 7 B.R. 384, 388-89 (Bankr. D.S.D. 1980) (security interest not a fraudulent transfer as a matter of law when granted at the same time the underlying debt was incurred).

The Trustee does not allege (nor could he) that the Lien Grant was somehow more valuable than the financing it secured. On the subject of reasonably equivalent value, the Trustee offers only this tongue-twister: "The [] Lien Grant … was made in derogation of the Directors' fiduciary duties in connection with capital infusions that were necessitated only because of Black Diamond's conduct in causing the Debtors' stressed financial position following the Distribution." Cplt. ¶¶ 186 & 197. Whatever that means, it does not state a claim for constructive fraudulent transfer. Whether and why Debtors *needed* financing tells us nothing about whether the Lien Grant was supported by reasonably equivalent value. It indisputably was. Counts V and VII thus fail as a matter of law.

---

secured, since the amount of the debt is the measure of the value of the interest in the asset that is transferred.").

**B.     The Actual Fraud Claims Fail Because The Lien Grant Did Not Harm, Much Less Defraud, Debtors' Other Creditors (Counts IV, VI)**

The Trustee's actual fraudulent transfer claims fail for similar reasons. To state such a claim, the Trustee must "do more" than merely identify the allegedly fraudulent transfer. *In re Aphton Corp.*, 423 B.R. 76, 85 (Bankr. D. Del. 2010). Instead, it must plead facts that allow the court to "reasonably infer actual fraud." *W.J. Bradley*, 598 B.R. at 169; *In re Our Alchemy*, *LLC*, No. 16-11596 (KG), 2019 WL 4447535, *11 (D. Del. Sept. 16, 2019).

The Trustee has failed that burden. Here, it cannot reasonably be inferred that the purpose of the Lien Grant was to "hinder," "delay," or "defraud." *See* 11 U.S.C. § 548(a)(1)(A); Del. Code Ann. tit. 6, § 1304(a)(1). The Lien Grant secured new financing to Debtors, gave no preference to any antecedent debt, and was entirely balance-sheet neutral. *See* Cplt. ¶¶ 117-19. Which is to say, the Lien Grant had no adverse effect whatsoever on Debtors' existing creditors. *See In re N. Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004) ("primary focus of Section 548 is on the net effect of the transaction on the debtor's estate"); *Fitness Holdings*, 529 F. App'x at 874 ("We cannot reasonably infer that Fitness Holdings was attempting to 'hinder, delay, or defraud' its creditors . . . simply because it took on secured debt to replace unsecured debt; borrowers regularly give security interests to obtain financing."); *In re Luciani*, 584 B.R. 449, 459 (Bankr. D. Mass. 2018) (actual fraudulent transfer claim dismissed at pleading stage where the challenged transfer (a mortgage) was supported by reasonably equivalent value and thus "neutral in terms of creditors' ability to collect their debts").

Unable to plead a net effect on the estate, the Trustee alleges instead that the Lien Grant was intended to "elevate insiders" over other creditors. Cplt. ¶ 180. But it pleads no facts in support of this allegation. Nor could it. The Lien Grant did not prioritize the Black Diamond Entities in the capital structure. It was *subordinated* to Debtors' existing Revolving Loan, and any

and all interest on the Term Loan was to be paid-in-kind.  *Id.* ¶¶ 121, 127.  And Black Diamond had no obligation to provide financing to Debtors in the first place.  If Black Diamond truly wished to "elevate" itself, it would have kept its money.  As it is, Black Diamond has not been repaid one penny.  *Id.* ¶ 129.  Some fraud.

Nor are there circumstantial "badges" to support an inference of fraud.  At best, the Trustee has alleged only that there was a transfer to an insider at a time the Debtors were insolvent.  But such threadbare allegations, standing alone, do not place the Trustee's actual fraud claim "above the speculative level."  *In re Luciani*, 584 B.R. at 462; *see In re Midway Games Inc.*, 428 B.R. 303, 325 (Bankr. D. Del. 2010) (dismissing actual fraudulent transfer claim despite payments made to controlling shareholder); *In re Duke and King Acquisition Corp.*, 508 B.R. 107, 140 (Bankr. D. Minn. 2014) (presence of three badges, including transfer to insider and insolvency, "did not ignite in common to the inference" of actual fraud; "it did not even smolder"); *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 767-68 (W.D. La. 2013).

In addition to being legally unsupported, the Trustee's theory would make for terrible policy.  Related parties are often the only ones "willing to make a loan to a struggling business." *In re Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 234 (4th Cir. 2006).[5]  They would understandably be reluctant to extend such lifelines if, as the Trustee urges, such financing would be stripped of its collateral any time the debtor winds up in bankruptcy.

---

[5] This concern is reflected by Delaware's Uniform Fraudulent Transfer Act, which provides that an insider transfer is not avoidable as a preference (which, to be clear, the Trustee has not alleged) where it was "made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt."  Del. Code Ann. tit. 6, § 1308(f)(3).  This provision further underscores the obvious: providing security for a *new* debt, as opposed to antecedent one, cannot constitute a fraudulent or preferential transfer.

To recap the Trustee's theory:  Fund IV extended $40 million in financing to the Debtors, at a time when the Debtors were "running out of cash."  Cplt. ¶ 114.  It extended this highly risky financing under no obligation to do so.  Then, despite knowing "that the Debtors had no ability to repay" anything, *id*. ¶ 133, Fund IV voluntarily agreed to subordinate the Term Loan to the Debtors' existing secured financing.  Debtors' preexisting lenders, eager for the company to have another source of capital, hungrily approved the Term Loan.  *Id*. ¶ 121.  Meanwhile, Fund IV has never been repaid and its subordinated lien is underwater.

If anything, this is a roadmap for how *not* to commit fraud.  Counts IV and VI should be dismissed.

## II.    The Trustee Has Not Stated A Claim To Avoid The Distribution (Counts I-III)

The Trustee's effort to unwind the Distribution fails for two independent reasons.  *First*, those claims are barred by the securities-transaction safe harbor codified at 11 U.S.C. § 546(e).  *Second*, the claims are time-barred under the three-year statute of repose in Delaware's LLC Act, Del. Code Ann. tit. 6, § 18-607(c).[6]

### A.    The Trustee's Avoidance Claims Are Barred By § 546(e)'s Safe Harbor

Section 546(e)'s "safe harbor" for securities transactions bars the Trustee's avoidance claims relating to the Distribution.  Under § 546(e), the Trustee is prohibited from avoiding, *inter alia*, any: (1) "transfer"; (2) "made by or to (or for the benefit of) a . . . financial institution [or a] financial participant"; (3) "in connection with a securities contract."

The Distribution satisfies each of these elements.[7]

---

[6] Count III, for recovery of transfer under 11 U.S.C. § 550, rises or falls with Counts I and II.  *See In re SemCrude, L.P.*, No. 08-11525 (BLS), 2013 WL 2490179, at *11 n.72 (Bankr. D. Del. June 10, 2013).

[7] Section 546(e)'s safe harbor applies to actual and constructive fraudulent transfer claims brought pursuant to § 544(b).  *See In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 98 (D. Del. 2002);

*First*, the Distribution is a "transfer" under 11 U.S.C. § 101(54). A "transfer" includes "parting with . . . property." *Id.* § 101(54)(D)(i). "[P]ayments of money from the Debtor" to shareholders, as in the form of a distribution, "[u]nquestionably" constitute transfer of property. *In re Extended Stay*, 2020 WL 10762310, at *80.

*Second*, the Distribution was made to a "financial institution." Importantly, a *customer* of a financial institution itself qualifies as a "financial institution," pursuant to Section 546(e), where the customer uses a financial institution as its agent in connection with a securities contract. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 78-79 (2d Cir. 2019). Here, Fund IV used a financial institution—J.P. Morgan Chase[8]—in just that way: J.P. Morgan Chase acted as Fund IV's depository agent in connection with the Distribution. Cplt. ¶ 70.[9] Where a bank acts as depository and distributor for a customer, "[t]his is a paradigmatic principal-agent relationship." *In re: Tribune Co. Fraudulent Conveyance Litig.*, 11md2296 (DLC), 2019 WL 1771786, at *11 (S.D.N.Y. Apr. 23, 2019); *see also In re Tribune*, 946 F.3d at 79-80; *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 202 (S.D.N.Y. 2020).[10]

---

*In re Extended Stay, Inc.*, No. 09-13764-JLG, 2020 WL 10762310, at *79 (S.D.N.Y. Aug. 8, 2020); *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 816-17 (N.D. Tex. 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014).

[8] J.P. Morgan Chase is recognized as a "financial institution" by the Office of the Comptroller of the Currency. *See* Financial Institution Lists as of 10/31/2021, https://bit.ly/3Bw068p.

[9] The Distribution also fits the definition of a transfer made "by" a financial institution. The Sale and Purchase Agreement for the 2016 Vinton LLC sale, a document integral to the Complaint (*infra* n.11), reveals that Bank of America received payment from Kyoei Steel "on behalf of" its customer, Bayou Holdings. *See* Ex. 4 (Vinton BD Sale Agreement) § 1.2(b). Bank of America Merrill Lynch then distributed, on Debtors' behalf, proceeds from that securities contract to Fund IV. Cplt. ¶ 70.

[10] Questions of agency are "properly resolved as a matter of law" where "the relevant facts are uncontroverted." *Tribune*, 2019 WL 1771786, at *10 (quoting *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013)); *see* Restatement (Third) of Agency § 1.01 (2006) (under the

*Third*, the Distribution was made "in connection with" a "securities contract." *See* 11 U.S.C. § 546(e). Taking those prongs in reverse order:

"**Securities Contract**." The term "securities contract" is defined with "extraordinary breadth" in the Bankruptcy Code. *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 417 (2d Cir. 2014). It includes any "contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i), (xi). "Security," in turn, is defined to include the "interest of a limited partner in a limited partnership." *Id.* § 101(49)(xiii). The definition also contains a "broad residual category," *In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 473 (2d Cir. 2017), which regards as a "security" anything that walks and talks like one. *See* 11 U.S.C. § 101(49)(xiv) (definition of "security" embraces any "claim or interest commonly known as a 'security'").

Here, the December 2016 sale of the Vinton facility was a "securities contract." That transaction was structured as the sale of LLC membership units: Bayou Holdings transferred 100% of its LLC membership units in BD Vinton LLC to Kyoei Steel for $49 million. Cplt. ¶ 62; Ex. 4 (Vinton BD Sale Agreement) § 1.1; Ex. 5.[11] Courts routinely hold that an LLC membership unit, just like an interest in a limited partnership, is a "security" under the Bankruptcy Code. *See In re Boston Generating LLC*, 617 B.R. 442, 485 (Bankr. S.D.N.Y. 2020) ("LLC member units and warrants most certainly qualify as securities under the Bankruptcy Code's broad definition"), *aff'd sub nom.*, *Holliday v. Credit Suisse Sec. (USA) LLC*, No. 20 Civ. 5404 (GBD), 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021); *see also O'Donnell v. Tristar Esperanza Props., LLC (In re*

---

common law, an "agent" is a party that "act[s] on the principal's behalf," and "[is] subject to the principal's control," and "manifests assent or otherwise consents so to act").

[11] The sale agreement (Ex. 4) and its attached executed assignment of membership interests (Ex. 5) are "integral" to the Complaint as a document the Trustee "must have used in framing its complaint" and may be considered in connection with a motion to dismiss. *W.J. Bradley*, 598 B.R. at 165-66.

*Tristar Esperanza Props., LLC*), 488 B.R. 394, 399 (B.A.P. 9th Cir. 2013) (membership interest in an LLC is a "security"); *In re SunEdison, Inc.*, 620 B.R. 505, 515 (S.D.N.Y. 2020) ("LLC member units" "are securities").

"**In Connection With**."   Section 546(e) "sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided." *In re Madoff*, 773 F.3d at 422.  A transfer is made "in connection with" a securities contract if it is merely "related to" or "associated with" the contract. *Id.* at 421.  There is "no required language to connect agreements," and no "temporal or existential requirement" that must link a transfer and an agreement. *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 439-42 (Bankr. S.D.N.Y. 2012).

So, for example, the distribution of *proceeds* from a securities contract is considered to be "in connection with" the securities contract. *E.g.*, *In re Boston Generating*, 617 B.R. at 493 (distribution made as part of an integrated securities transaction for tender offer); *Buchwald Capital Advisors LLC v. Papas*, 584 B.R. 161, 183-84 (E.D. Mich. 2018), *vacated and remanded on other grounds*, *In re Greektown Holdings, LLC*, 765 F. App'x 132 (Mem.) (6th Cir. 2019) (distributions made after closing of merger to shareholders under separate agreement); *Crescent Res. Litig. Tr. ex rel. Bensimon v. Duke Energy Corp.*, 500 B.R. 464, 476 (W.D. Tex. 2013) (distribution made after transfer of ownership interests for spin off deal).  That is true even if the distribution is not made in return for the purchase or sale of a security, and even if the entity qualifying for the safe harbor was never a party to the underlying securities contract. *See In re Madoff*, 773 F.3d at 420 (because § 546(e) and § 741(7) "do not contain a purchase or sale requirement," whether or not a party "actually transacted in securities is not determinative"); *Holliday*, 2021 WL 4150523, at *5 (entity qualifying for safe harbored transaction is not required to "be part[y] to a securities contract or agreement"); *In re Casa de Cambio Majapara S.A. de*

*C.V.*, 390 B.R. 595, 598-99 (N.D. Ill. 2008) (analogous § 546(g) safe harbor did not require the transfer be made for benefit of party "in its capacity as" participant in securities contract).

The Distribution easily clears the "low bar" to qualify. The Complaint alleges that the Distribution was expressly contemplated by the securities contract—*i.e.*, the Vinton LLC sale. Cplt. ¶¶ 66-67. And the Distribution comprised, in part, proceeds from that securities contract. *Id.* ¶ 65. Nothing more is required to meet § 546(e)'s safe harbor.

*                    *                    *

In sum: The Distribution was made "in connection with" a "securities contract" (the Vinton LLC sale); it was made "to" a "financial institution" (Fund IV, as customer of J.P. Morgan Chase); and, for good measure, it was made "by" a financial institution (Bayou Holdings, as customer of Bank of America). Congress has mindfully placed such transactions beyond the reach of the Trustee's avoidance powers. Counts I-III therefore should be dismissed.

### B.    The Trustee's Avoidance Claims Are Time-Barred Under Delaware Law

Even assuming the Distribution were not protected by the safe harbor (it was), the Trustee's avoidance claims would still fail because they are untimely under the Delaware LLC Act's three-year statute of repose.

### 1.    *Delaware LLC Act § 18-607(c) Extinguishes Claims To Recover Distributions After Three Years*

Section 18-607(c) of the Delaware LLC Act is a statute of repose that extinguishes, after three years, all causes of action to recover a distribution to the member of an LLC. The statute provides:

> *a member* who receives a distribution from a limited liability company ***shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years*** from the date of the distribution unless an action to recover the distribution from such member is commenced prior to the expiration of the said 3-year period and an adjudication of liability against such member is made in the said action.

17

Del. Code Ann. tit. 6, § 18-607(c) (emphasis added).[12]

The Complaint alleges that Fund IV and BDCM were members of the Debtor LLCs, Cplt. ¶¶ 44, 47, and that they received the Distribution on March 17, 2017, *id*. ¶ 70.   All claims to recover that Distribution, under Delaware's Uniform Fraudulent Transfer Act or otherwise, were therefore extinguished on March 17, 2020.

Although certain non-Delaware cases have held that Section 18-607(c) extinguishes members' liability only to the LLC (and not to creditors), those cases are unpersuasive.  The plain text of Section 18-607(c) unambiguously precludes fraudulent transfer claims as well.

*First*, contrast Section 18-607(c) with the antecedent subsection, 18-607(b), which specifies the circumstances under which LLC members may be liable for improper distributions. Section 607(b) specifies that a member who receives an improper distribution "shall be liable *to a limited liability company*" under certain circumstances.  *See* Del. Code Ann. tit. 6, § 18-607(b) (emphasis added).   Section 18-607(c), by contrast, does not contain such limiting language.  It states categorically that a member "shall have no liability"—*to anyone*—three years after a distribution, whether under the Delaware LLC Act or "other applicable law."  *Id*. § 18-607(c). "When the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion."  *Bragdon v. Bayshore Prop. Owners' Ass'n, Inc.*, 251 A.3d 661, 689 (Del. Ch. 2021) (internal quotation marks omitted).

*Second*, Section 18-607(c)'s reference to "or other applicable law" has to mean something. If the statute of repose were intended to extinguish only a member's liability to the LLC under

---

[12] *See In re Boston Generating*, 617 B.R. at 463 (§ 18-607(c) is statute of repose).

Section 18-607(b) itself, then "or other applicable law" would be rendered surplusage. *Zhurbin v. State*, 104 A.3d 108, 111 (Del. 2014) (court will "presume that the General Assembly purposefully chose particular language and therefore construe statutes to avoid surplusage if reasonably possible" (internal quotation marks omitted)). And, if "other applicable law" is to mean anything, it surely extends to fraudulent transfer law—which is among the most common ways to unwind an LLC member distribution. *See* 1 SYMONDS & O'TOOLE ON DE LIMITED LIABILITY COS. § 7.05[A] (2019) (noting that "other applicable law" under Section 18-607 embraces fraudulent transfer claims).

*Third*, Section 18-607(c) extinguishes member liability "for the *amount* of the distribution," not simply for the distribution itself. *See* Del. Code Ann. tit. 6, § 18-607(c) (emphasis added). So the provision must extend beyond an LLC's effort to recoup its own distributions. "If this Court were to construe [Section 18-607] to apply only to actions seeking the return of a distribution pursuant to [the LLC Act], it would not be giving any effect to the word 'amount.'" *In re Die Fliedermaus, LLC*, 323 B.R. 101, 109 (Bankr. S.D.N.Y. 2005) (interpreting analogous provision of New York LLC Act).

### 2. *The Bankruptcy Code Does Not Preempt § 18-607(c)*

There is a "strong presumption against inferring Congressional preemption" in the bankruptcy context. *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d Cir. 2016). Indeed, the Bankruptcy Code displaces state law only where there is "clear and manifest intent" by Congress to do so. *Id.*

Against that backdrop, courts have held that Bankruptcy Code Section 546(a)(1)(A), which "adds a statute of limitations" to a trustee's avoidance powers,[13] preempts state-law limitations

---

[13] S. Rep. No. 95-989, at 87 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5873.

periods for claims (like the Trustee's) brought under Section 544(b)(1).  *See, e.g.*, *In re Antex, Inc.*, 397 B.R. 168, 174 (B.A.P. 1st Cir. 2008) (per curiam); *In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 230-31 (Bankr. S.D.N.Y. 2011).  These courts reason that Congress intended, by Section 546(a)(1)(A), to extend the limitations period for a Trustee to bring state-law claims that otherwise would have been timely at the time the bankruptcy petition was filed.  *In re Madoff*, 445 B.R. at 231.  By contrast, the Bankruptcy Code has been held *not* to preempt statutes of *repose*—like Section 18-607(c)—which, unlike statutes of limitation, speak to the very capacity of an individual to be sued.  *See In re Phar-Mor, Inc. Sec. Litig.*, 178 B.R. 692, 695 (W.D. Penn. 1995), *aff'd sub. nom.*, *Coopers and Lybrand v. Shapira*, 101 F.3d 689 (3d Cir. 1996) (Tbl.) (3d Cir. 1996).[14]  The capacity of a state's citizens to be sued for uniquely state-law causes of action—particularly those relating to corporate affairs, which lie at the very epicenter of state sovereignty—are not among those areas where Congress has evinced a "clear and manifest intent" to preempt.  *Rosenberg*, 835 F.3d at 419.[15]

---

[14] 11 U.S.C. § 108(a) also tolls limitation periods "within which the debtor may commence an action," but that provision does not extend to § 544 fraudulent transfer claims because their limitations period is "separately governed by section[] 546(a)."  2 COLLIER ON BANKRUPTCY ¶ 108.02 (16th ed. 2021).  Moreover, § 544(b) provides a cause of action for claims voidable by the *estate*, so such claims do not fall under § 108's tolling for claims brought by *debtors*.  *In re Berjac Or.*, 538 B.R. 67, 78 (D. Or. 2015).

[15] Courts routinely hold that state statutes of repose are not preempted by federal statutory schemes.  *See, e.g.*, *CTS Corp. v. Waldburger*, 573 U.S. 1, 16-18 (2014) (CERCLA limitations period does not preempt state statutes of repose); *Simmons (Ex rel. Estate of Elliott) v. United States*, 421 F.3d 1199, 1202 (11th Cir. 2005) (per curiam) (Georgia statute of repose not preempted by FTCA); *FDIC v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 369-70 (S.D.N.Y. 2018) (FDIC extender statute did not preempt statutes of repose); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1044 (C.D. Cal. 2013) (FIRREA's extender provision does not preempt Texas state statute of repose).

*In re Phar-Mor* is instructive.  There, the court held that an Ohio nonclaim statute—"akin to a statute of repose"[16]—was not preempted by § 546, on the ground that statutes of repose implicate states' traditional "right to determine the capacity of its citizens to be sued."  178 B.R. at 695; *see id.* (discussing similar holding in *Witco Corp. v. Beekhuis*, 38 F.3d 682, 687 (3d Cir. 1994)).  While recognizing that the intent of § 546 was to give the trustee "breathing room" to determine which claims to assert, *id.* at 696 (internal quotation marks omitted), the court nevertheless held that Congress "expressly left to state law the determination of an individual's capacity to be sued in adversary proceedings," *id.* (citing Fed. R. Bankr. P. 7017).

The court's reasoning in *Phar-Mor* is persuasive.  Statutes of repose, like § 18-607(c), are fundamentally different from statutes of limitations that courts typically find tolled by Bankruptcy Code § 546.  Statutes of limitations, when run, "nullify a party's remedy"; statutes of repose, by contrast, "extinguish *both the remedy and the right*." *Cheswold Volunteer Fire Co. v. Lamberton Constr. Co.*, 489 A.2d 413, 421 (Del. 1984) (emphasis added).  Statutes of repose thus "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time," and their object is "to grant complete peace to defendants." *Cal. Pub. Emps'. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049, 2051-052 (2017).  That is precisely what the Delaware legislature did in codifying § 18-607(c). *See* 1 SYMONDS & O'TOOLE ON DE LIMITED LIABILITY COS. § 15.03 (2019) (the Delaware LLC Act "reflects an intent [] to strike a balance" between conferring benefits on creditors and members of an LLC by including a "clear limitation of the time period" to recover a distribution).[17]

---

[16] *See Sherman v. State*, 133 A.3d 971, 979 n.30 (Del. 2016).

[17] While this Court has stated (albeit in a different context) that the analysis under § 546 does not differ as between statutes of repose and statutes of limitation, *see In re LSC Wind Down, LLC*, 610 B.R. 779, 785 (Bankr. D. Del. 2020), we respectfully submit that it does, particularly where a statute of repose implicates traditional states' rights, *see infra* & n.18.

Just as the nonclaim statute in *Phar-Mor* implicated important state interests in regulating probate affairs, 178 B.R. at 695-96, the statute of repose here also implicates a traditional state right:  the right to "regulat[e] corporate governance," which includes the rights to "prescribe [corporation's] powers, and to define the rights that are acquired by purchasing their shares." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89-91 & n.12 (1987).  Corporations' "very existence and attributes are a product of state law." *Id.* at 89.  This includes rights governing the issuance of dividends and distributions.  *See* Del. Code Ann. tit. 6, § 18-601 et seq. (LLC Act on distributions); Del. Code Ann. tit. 8, § 170 (Corporations Act authorizing payment of dividends); *see also CTS Corp.*, 481 U.S. at 90 n.12 (corporations "may adopt restrictions on payment of dividends").[18]  There is no indication—much less "clear and manifest" evidence—that Congress intended § 546 to trod upon such traditional state interests.

## III.    The Trustee Has Not Stated A Claim For Breach Of Fiduciary Duty (Counts IX-X)

The Trustee fails to state a claim for breach of fiduciary duty for two reasons.  *First*, the Complaint does not articulate the source of any fiduciary duty (or its breach) on a company-by-company basis, as required by Delaware law.  *Second*, the governing LLC agreements, all of which are properly before the Court, demonstrate that the Trustee cannot allege a non-exculpated breach of duty.[19]

---

[18] This differentiates § 18-607 from statutes of repose in state *fraudulent transfer* laws that other cases have found preempted by § 546.  *E.g.*, *Matter of Princeton-New York Inv'rs., Inc.*, 219 B.R. 55, 64 (D.N.J. 1998) ("[T]he right to avoid a fraudulent transfer in the bankruptcy context was not created exclusively by a state statute"); *see also In re EPD Inv. Co.*, 523 B.R. 680, 690-91 (B.A.P. 9th Cir. 2015); *In re Bldgs. by Jamie, Inc.*, 230 B.R. 36, 45 (Bankr. D.N.J. 1998).

[19] The Trustee's fiduciary duty claim additionally fails as relates to the Lien Grant because, as explained (*supra* § I), Black Diamond's $40 million investment in Debtors and their creditors cannot plausibly sustain such a claim.

A.    **The Trustee Does Not Specify What Duties Were Breached, To Which Entity, Or How**

To state a claim for breach of fiduciary duty under Delaware law, the Trustee must plausibly allege both that the Defendants owed a fiduciary duty and that they breached it.  *See Estate of Eller v. Barton*, 31 A.3d 895, 897 (Del. 2011).  The Trustee's complaint does neither.

A fundamental flaw of the Complaint is that it treats the Debtors—three different LLCs—as a monolithic entity.  The Trustee alleges that the Director Defendants "breached their fiduciary duties *to the Debtors*" (Cplt. ¶ 208 (emphasis added)), making no effort to separate the specific entities, the specific duties, and the specific breaches.  "Delaware courts are clear that a breach of fiduciary duty analysis must occur on a company-by-company" basis.  *In re HH Liquidation, LLC*, 590 B.R. 211, 274 (Bankr. D. Del. 2018).[20]    That alone is reason these claims should be dismissed.[21]

B.    **The Operative LLC Agreements Exculpate The Director Defendants From Liability**

The failure to distinguish between these entities is also problematic because each LLC has its own governance agreement that should be "the point of departure for a Trustee claiming" breach of fiduciary duties.  *W.J. Bradley*, 598 B.R. at 166-67.[22]    That is because Delaware LLCs are

---

[20] Notably, two of the three LLCs did not have a board of directors.  Instead, they vested exclusive management authority in Bayou Holdings (formerly known as BD Long Products).  *See* Ex. 2 (BD LaPlace Agreement) § 4.1 ("All management powers over the business and affairs of the Company shall be exclusively vested in a Manager . . .  As of the date of this Agreement, BD Long Products shall be the sole Manager."); Ex. 1 (Bayou Investment Agreement) § 4.1 (similar).  The Trustee does not explain how the Director Defendants nevertheless owed duties to these two LLCs, much less how they were breached.

[21] The aiding-and-abetting claims against the Black Diamond Entities (Count X) should also be dismissed because they depend on the existence of an underlying breach.  *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

[22] The agreements are therefore "integral" to the Complaint and may be considered on a motion to dismiss.  *W.J. Bradley*, 598 B.R. at 166-67.

23

"creatures of contract, designed to afford the maximum amount of freedom of contract, private ordering and flexibility to the parties involved." *CML V*, 6 A.3d at 250. Accordingly, an LLC agreement may provide for the elimination of certain fiduciary duties entirely or, as relevant here, "the limitation or elimination of any and all liabilities for . . . breach of duties (including fiduciary duties) of a member, manager, or other person to a limited liability company." Del. Code Ann. tit. 6, § 18-1101(e). This allows for the "broad exculpation of *all* liabilities for breach of fiduciary duties—including the duty of loyalty." *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at *9-10 (Del. Ch. Mar. 1, 2021).[23]

Here, the operative LLC agreements—which the Trustee conspicuously omits references to—unambiguously bar the Trustee's fiduciary duty claims.[24] The BD LaPlace and Bayou Investment LLC agreements each contain identical provisions exculpating managers from liability:

---

[23] Some courts in this district have suggested that LLCs may not disclaim liability for certain breaches of fiduciary duty. *HH Liquidation*, 590 B.R. at 272-73. But these cases conflate the broad exculpation permitted under the Delaware LLC Act with the more limited exculpation permitted under the law governing Delaware *corporations*. Delaware's General Corporation Law expressly prohibits corporations from exculpating directors for breaches of the duty of loyalty, *see* Del. Code Ann. tit. 8, § 102(b)(7), whereas the analogous provision of the LLC Act does not, *see* Del. Code Ann. tit. 6, § 18-1101(e). *See also DG BF, LLC*, 2021 WL 776742, at *9-10 (Section 18-1101(e) of the LLC Act "goes further" than Del. Code Ann. tit. 8, § 102(b)(7)).

[24] Even beyond these threshold issues, there are high hurdles to the Trustee's claim. It is not a venial sin for a wholly owned subsidiary to transact with its parent. It is altogether unremarkable (and unchallengeable) when the subsidiary is solvent—and, even in the event of insolvency, subject at worst to the "entire fairness" standard. *See, e.g.*, *In re EZCORP Inc. Consulting Agreement Derivative Litig.*, No. 9962-VCL, 2016 WL 301245, at *12-15 (Del. Ch. Jan. 25, 2016) (entire fairness standard applies to transaction involving alleged self-dealing by controller). Interested transactions are "perfectly acceptable if they are entirely fair," so plaintiff must still "allege facts that demonstrate a lack of fairness." *Monroe Cty. Emps. Ret. Sys. v. Carlson*, No. 4587-CC, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010); *see also Stein v. Blankfein*, No. CV 2017-0354-SG, 2019 WL 2323790, at *7 (Del. Ch. May 31, 2019). The Trustee fails to do so here. For example, the Trustee pleads facts about the terms of the Term Loan, but fails to put them in context and plausibly allege in any manner that the Term Loan was not the "product of both fair dealing and fair price." *Tornetta v. Musk*, 250 A.3d 793, 812 (Del. Ch. 2019); *see Monroe Cty*, 2010 WL 2376890, at *2.

"No Member or Manager shall be liable for breach of any duty (including any fiduciary duty) provided for in the Act or otherwise, other than to the extent not permitted to be eliminated under the Act."  Ex. 1 (Bayou Investment Agreement) § 9.3; Ex. 2 (BD LaPlace Agreement) § 9.3. Likewise, Section 3.9(a) of the Bayou Holdings Agreement provides that "no Director . . . shall have any personal liability whatsoever in such Person's capacity as a Director . . . whether to the Company [or otherwise] for the debts, liabilities, commitments or any other obligations of the Company or for any losses of the Company."  Ex. 3 (Bayou Holdings Agreement § 3.9(a)).[25] Although the Trustee does not articulate what duties were breached to Bayou Holdings or how, the Trustee evidently seeks to recoup from the Director Defendants, *inter alia*, "losses" incurred by the LLC.  Those claims are exculpated by Section 3.9(a) of the Bayou Holdings Agreement.[26]

Because the Trustee has not pled a non-exculpated breach of fiduciary duty, the claims against the Director Defendants should be dismissed.  *See In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1775-76 (Del. 2015) ("A plaintiff seeking only monetary

---

[25] This goes far beyond a similar provision in the Delaware LLC Act that protects members and managers from veil-piercing liability.  *See* Del. Code Ann. tit. 6, § 18-303(a).  First, the exculpation expressly bars liability *to the company* (such as for breach of fiduciary duties), not just to third parties.  Second, the exculpation provision is not limited to situations in which liability is being imposed "solely by reason of being a member or acting as a manager of the limited liability company."  *Id.*  This evidences that the LLC Agreement is intended to extend to circumstances where tortious conduct is alleged.  2 *Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations* § 20.7 (4th ed. 2021) ("The word 'solely,' which is used in Section 18-303, indicates that a member or manager will not be liable for the debts, obligations, or liabilities of a Delaware LLC only by reason of being a member or manager; however, other acts or events could result in the imposition of liability upon or assumption of liability by a member or manager.").  Additionally, the exculpation clause refers to potential sources of damages ("commitments" and "losses") that the statute does not.

[26] To be sure, this provision does not exculpate the directors for *all* fiduciary duty liability. For example, it would not exculpate a director for a breach that was *not* based on the Company's debts, liabilities, obligations, commitments, or losses, such as where the director misappropriates a corporate opportunity for his own benefit.  That is surely why Section 3.11 of the LLC Agreement *separately* exculpates for breaches of the corporate opportunity doctrine.

damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct.").[27]

## IV.    The Trustee's Remaining Claims Fail

### A.    The Trustee's Unjust Enrichment Claim Is A Nonstarter (Count VIII)

Unjust enrichment requires plaintiff to allege a "benefit" "at the plaintiff's expense" for which "equity and good conscience require restitution." *In re Extended Stay*, 2020 WL 10762310, at \*98. Even assuming BDCF and Fund IV can be said to have received a "benefit" in the form of the Lien Grant—a dubious proposition, given the Trustee's allegation that Debtors were insolvent at the time—it most certainly did not come at Debtors' "expense": Debtors received access to a Term Loan of equivalent value in return. As to the Distribution, Count VIII must be dismissed because it "seeks to recover the same payments" that are, as explained below, "unavoidable under [11 U.S.C.] § 546(e)." *AP Servs. LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012); 5 COLLIER ON BANKRUPTCY ¶ 555.06 (16th ed. 2021). In any event, the Distribution was conferred in connection with the LLC Agreements. Because a valid contract between the parties governs, a claim for unjust

---

[27] The Corporate Waste claim as to BD Directors (Count XI) also must be dismissed. Corporate waste claims "are reserved only for the rare unconscionable case where directors irrationally squander or give away corporate assets." *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 303 (D. Del. 2012); *see id.* (corporate waste is "in effect a gift" (internal quotation marks omitted)). This is not such a rare case. The LLC agreements' "exculpation clause[s] protect[] the [Director Defendants] from a claim of corporate waste." *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 465 (D. Del. 2004); *see In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506, 527-28 (Bankr. D.D.C. 2005). Moreover, the Lien Grant was by its plain terms not a "gift." *See In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 577 (Bankr. D. Del. 2008) (dismissing corporate waste claim where complaint did not allege facts that sale of assets "had no rational basis"); *In re SportCo Holdings, Inc.*, No. 19-11299 (JKS), 2021 WL 4823513, at \*17-18 (Bankr. D. Del. Oct. 14, 2021).

enrichment may not lie.  *In re Fedders N. Am., Inc.*, 405 B.R. 527, 552 (Bankr. D. Del. 2009); *see*

*In re Extended Stay,* 2020 WL 10762310, at *99.

### B.    The Trustee Has Not Alleged Inequitable Conduct To Warrant Equitable Subordination (Count XII)

Count XII of the Complaint avers that "any and all claims" of Defendants should be

equitably subordinated below the rights of other creditors pursuant to § 510(c) of the Bankruptcy

Code.  To plead equitable subordination, the Trustee must allege that Defendants engaged in

"inequitable conduct."  *In re SubMicron Sys. Corp.*, 432 F.3d 448, 462 (3d Cir. 2006) (internal

quotation marks omitted).  For the reasons explained above, the Trustee has not done so.  Where

fraud-based claims are dismissed, equitable subordination claims relying on the same facts must

be dismissed as well.  *In re Opus East, LLC*, 528 B.R. 30, 105 (Bankr. D. Del. 2015) (no basis to

subordinate where the Court found that "Defendants committed no fraud [or] breach of fiduciary

duty"); *see also In re Hechinger*, 327 B.R. 537, 551 n.22 (D. Del. 2005) (stating most courts require

a showing of inequitable conduct for equitable subordination).[28]

### C.    The Trustee's Surcharge Claim Is Deficient And Premature (Count XIII)

To bring a claim for surcharge, a trustee must allege that expenditures "provide a *direct*

benefit to the secured creditors."  *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994).  The Trustee

seeks expenses from both pre- and post-Chapter 7 conversion acts.  For the actions taken before

---

[28] The Trustee has identified only claims "filed by Fund IV and BDCF."  Cplt. ¶ 223.  The equitable subordination claim as to BDCM and the Director Defendants should be dismissed because the Complaint does not allege that those Defendants filed any claims that can be subordinated.  *See In re Tropicana Entm't, LLC*, 520 B.R. 455, 475 (Bankr. D. Del. 2014) (equitable subordination claim dismissed where "Trustee has not identified the claims which he seeks to subordinate"); *see also In re Ashinc Corp.*, 629 B.R. 154, 217 (Bankr. D. Del. 2021) (courts must consider subordination based on "a *particular* claim"); *In re The Brown Sch., Inc.*, 368 B.R. 394, 414 (Bankr. D. Del. 2007) (equitable subordination claim "futile" where "there is no filed proof of claim against the estate to be disallowed or subordinated").

conversion, recovery is unavailable because "expenses arising from an unsuccessful Chapter 11 reorganization will generally not be allowed under § 506(c)," as they are "undertaken primarily to aid [the] client's Chapter 11 reorganization efforts," and not as a direct benefit to creditors. *In re Baum's Bologna, Inc.*, 50 B.R. 689, 691 (Bankr. E.D. Penn. 1985). For post-conversion acts (Cplt. ¶ 228), the Trustee fails to allege plausible facts that the Trustee's actions were *necessary* to collect these funds. *See In re Towne*, *Inc.*, 536 F. App'x 265, 269 (3d Cir. 2013) (affirming dismissal of 506(c) claim where claimant "cannot demonstrate . . . that its expenditures were necessary").

The Trustee's alternative threadbare assertion that Defendants somehow consented to a surcharge based on unspecified "pre-conversion agreements and/or [] actual or constructive knowledge" (Cplt. ¶ 231) fails to state a claim. Even assuming "consent" alone could sustain a surcharge claim (it cannot), the Trustee's passing reference to unspecified "agreements" fails to satisfy the pleading standard. *See In re Towne*, 536 F. App'x at 269 (allegation of a secured creditor's "limited cooperation does not demonstrate consent").

Moreover, the Trustee's claim is premature. Section 506(c) permits a Trustee to recover "from property securing an *allowed* secured claim." 11 U.S.C. § 506(c) (emphasis added). A creditor's claim is not "allowed" "until a direct or indirect order of allowance is made." *In re Palombo Farms of Colo., Inc.*, 43 B.R. 709, 711 (Bankr. D. Colo. 1984). Because no order of allowance has issued, the surcharge claim is unripe.

## CONCLUSION

For the forgoing reasons, the Trustee's Complaint should be dismissed with prejudice.

Date: November 22, 2021

Respectfully submitted,

/s/ Seth A. Niederman

Seth A. Niederman (DE No. 4588)
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 300
Wilmington, DE  19801-3062
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

/s/ Lawrence S. Robbins

Lawrence S. Robbins
William J. Trunk
Jack A. Herman
Leslie C. Esbrook
ROBBINS, RUSSELL, ENGLERT, ORSECK
   & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

ZAIGER LLC
Jeffrey H. Zaiger (admitted *pro hac vice*)
Judd A. Linden (admitted *pro hac vice*)
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for Defendants Black Diamond Capital
Management, L.L.C., BDCM Opportunity Fund
IV, L.P., Black Diamond Commercial Finance,
L.L.C., Sam Farahnak, and Phil Raygorodetsky*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler
Colin R. Robinson
Peter J. Keane
919 North Market Street, 17th Floor
P O Box 8705
Tel: 302-652-4100
Fax: 302-652-4400
E-mail: bsandler@pszjlaw.com
         crobinson@pszjlaw.com
         pkeane@pszjlaw.com

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren, Esq.
Benjamin M. Mather, Esq.
Janice I. Daul, Esq.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: 215-735-8700
Fax: 215-735-5170
E-mail: scoren@kcr-law.com
         bmather@kcr-law.com
         jdaul@kcr-law.com

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
Jennifer R. Hoover, Esq. (#5111)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Tel: 302-442-7010
jhoover@beneschlaw.com

J. Erik Connolly (*pro hac vice*)
Sven T. Nylen (*pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Tel: 312-212-4949
Fax: 312-767-9192
econnolly@beneschlaw.com
snylen@beneschlaw.com

*Counsel to Defendants Rob Archambault,*
*Terry Taft, and Bob Unfried*

/s/ Seth A. Niederman
Seth A. Niederman (DE No. 4588)
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 300
Wilmington, DE  19801-3062
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com