**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,<br><br>              Debtors, | **Chapter 7**<br><br>**Case No. 19-12153 (KBO)**<br>**(Jointly Administered)**<br><br>**Adv. No. 21-51013 (KBO)** |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., *et al.*,<br><br>              Plaintiff,<br><br>    v.<br><br>BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C.; BDCM OPPORTUNITY FUND IV, L.P.; BLACK DIAMOND COMMERCIAL FINANCE, L.L.C.; SAM FARAHNAK; PHIL RAYGORODETSKY; ROB ARCHAMBAULT; TERRY TAFT; and BOB UNFRIED,<br><br>              Defendants. | **Re: Adv. D.I. 1, D.I. 28** |

**REPLY IN SUPPORT OF DEFENDANTS BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C., BDCM OPPORTUNITY FUND IV, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C, SAM FARAHNAK, AND PHIL RAYGORODETSKY'S MOTION TO DISMISS**

FOX ROTHSCHILD LLP
Seth A. Niederman (DE No. 4588)
919 N. Market Street, Suite 300
Wilmington, DE  19801-3062
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

ROBBINS, RUSSELL, ENGLERT, ORSECK
  & UNTEREINER LLP

Lawrence S. Robbins (admitted *pro hac vice*)
William J. Trunk (admitted *pro hac vice*)
Jack A. Herman (admitted *pro hac vice*)
Leslie C. Esbrook (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

-and-

ZAIGER LLC
Jeffrey H. Zaiger (admitted *pro hac vice*)
Judd A. Linden (admitted *pro hac vice*)
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for Defendants Black Diamond Capital
Management, L.L.C., BDCM Opportunity Fund
IV, L.P., Black Diamond Commercial Finance,
L.L.C., Sam Farahnak, and Phil Raygorodetsky*

February 28, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................... ii

I.    The Trustee Has Not Stated A Claim To Avoid The Lien Grant (Counts IV-VII) ............ 1

    A.    The Constructive Fraud Claims Fail Because The Lien Grant Was Supported By Necessarily Equivalent Value (Counts V, VII) .............................. 2

    B.    The Actual Fraud Claims Fail For Similar Reasons (Counts IV, VI)..................... 4

II.    The Trustee Has Not Stated A Claim To Avoid The Distribution (Counts I-III).............. 4

    A.    The Avoidance Claims Are Barred By The Safe Harbor ....................................... 4

    B.    The Avoidance Claims Are Time Barred By Delaware LLC Act § 18-607(c) ..................................................... 7

III.    The Trustee Has Not Stated A Claim For Breach Of Fiduciary Duty (Counts IX-X) ..................................................... 9

    A.    The Trustee Does Not Specify What Duties Were Breached To Which Entities ..................................................... 9

    B.    The Operative LLC Agreements Exculpate The Director Defendants From Liability..................................................... 10

    C.    The Trustee Has Not Pleaded A Non-Exculpated Breach Of Fiduciary Duty ..................................................... 13

IV.    The Trustee's Claims For Unjust Enrichment, Corporate Waste, Equitable Subordination, And Surcharge Should Be Dismissed (Counts VIII, XI, XII, and XIII) ..................................................... 13

CONCLUSION..................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*A Communication Co. v. Bonutti*,
    55 F. Supp. 3d 1119 (S.D. Ill. 2014)................................................................8

*ALA, Inc. v. CCAIR, Inc.*
    29 F.3d 855 (3d Cir. 1994)...........................................................................11

*In re Allergan ERISA Litig.*,
    975 F.3d 348 (3d Cir. 2020).........................................................................15

*In re Appleseed's Intermediate Holdings, LLC*,
    470 B.R. 289 (D. Del. 2012).........................................................................13

*In re Baum's Bologna, Inc.*,
    50 B.R. 689 (Bankr. E.D. Pa. 1985) .............................................................14

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
    C.A. No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009) ................10

*In re Bernard L. Madoff Inv. Sec. LLC*,
    773 F.3d 411 (2d Cir. 2014)...........................................................................5

*Bragdon v. Bayshore Prop. Owners' Ass'n, Inc.*,
    251 A.3d 661 (Del. Ch. 2021)........................................................................8

*In re C.S. Assocs.*,
    29 F.3d 903 (3d Cir. 1994)...........................................................................15

*In re Capmark Fin. Grp. Inc.*,
    438 B.R. 471 (Bankr. D. Del. 2010)...............................................................2

*In re Cornerstone Therapeutics Inc., Stockholder Litig.*,
    115 A.3d 1173 (Del. 2015) ...........................................................................11

*In re Crucible Materials Corp.*,
    Adv. No. 11-53884 (MFW), 2012 WL 5360945 (Bankr. D. Del. Oct. 31,
    2012) ..............................................................................................................2

*In re Die Fliedermaus LLC*,
    323 B.R. 101 (Bankr. S.D.N.Y. 2005) ...........................................................8

*Eugene A. Delle Donne & Son, L.P. v. Applied Card Sys., Inc.*,
    821 A.2d 885 (Del. 2003) .............................................................................12

*In re Exide Techs., Inc.*,
  299 B.R. 732 (Bankr. D. Del. 2003) ...................................................................3

*In re FAH Liquidating Corp.*,
  2018 WL 2793944, Adv. No. 15-51898 (KG (D. Del. June 11, 2018) ..............................3

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*.,
  482 F.3d 247 (3d Cir. 2007)................................................................................15

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)................................................................................15

*In re Fruehauf Trailer Corp.*,
  444 F.3d 203 (3d Cir. 2006)................................................................................2, 3

*Gilmcher Supermall Venture, LLC v. Coleman Co.*,
  739 N.W.2d 815 (S.D. 2007) ..............................................................................3

*In re Gluth Bros. Constr., Inc.*,
  424 B.R. 379 (Bankr. N.D. Ill. 2009) ...................................................................15

*In re Greektown Holdings, LLC*,
  621 B.R. 797 (Bankr. E.D. Mich. 2020) ...............................................................6

*In re HH Liquidation LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) .....................................................................9

*Holliday v. Credit Suisse Sec. (USA) LLC*,
  No. 20 Civ. 5405 (GBD), 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021)........................5

*In re Lehman Bros. Holdings Inc.*,
  469 B.R. 415 (Bankr. S.D.N.Y. 2012) ..................................................................5

*In re Mach., Inc.*,
  287 B.R. 755 (E.D. Mo. 2002)............................................................................15

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
  945 F.2d 635 (3d Cir. 1991)................................................................................2

*Merit Management Group, LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018)........................................................................................5

*In re Nutri/System of Fl. Assocs.*,
  178 B.R. 645 (E.D. Pa. 1995) .............................................................................15

*Paul Elton, LLC v. Rommel Delaware, LLC*,
  C.A. No. 2019-0750-KSJM, 2020 WL 2203708 (Del. Ch. May 7, 2020)........................8

*Pepsi-Cola Bottling Co. of Salisbury, Maryland v. Handy*,
No. 1973-S, 2000 WL 364199 (Del. Ch. Mar. 15, 2000) ...................................................8

*In re Phar-Mor, Inc. Securities Litigation*,
178 B.R. 692 (W.D. Pa. 1995)........................................................................................9

*In re Qimonda Richmond, LLC*,
467 B.R. 318 (Bankr. D. Del. 2012) ...............................................................................3

*In re R.M.L., Inc.*,
92 F.3d 139 (3d Cir. 1996).............................................................................................2

*Rosenberg v. DVI Receivables XVII, LLC*,
835 F.3d 414 (3d Cir. 2016)...........................................................................................9

*In re S.W. Bach & Co.*,
425 B.R. 78 (Bankr. S.D.N.Y. 2010) ............................................................................14

*Sample v. Morgan*,
914 A.2d 647 (Del. Ch. 2007).................................................................................13, 14

*Sherman v. State*,
133 A.3d 971 (Del. 2016) ...............................................................................................7

*In re Solomon*,
300 B.R. 57 (Bankr. N.D. Okla. 2003) ........................................................................3, 4

*Tomasella v. Nestlé USA, Inc.*,
962 F.3d 60 (1st Cir. 2020).............................................................................................13

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005).........................................................................................11

*In re Tribune Co. Fraudulent Conveyance Litig.*,
11md2296, 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147
(2d Cir. 2021)..................................................................................................................6

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019).............................................................................................6

*United Food and Com. Workers Union v. Zuckerberg*,
250 A.3d 862 (Del. Ch. 2020), *aff'd*, 262 A.3d 1034 (Del. 2021)....................................11

*VFB LLC v. Campbell Soup Co.*,
482 F.3d 624 (3d Cir. 2007)............................................................................................2

*In re W.J. Bradley Mortg. Cap., LLC*,
598 B.R. 150 (Bankr. D. Del. 2019) .........................................................................4, 10

*In re Washington Mut., Inc.*,
  Adv. No. 12-50422 (MFW), 2012 WL 4755209 (Bankr. D. Del. 2012) ..........................14

Statutes, Regulations and Rules

United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*
  § 108(a) ............................................................................................................................7
  § 544(b) ............................................................................................................................4
  § 546(a) .........................................................................................................................7, 9
  § 546(e) .........................................................................................................................4, 5

Del. Code Ann. tit. 6
  § 18-607(a) .......................................................................................................................8
  § 18-607(b) ....................................................................................................................7, 8
  § 18-607(c) ..................................................................................................................7, 8, 9
  § 18-1101(c) ...................................................................................................................12
  § 18-1101(e) ...................................................................................................................12

Fed. R. Civ. P. 12(b)(6) ....................................................................................................11

Uniform Fraudulent Transfer Act § 4, cmt. 2 ........................................................................3

Other Authorities

2 Balotti and Finkelstein's Delaware Law of Corporations and Business
  Organizations § 20.7 (4th ed. 2022-1 Supp.) .......................................................................12

Irina Fox, BACK TO SQUARE ONE: HOW *TRIBUNE* REVIVED THE SETTLEMENT
  PAYMENT SAFE HARBOR TO TRUSTEE AVOIDANCE POWERS IN THE CONTEXT OF
  LEVERAGED BUYOUTS, 29 Norton J. Bankr. L. & Prac. 295 (August 2020) .......................6

Jason Kilborn, MERIT V. FTI AND THE MISSING SILVER BULLET ARGUMENT?,
  Credit Slips (Oct. 25, 2017), https://perma.cc/VGT8-MR3Q ...............................................7

Mohsen Manesh, *Contractual Freedom Under Delaware Alternative Entity Law:
  Evidence from Publicly Traded LPs and LLCs*, 37 J. Corp. L. 555 (2012) .......................9

1 SYMONDS & O'TOOLE ON DE LIMITED LIABILITY COS. § 7.05[A] (2019) ............................8

As explained in our opening brief, the Trustee has failed to state a claim for relief.  The fraudulent transfer claims based on the Lien Grant[1] founder because a lien is, by definition, equivalent in value to the loan it secures; the fraudulent transfer claims based on the Distribution are precluded by Section 546(e)'s safe harbor and time-barred under Delaware's LLC Act; the Trustee has not pled the existence of a non-exculpated fiduciary duty, much less how (and to whom) one was breached; and the Trustee's tagalong claims for unjust enrichment, equitable subordination, corporate waste, and surcharge flunk for much the same reasons.

The Trustee's response is largely an exercise in hand-waving about the fact-dependent nature of these issues.  But aspirations of future discovery do not absolve a plaintiff of his burden to plead valid claims in the first place; whatever hypothetical facts might support the Trustee's claims can be found nowhere in his pleading.  In any event, the Black Diamond Defendants' safe harbor and limitations defenses are properly considered (and dispositive) at the pleading stage.

The Complaint should be dismissed with prejudice.

## I.    The Trustee Has Not Stated A Claim To Avoid The Lien Grant (Counts IV-VII)

The Trustee seeks to avoid a lien the Debtors granted to a Black Diamond affiliate (Fund IV) as security for tens of millions of dollars in new financing that Fund IV extended to the Debtors.  The Debtors hungrily accepted that financing, paid none of it back, and now the Trustee wants to wipe away the lien for good measure.

The Trustee's argument is a nonstarter.  The Lien Grant had no net effect on the Debtors' estates, gave no preference to any preexisting obligation, and was, by definition, equivalent in value to the debt it secured.  *See* Br. 8-13.  Counts IV–VII should be dismissed.

---

[1] Capitalized terms have the meanings ascribed to them in the Black Diamond Defendants' opening brief ("Br.").  *See* D.I. 28.  Exhibits ("Ex.") are those attached to the Declaration of William J. Trunk submitted with that brief.

### A.    The Constructive Fraud Claims Fail Because The Lien Grant Was Supported By Necessarily Equivalent Value (Counts V, VII)

As explained in our opening brief, the constructive fraudulent transfer claims fail because the Trustee has not plausibly alleged that the Debtors received less than reasonably equivalent value for the Lien Grant. *See* Br. 9-10. In response, the Trustee does not meaningfully dispute that the Lien Grant was, by definition, equivalent in value to the financing it secured. Instead, the Trustee urges that dismissal of his claims would be premature because the question of "reasonably equivalent value" is fact-intensive and depends on the "totality of the circumstances." *See* Opp. 23-25.

The Trustee's argument proves too much. For starters, the "totality of the circumstances" test is misplaced where, as here, the debtor receives dollar-for-dollar benefits (like loan proceeds) in exchange for the transfer in question. *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 516 (Bankr. D. Del. 2010) ("[T]here is considerable authority that the replacement of one guaranty by another constitutes reasonably equivalent value and the instances in which the appellate courts have looked to the totality of the circumstances are quite different[.]"); *In re Crucible Materials Corp.*, Adv. No. 11-53884 (MFW), 2012 WL 5360945, at *8 (Bankr. D. Del. Oct. 31, 2012).[2] Few things are so certain in life as death, taxes, and this: exchanging a $100 lien for a $100 bill is *at least* mathematically equivalent value, every single time.

More fundamentally, the fact that reasonably equivalent value *can* be circumstance-

---

[2] The Third Circuit reserves the "totality of the circumstances" test for cases in which debtors received benefits that were intangible (*e.g.*, services) or indirect (*e.g.*, debt issued to a parent). *See, e.g., In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211-12 (3d Cir. 2006) (changes in pension benefit plan); *In re R.M.L., Inc.*, 92 F.3d 139, 148 (3d Cir. 1996) (commitment letter); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646-48 (3d Cir. 1991) (access to credit line and potential synergies). By contrast, the Third Circuit did not mention—much less apply—this test when evaluating whether assets transferred in a spin-off were "worth roughly" what the debtor paid for them. *See VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007).

dependent does not excuse a plaintiff of his burden to actually *plead* those circumstances.  *See* Br. 9 (collecting cases).  Which is to say, the Trustee must plausibly allege surrounding facts that, if proven, would demonstrate that $33 million in cash is worth less than a $33 million lien.  But the Complaint is devoid of allegations that, considered in their "totality" or otherwise, could somehow make the Lien Grant worth more than the financing it secured.  To the contrary, the only "circumstances" the Trustee musters—both in the Complaint (Cplt ¶ 186) and the brief in opposition (Opp. 24)—are the *reasons* the Debtors supposedly needed financing in the first place. But those are beside the point.  The relevant question—whether considered against the "totality of the circumstances," or otherwise—is "whether the debtor got roughly the value it gave." *Fruehauf*, 444 F.3d at 213.[3]  And *that* question is not answered by looking to the Debtors' operating history. It is not answered by inquiring why the Debtors needed financing in the first place.  It is answered by simple arithmetic:  A lien is equivalent in value to the financing it secures.  Full stop.

Not surprisingly, the Trustee does not cite (and we are not aware of) a single case holding that a lien granted to secure new financing could fall short of reasonably equivalent value.[4]  To the contrary, one of the Trustee's cases expressly supports our position:  *In re Solomon* explains that it is "easy to understand why the loan of new monies . . . constitutes reasonably equivalent value."

---

[3] The term "reasonably equivalent value" is intended to focus on objective result—not subjective intent—and so a transferee's good faith is generally "irrelevant to a determination of the adequacy of the consideration."  Uniform Fraudulent Transfer Act § 4, cmt. 2; *see Gilmcher Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 825-26 (S.D. 2007).

[4] *Exide* did not hold otherwise; it merely declined to endorse a "per se rule" that a transfer to secure a "new or antecedent debt always constitute[s] reasonably equivalent value."  *In re Exide Techs, Inc.*, 299 B.R. 732, 747-48 (Bankr. D. Del. 2003).  And it in fact involved, *inter alia*, pledges by a parent and its subsidiaries to secure antecedent debt.  *Id.* at 736.  The Trustee's other cases are likewise distinguishable.  *See In re Qimonda Richmond, LLC*, 467 B.R. 318, 326-27 (Bankr. D. Del. 2012) (antecedent debt); *In re FAH Liquidating Corp.*, 2018 WL 2793944, Adv. No. 15-51898 (KG), at *4-5 (D. Del. June 11, 2018) (preexisting contractual obligation; expressly distinguishing loan cases).

300 B.R. 57, 66 (Bankr. N.D. Okla. 2003).   That is because, when the debtor receives new financing (secured or otherwise), the debtor "receives significant value in the form of new cash," while the "debtor's net worth remains unaltered."  *Id.*

### B.    The Actual Fraud Claims Fail For Similar Reasons (Counts IV, VI)

The Trustee's actual fraud claims fare no better.  The Lien Grant did not "elevate" Black Diamond.  Opp. 26.  It secured *new* financing for Debtors, gave no preference to any antecedent debt, and was entirely balance-sheet neutral.  *See* Br. 11.

As explained (Br. 12), the standalone allegation that an insolvent entity made a transfer to an insider is not sufficient to state a claim for actual fraud.  The Trustee does not argue otherwise. Instead, the Trustee rests his argument on the supposed presence of a third "badge": lack of reasonably equivalent value.  Opp. 26-27.  But, as discussed, the Trustee has not plausibly alleged that element.  The actual fraudulent transfer claims should be dismissed.[5]

## II.    <u>The Trustee Has Not Stated A Claim To Avoid The Distribution (Counts I-III)</u>

The Trustee alleges that the Distribution is avoidable as a fraudulent transfer under 11 U.S.C. § 544(b).  *See* Cplt. ¶¶ 154-75.  But the Trustee's avoidance claims are barred by the Bankruptcy Code's safe harbor provision, 11 U.S.C. § 546(e), as well as the Delaware LLC Act's three-year statute of repose.  Br. 13-22.

### A.    The Avoidance Claims Are Barred By The Safe Harbor

Resisting the safe harbor, the Trustee urges that the Distribution was not made "in connection with" the BD Vinton securities contract because the transactions were memorialized

---

[5] Here, again, the Trustee seeks to ward off dismissal by pointing to the potentially fact-specific nature of this inquiry.  *See* Opp. 26.  But the Trustee does not dispute that a complaint must plead facts that allow the court to "reasonably infer actual fraud."  *See* Br. 11 (quoting *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 169 (Bankr. D. Del. 2019)).  The Trustee pleads nothing like that in relation to the Lien Grant.

on different sheets of paper and did not close simultaneously.[6]  But the safe harbor does not turn

on such formalities.  Under 11 U.S.C. § 546(e), the challenged transfer need not be a component

of, or even referenced in, the underlying "securities contract"; it need only be "related to" or

"associated with" that securities contract, which courts have consistently described as a "low bar."

*In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 422 (2d Cir. 2014); *see* Br. 16-17.  There is

"no required language to connect agreements," and no "temporal or existential requirement" that

must link a transfer and an agreement for the two to be "in connection with" one another.  *In re*

*Lehman Bros. Holdings Inc.*, 469 B.R. 415, 439-42 (Bankr. S.D.N.Y. 2012).[7]

Here, the Complaint makes clear that the Distribution was contemplated at the time of, and

made in connection with, the BD Vinton securities contract.  Cplt. ¶¶ 66-67.  Among other things,

it alleges that Black Diamond had been planning a distribution of the proceeds even before the

Vinton sale was executed.  *Id.*  Because the Distribution comprised proceeds from that securities

contract, this easily clears the "low bar" required for Section 546(e).

The Trustee also argues that Fund IV cannot qualify as a covered entity as a "customer" of

a "financial institution" because that would be "at odds with" *Merit Management Group, LP v.*

*FTI Consulting, Inc.*, 138 S. Ct. 883 (2018).  Opp. 20-22.  Not so.  *Merit* expressly declined to

address the question whether a party qualifies as a financial institution "by virtue of its status as a

'customer.'"  138 S. Ct. at 890 n.2.  And, as the Trustee acknowledges, the Second Circuit has

---

[6] The Trustee does not contest that the sale of the Vinton facility was a "securities contract" within the meaning of the safe harbor.  And the Trustee is wrong to suggest (*see* Opp. 18 n.14) that the Distribution must be a "settlement payment" to qualify for the safe harbor.  *See* 11 U.S.C. § 546(e) (using disjunctive).

[7] In fact, the entity claiming the safe harbor needn't even be a *party* to the underlying securities contract.  *Holliday v. Credit Suisse Sec. (USA) LLC*, No. 20 Civ. 5405 (GBD), 2021 WL 4150523, at *5 (S.D.N.Y. Sept. 13, 2021).

since upheld dismissal of avoidance claims on precisely these grounds in a post-*Merit* decision. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 78-79 (2d Cir. 2019).

The Trustee resists the implications of *Tribune*, citing one out-of-circuit case that he says "criticized" the Second Circuit's decision.  Opp. 21 (citing *In re Greektown Holdings, LLC*, 621 B.R. 797 (Bankr. E.D. Mich. 2020)).  But *Greektown* supports *our* position, not the Trustee's:  the court in *Greektown* agreed that a customer of a financial institution may qualify as a covered entity so long as the customer "authorized the agent to act on its behalf."  621 B.R. at 827.  Here, Fund IV authorized J.P. Morgan Chase to act as its depository agent in connection with the Distribution. Cplt. ¶ 70.  That is the paradigmatic principal-agent relationship.  *See, e.g.*, Irina Fox, BACK TO SQUARE ONE: HOW *TRIBUNE* REVIVED THE SETTLEMENT PAYMENT SAFE HARBOR TO TRUSTEE AVOIDANCE POWERS IN THE CONTEXT OF LEVERAGED BUYOUTS, 29 Norton J. Bankr. L. & Prac. 295 (August 2020) ("[W]here a financial institution previously served as an intermediary, either the transferor or the transferee will qualify as a customer of such financial institution . . . .  [Such transfers] are protected because employing a financial institution as a conduit creates the requisite agency relationship[.]").

Putting aside whether principal-agent relationships are "typically" questions of fact (Opp. 22), the question of agency here is "properly resolved as a matter of law" because the "relevant facts are uncontroverted."  *In re Tribune Co. Fraudulent Conveyance Litig.*, 11md2296 (DLC), 2019 WL 1771786, at *10 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147 (2d Cir. 2021).  One need only read the Trustee's complaint to see that Fund IV was a "customer" of J.P. Morgan Chase in connection with the BD Vinton securities contract.  That settles the matter.

Lest there be any doubt, however, the Court may additionally consider the BD Vinton securities contract—a document "integral" to the Complaint (Br. 15 n.11)—which reveals that

Debtors themselves used a financial-institution agent (Bank of America) in connection with that transaction. That is an independent reason why the safe harbor extends to the Distribution. Br. 14 n.9.[8] The Trustee does not challenge this.

### B.    The Avoidance Claims Are Time Barred By Delaware LLC Act § 18-607(c)

As explained in our opening brief, Section 18-607(c) of the Delaware LLC Act extinguishes all claims to recover LLC distributions—under *any* "applicable law"—after three years. Br. 17-19. And, because this statute of repose regulates a unique state interest (corporate affairs), the Bankruptcy Code's two-year lookback under 11 U.S.C. § 546(a) does not apply. *Id*. at 19-22. Hence, all claims to recover the Distribution, under Delaware's Uniform Fraudulent Transfer Act or otherwise, were extinguished on March 17, 2020.

The Trustee counters that his avoidance claims "are not being asserted pursuant to § 18-607 or any other provision of the LLC Act." Opp. 13. So what? By its very terms (". . . or other applicable law"), Section 18-607(c) extends to *all* claims to recover LLC distributions, regardless of their legal provenance. *Cf. Sherman v. State*, 133 A.3d 971, 980 (Del. 2016) (discussing non-claim statute that "makes no exception to the type or source of the claim").[9]

Next, the Trustee argues that Section 18-607(c) extends only to claims held by the LLC itself, not claims by creditors. Opp. 13. In support, the Trustee wields the "plain language" of the statute. *Id*. (citing 6 Del. Code Ann. § 18-607(b)). But the Trustee is looking at the wrong

---

[8] *See also* Jason Kilborn, MERIT V. FTI AND THE MISSING SILVER BULLET ARGUMENT?, Credit Slips (Oct. 25, 2017), https://perma.cc/VGT8-MR3Q (observing that a financial institution would "certainly be acting as the customer's (account holder's) agent" when "implementing a wire transfer").

[9] The Trustee separately argues that, even assuming Section 18-607 applies, his claims are timely because 11 U.S.C. § 108(a) grants the Trustee an additional two years to assert state law claims. That is incorrect, because Section 108(a) does not apply to avoidance actions. *See* Br. 20 n.14.

7

language.  He cites subsection ***(b)*** of the LLC Act, which describes the circumstances in which a member has liability "***to a*** limited liability company" for a distribution.  6 Del. Code Ann. § 18-607(b) (emphasis added).  One must keep reading:  The statute of repose is found in the ensuing provision, subsection (c) of the LLC Act, and *that* subsection—in marked contrast to subsection (b)—contains no language limiting its scope to claims by the LLC itself.  The leading treatise confirms what the plain text says:  Section 18-607(c) extends to creditor claims.  *See* 1 SYMONDS & O'TOOLE ON DE LIMITED LIABILITY COS. § 7.05[A] (2019) (identifying "fraudulent transfer law" as an example of "other applicable law" covered by Section 18-607(c)).

The Trustee acknowledges that the scope of Section 18-607(c) is a question of first impression both in Delaware and in this Circuit.[10]  As for persuasive authority, the Trustee's nonbinding cases are not persuasive.  *See* Opp. 14-15.  Each grounded its holding on the reasoning of a single case, *A Communication Co. v. Bonutti*, 55 F. Supp. 3d 1119 (S.D. Ill. 2014).  The *Bonutti* case, in turn, reasoned that the text of subsections (a) and (b) of the LLC Act serve as unwritten limitations on the statute of repose found in subsection (c).  *Id*. at 1126-27.  But that has it backwards:  That subsection (c) *lacks* the limiting language found in subsections (a) and (b) underscores that it was intended to sweep more broadly than those other provisions.  *Bragdon v. Bayshore Prop. Owners' Ass'n, Inc.*, 251 A.3d 661, 689 (Del. Ch. 2021) ("disparate inclusion or exclusion" is intentional); *see* Br. 18-19.[11]

---

[10] The Delaware cases cited by the Trustee are not on point.  In *Paul Elton, LLC v. Rommel Delaware, LLC*, C.A. No. 2019-0750-KSJM, 2020 WL 2203708 (Del. Ch. May 7, 2020), the court opined in *dicta* on § 18-607(b), not § 18-607(c), after reading "a mere sentence [on it] in briefing." *Id.* at 15 & n.88.  In *Pepsi-Cola Bottling Co. of Salisbury, Maryland v. Handy*, No. 1973-S, 2000 WL 364199 (Del. Ch. Mar. 15, 2000), the court responded to arguments that the LLC Act was the only statute under which LLC members could face liability, regardless of a claim's timeliness.  *Id.* at *5.  We make no such assertion here.

[11] The Trustee makes too much of Defendants' citation to *In re Die Fliedermaus LLC*, 323 B.R. 101 (Bankr. S.D.N.Y. 2005).  Defendants cite *Fliedermaus* only to demonstrate that courts

The Trustee does not meaningfully engage with Defendants' argument that the Bankruptcy Code does not preempt the LLC Act's three-year statute of repose.  He asserts simply that 11 U.S.C. § 546(a) automatically gives the trustee two years to assert avoidance claims that were not time-barred as of the petition date.  Opp. 16-17.  Not so.  Section 546(a)'s two-year lookback typically applies to state fraudulent transfer claims, but only because Congress has demonstrated a "clear and manifest" intent to extend the limitations period for a trustee to bring those state-law claims in bankruptcy.  *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 419 (3d Cir. 2016).  By contrast, Congress has *not* manifested a clear intent to preempt state *statutes of repose*, like Section 18-607(c), that speak to uniquely state-law interests.  *See* Br. 20.[12]

## III.   **The Trustee Has Not Stated A Claim For Breach Of Fiduciary Duty (Counts IX-X)**

The fiduciary duty claims should be dismissed because the Trustee has failed to plead a non-exculpated breach against the Director Defendants.  *See* Br. 22-26.

### A.   **The Trustee Does Not Specify What Duties Were Breached To Which Entities**

Delaware law is clear that the "breach of fiduciary duty analysis must occur on a company-by-company" basis.  *In re HH Liquidation LLC*, 590 B.R. 211, 274 (Bankr. D. Del. 2018).  Yet

---

have recognized that the language of subsection (b) is different from the language of subsection (c), and therefore must mean something different.

[12] In that regard, the Trustee's effort to distinguish *In re Phar-Mor, Inc. Securities Litigation* is unavailing.  Opp. 17 (citing 178 B.R. 692 (W.D. Pa. 1995)).  The Trustee insists that *Phar-Mor* is inapposite because it involved the "inherent state interest" of managing probate matters, whereas no similar state interests are present here.  The Trustee does not explain why Ohio's interest in overseeing probate is any more compelling than Delaware's interest in overseeing the affairs of business entities organized in the state.  *See* Br. 20-22; *see also* Mohsen Manesh, *Contractual Freedom Under Delaware Alternative Entity Law: Evidence from Publicly Traded LPs and LLCs*, 37 J. Corp. L. 555, 559 (2012) (noting Delaware's "longtime dominance" as the state of incorporation for a majority of large corporations and observing that "all evidence indicates that today Delaware enjoys similar dominance with respect to alternative entities" such as LLCs).

the Trustee freely concedes (Opp. 30) that the "Complaint alleges breaches and corresponding harm as to all of the Debtors rather than attempting to parse" any of them.

The Trustee assures that its monolithic treatment "make[s] sense" given that all "three Debtors were driven into bankruptcy due to the events described in the Complaint." Opp. 30. That misses the point. The fact that each of the Debtors is in bankruptcy tells us nothing about whether the Defendants owed fiduciary duties; if so, what duties were owed; and whether those duties were breached (and, if so, to which Debtor(s)). To answer *those* questions, one must begin with the unique governance agreements for each LLC, which necessarily are "the point of departure for a Trustee claiming" breach. *W.J. Bradley*, 598 B.R. at 166-67. By disregarding the differences among the Debtor LLCs, the Trustee leaves these fundamental questions unanswered. He has not, for example, explained how the Director Defendants owed—much less breached—duties to the two LLCs that did not even have boards of directors. *See* Br. 23 & n.20.[13]

## B.    The Operative LLC Agreements Exculpate The Director Defendants From Liability

The operative LLC agreements also bar the Trustee's fiduciary duty claims because the agreements unambiguously exculpate managers from any liability. *See* Br. 23-26.

The Trustee concedes as much for two of the LLC agreements, offering no challenge to their interpretation.[14] He instead seeks harbor in a purported procedural roadblock: exculpation

---

[13] The Trustee observes that "Debtors Bayou Investment and BD LaPlace invested [sic] their management powers in Debtor Bayou Holdings," which "in turn invested [sic] its management authority in its Board of Directors." *See* Opp. 30 n.21. True, but irrelevant. It is not clear that the directors of an LLC owe duties to entities managed by the LLC. *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, C.A. No. 3658-VCS, 2009 WL 1124451, at *9 n.44 (Del. Ch. Apr. 20, 2009) (this "raises some difficult policy issues and disregards corporate formalities in a manner unusual for Delaware law"). But even assuming such duties exist, they are limited: the directors must only refrain from exploiting control for their *personal* benefit. *Id.* at *10.

[14] The BD LaPlace and Bayou Investment LLC agreements each contain identical provisions exculpating managers from liability: "No Member or Manager shall be liable for breach

10

is an affirmative defense, the Trustee argues, and so its "effect" cannot "be determined" on a motion to dismiss.  Opp. 31.  That is incorrect.[15]  Under Delaware law, exculpation provisions operate "more in the nature of an immunity" rather than "as an affirmative defense."  *United Food and Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 885 (Del. Ch. 2020), *aff'd*, 262 A.3d 1034 (Del. 2021).  Thus, a plaintiff seeking damages "must plead non-exculpated claims . . . to survive a motion to dismiss."  *In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1175 (Del. 2015).[16]

The Trustee contends that the third LLC agreement, governing Bayou Holdings LLC (Ex. 3), does not exculpate the directors at all.  Opp. 32-33.  Per the Trustee, Section 3.9 of the agreement—which specifies that Directors shall not be liable "for the debts, liabilities, commitments," or other "losses of the Company"—is "not the same thing as eliminating a Director's liability for monetary damages caused by a breach of his fiduciary duties."  Opp. 32.  But the Trustee never really explains why, nor does he reckon with the plain text of the provision.  Indeed, the Trustee elides the key language:  Section 3.9 states that Directors have no liability ". . . *to the Company*" for any of its losses, liabilities, etc.  *See* Br. 25 & n.25 (contrasting Section 3.9 to standard anti-veil-piercing language, which extends only to claims by third parties).  The

---

of any duty (including any fiduciary duty) provided for in the Act or otherwise, other than to the extent not permitted to be eliminated under the Act." Ex. 1 (Bayou Investment Agreement) § 9.3; Ex. 2 (BD LaPlace Agreement) § 9.3.

[15] It is also irrelevant.  A "complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."  *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859-60 (3d Cir. 1994).  There is no need to defer ruling where, as here, the relevant LLC agreements unambiguously exculpate for any potential breaches.

[16] Skirting Delaware law, the Trustee cites several bankruptcy court decisions that trace back to an earlier Third Circuit case (*In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005)).  But that decision predated *Cornerstone*.  And it is also *dicta*:  the Third Circuit rejected the exculpation argument for the independent reason that it was raised for the first time on appeal.  416 F.3d at 242.

most obvious vehicle through which a Director might have liability "to the Company" is a tort claim, precisely what the Trustee is now pursuing in the Company's shoes.  The Trustee also reads into Section 3.9 words it does not contain: the provision is *not* limited to situations where liability arises "solely" by reason of having been a Director.  *Contra* Opp. 32 (appending the words "due solely to his role as a Director" to the end of Section 3.9).  That, too, distinguishes Section 3.9 from a similar provision in the Delaware LLC Act that protects members and managers from veil-piercing liability, and underscores that Section 3.9 was intended to extend to circumstances where tortious conduct is alleged.  *Compare with* 2 Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations § 20.7 (4th ed. 2022-1 Supp.) ("The word 'solely,' . . . indicates that a . . . manager will not be liable . . . only by reason of being a member or manager; however, other acts or events could result in the imposition of liability upon or assumption of liability by a member or manager."); *see also* Br. 25 n.25.  The Trustee addresses none of this.

Last, the Trustee points out that the Bayou Holdings Agreement contains a separate provision (Section 3.10) headed "Indemnification and Exculpation by the Company."  Opp. 33. Setting aside that such headers "are for descriptive purposes only" (*see* Section 13.9), this actually supports *our* position.  As the Trustee notes, Section 3.10 "only contains indemnification provisions, not an exculpation provision."[17]  That makes good sense:  Section 3.10 is silent on this issue not because the agreement provides no exculpation (as the Trustee contends), but because exculpation is separately provided for in Section 3.9.  *See Eugene A. Delle Donne & Son, L.P. v.*

---

[17] The Trustee also argues that the "indemnification provision[] actually recognizes the continuing existence of the fiduciary duties owed under the agreement."  Opp. 33.  But this misses the point:  Defendants do not argue that Section 3.9 *eliminates* any fiduciary duties, only that it *exculpates* for certain damages.  *Compare* 6 Del. Code Ann. § 18-1101(c) (permitting elimination of fiduciary duties), *with* § 18-1101(e) (permitting exculpation).

*Applied Card Sys., Inc.*, 821 A.2d 885, 887 (Del. 2003) (contract must be read "as a whole").

### C. The Trustee Has Not Pleaded A Non-Exculpated Breach Of Fiduciary Duty

Even if the Trustee could theoretically plead a non-exculpated breach, he has not done so. The Trustee asserts that the Complaint's "detailed allegations concerning" the Distribution and Lien Grant "are more than sufficient to provide notice of the basis for the Trustee's claims." Opp. 30. But the Trustee does not bother to address the relevant pleading standards. *See* Br. 24 n.24. This is yet another reason the fiduciary duty claims should be dismissed.

### IV. The Trustee's Claims For Unjust Enrichment, Corporate Waste, Equitable Subordination, And Surcharge Should Be Dismissed (Counts VIII, XI, XII, and XIII)

Unjust Enrichment.  The Trustee concedes that his unjust enrichment claim is predicated on the same theories as the fraudulent transfer claims. Opp. 27-28. Because the Complaint has not sufficiently stated claims for fraudulent transfer, the unjust enrichment claim should be dismissed as well. *Supra* 1-9 & Br. 9-10, 26.

Nor may the Trustee pursue unjust enrichment as an "alternative theor[y]" simply because his fraudulent transfer claims might be dismissed. Opp. 28. Unjust enrichment may be pleaded in the alternative only where a remedy at law might not be "available to" a plaintiff, such as where the ambiguity of a contract "casts doubt on whether" a claim exists; the "viability" of the legal claim is "beside the point." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 83-84 (1st Cir. 2020) (internal quotation marks and citation omitted).

Corporate Waste.  Neither the Lien Grant nor the Distribution approaches the "rare unconscionable" case where directors have "irrationally squander[ed]" corporate assets. *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 303 (D. Del. 2012); *see* Br. 26 n.27. The Trustee suggests that the economic terms of those transactions were so "one-sided" that "no person acting in good faith" could have approved them. Opp. 34 (citing *Sample v. Morgan*, 914 A.2d

647, 670 (Del. Ch. 2007)).[18]  That is beyond the pale.  What *would* have been remarkable is if the directors had refused to accept tens of millions of dollars in subordinated financing at a time when the "Debtors were running out of cash."  Cplt. ¶ 114.  In any event, the Director Defendants are exculpated against claims for corporate waste.  *See supra* 10-12.

 Equitable Subordination.  The Trustee has not stated a claim for equitable subordination for the same reasons he not stated a claim for fraudulent transfer.  The claim is also premature: "The great weight of authority is that Section 510(c) does not permit subordination absent an allowed claim."  *In re Washington Mut., Inc.*, Adv. No. 12-50422 (MFW), 2012 WL 4755209, at *6 (Bankr. D. Del. 2012) (internal quotation marks and citation omitted).[19]  That is because, short of an allowed claim, there is not "any case or controversy to resolve."  *In re S.W. Bach & Co.*, 425 B.R. 78, 84 n.5 (Bankr. S.D.N.Y. 2010) (internal quotation marks and citation omitted).  As the Trustee acknowledges (Opp. 36 n.27), BDCM and the Director Defendants have not filed any claims, and the claims filed by Fund IV and BDCF have not yet been allowed.[20]

 Surcharge.  The Trustee does not dispute that his outlays prior to Chapter 11 conversion cannot be recovered by way of surcharge.  *In re Baum's Bologna, Inc.*, 50 B.R. 689, 691 (Bankr. E.D. Pa. 1985).  For post-conversion costs, the Trustee claims simply that they were "reasonable

---

[18] Comparing the allegations here with the facts of *Sample* only proves the point.  In *Sample*, a corporate waste claim was allowed to proceed where, in exchange for a mere pittance ($200), the directors had negotiated a compensation package to receive one-third of the company's voting powers, its dividend flow, its value in the event of a sale, and payment of their taxes at the expense of the company's solvency.  914 A.2d at 670.

[19] The "intertwined" nature of hypothetical equitable subordination claims and fraudulent transfer claims makes no difference.  Opp. 36 n.27.  In cases involving fraudulent transfer claims, subordination claims will necessarily be "intertwined."  Yet the Trustee identifies only one case that allowed hypothetical equitable subordination claims to proceed prior to allowance or filing of a proof of claim.  *Id.*  The Court should follow the great weight of authority holding otherwise.

[20] The same reasoning requires dismissal of the surcharge claim.  As the Trustee concedes, surcharge "will only be relevant" if the Court determines a party "holds a valid lien." Opp. 38.

and necessary" and provided a "'direct benefit'" to the Black Diamond Defendants.  Opp. 37-38.

Such "bare-bones" allegations will not defeat a motion to dismiss.  *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210 (3d Cir. 2009).  The Trustee must plausibly allege that the expenses "specifically

benefited the secured creditor, not just [] generally preserved the assets of the estate as a whole."

*In re Gluth Bros. Constr., Inc.*, 424 B.R. 379, 399 (Bankr. N.D. Ill. 2009).  Yet the expenses

identified in the Complaint—for pursuing accounts receivable, pursuing turnover of estate funds,

and preserving documents (Cplt. ¶ 228)—offered no discernible benefit to the Black Diamond

Defendants in particular.

 In the alternative, the Trustee argues that the Black Diamond Defendants impliedly

consented to expenses, particularly certain pre-conversion expenses.  But pre-conversion expenses

do not provide a "direct benefit" to creditors, as required to state a surcharge claim.  *In re C.S.*

*Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994).  What's more, the Eighth Circuit cases that the Trustee

cites are inapposite.  *See* Opp. 38 n.29.  The Eighth Circuit has "adopted a much more liberal

approach" to implied consent than the Third Circuit.  *In re Mach., Inc.*, 287 B.R. 755, 768 (E.D.

Mo. 2002).  Here, consent must be "clear and unequivocal"; it "is not to be lightly inferred."  *In re*

*Nutri/System of Fl. Assocs.*, 178 B.R. 645, 659 (E.D. Pa. 1995) (internal quotation marks and

citation omitted).  The Complaint offers no plausible theory of implied or explicit consent.

## CONCLUSION

 The Complaint should be dismissed with prejudice. [21]

---

[21] The Trustee's request for leave to amend in the alternative should be denied. "[T]he settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 252-53 (3d Cir. 2007).  The "complete lack of information . . . to aid the District Court in its assessment of the[] request," and failure to "say anything at all about how" the Trustee "intend[s] to amend the[] pleading," also counsel in favor of denial. *In re Allergan ERISA Litig.*, 975 F.3d 348, 358 (3d Cir. 2020).

Date: February 28, 2022

/s/ Seth A. Niederman
Seth A. Niederman (DE No. 4588)
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 300
Wilmington, DE  19801-3062
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

Respectfully submitted,

/s/ Lawrence S. Robbins
Lawrence S. Robbins
William J. Trunk
Jack A. Herman
Leslie C. Esbrook
ROBBINS, RUSSELL, ENGLERT, ORSECK
   & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com

ZAIGER LLC
Jeffrey H. Zaiger (admitted *pro hac vice*)
Judd A. Linden (admitted *pro hac vice*)
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for Defendants Black Diamond Capital
Management, L.L.C., BDCM Opportunity Fund
IV, L.P., Black Diamond Commercial Finance,
L.L.C., Sam Farahnak, and Phil Raygorodetsky*