# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.* | ) ) ) | Case No. 19-12153 (KBO) |
| Debtors. | ) ) ) | |
| | ) | |
| George L. Miller, in his capacity as the Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD, L.L.C., *et al.*, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Adv. Proc. No. 21-51013 (KBO) |
| v. | ) ) | **Related Docket to Nos. 63 & 65** |
| Black Diamond Capital Management, L.L.C.; BDCM Opportunity Fund IV, L.P.; Black Diamond Commercial Finance, L.L.C.; Sam Farahnak; Phil Raygorodetsky; Rob Archambault; Terry Taft; and Bob Unfried, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM ORDER

## I. PROCEDURAL HISTORY & ALLEGED FACTS

The defendants in this adversary proceeding are Black Diamond Capital Management L.L.C. ("BDCM"), BDCM Opportunity Fund IV, L.P. ("Fund IV"), and Black Diamond Commercial Finance, L.L.C. ("BDCF" and collectively, the "Black Diamond Entities"), Sam Farahnak and Phil Raygorodetsky (the "Black Diamond Directors"), and Rob Archambault, Terry Taft, and Bob Unfried (the "Independent Directors" and, together with the Black Diamond Directors, the "Director Defendants"). They have moved to dismiss (the "Motions")[1] Counts 9 and 10 of the *First Amended Complaint*[2] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy

---

[1] Adv. D.I. 63, 65.

[2] Adv. D.I. 59 (the "First Am. Compl.").

1

Procedure.[3] The First Amended Complaint was filed by the chapter 7 trustee (the "Trustee") for the jointly administered bankruptcy estates of three Delaware limited liability companies, Bayou Steel BD Holdings, LLC ("Bayou Holdings"), BD Bayou Steel Investment, LLC ("Bayou Investment"), and BD LaPlace, LLC ("BD LaPlace" and, together with Bayou Holdings and Bayou Investment, the "Debtors"). BDCM owns Bayou Holdings.[4] Bayou Holdings is the sole member and owner of Bayou Investment, the sole member and owner of BD LaPlace.[5] Bayou Holdings is the manager of both Bayou Investment and BD LaPlace.[6]

The Court dismissed Counts 9 and 10 of the Trustee's original Complaint[7] but granted leave to amend.[8] As amended, Count 9 seeks to recover damages from the Director Defendants for alleged breaches of fiduciary duty owed to Bayou Holdings as members of its Board of Directors.[9] Specifically, Count 9 charges the Black Diamond Directors with breaching the duties of loyalty and care and the Independent Directors with breaching the duty of loyalty with respect to three transactions detailed below (the "Challenged Transactions"). Count 10 seeks to recover damages from the Black Diamond Entities for aiding and abetting these breaches of fiduciary duty as well as the breaches committed by Bayou Holdings as manager of BD LaPlace and Bayou Investment in connection with the Challenged Transactions.[10]

The first Challenged Transaction is a March 2017 distribution of $30 million by BD LaPlace to Fund IV (the "Distribution").[11] The Distribution was funded by borrowings from a revolving loan with Bank of America, N.A. ("BoA") and SunTrust Robinson Humphrey, Inc.[12] BD LaPlace was the borrower under the revolving loan, Bayou Holdings and Bayou Investment were guarantors, and the obligations thereunder were secured by security interests and liens on substantially all of the Debtors' assets.[13] The second Challenged Transaction is a December 2017 subordinated secured loan extended by Fund IV to BD LaPlace and guaranteed by Bayou Holdings and Bayou Investment (the "BD Term Loan").[14] The Debtors' repayment obligations were secured by security interests and liens on substantially all of their assets (the "BD Lien Grant") held by

---

[3] FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012(b).

[4] First Am. Compl. ¶ 19.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 16.

[7] Adv. D.I. 1.

[8] *See generally Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371 (Bankr. D. Del. 2022) (dismissing with leave to amend Counts IV, V, VI, VII, VIII, IX, X, XI, XII).

[9] First Am. Compl. ¶¶ 182-93.

[10] *Id.* ¶¶ 194-98. The Court's prior decision dismissed without leave to amend the Trustee's fiduciary duty claims with respect to BD LaPlace and Bayou Investment because their limited liability company agreements provide exculpation from liability for breaches of fiduciary duty. *Bayou Steel*, 642 B.R. at 401-02. The exculpation provisions did not, however, support dismissal of the aiding and abetting claims with respect to these Debtors. *Id.* at 405.

[11] First Am. Compl. ¶¶ 65-70.

[12] *Id.* ¶¶ 50, 68, 96.

[13] *Id.* ¶ 51.

[14] *Id.* ¶¶ 117-18, 122.

BDCF, as agent, and Fund IV.[15] The BD Lien Grant is the third Challenged Transaction. Shortly prior to the commencement of the Debtors' bankruptcy cases on October 1, 2019, approximately $36.5 million was outstanding under the BD Term Loan.[16]

The Defendants argue in the Motions that the Trustee has again failed to state plausible fiduciary duty claims with respect to the Challenged Transactions. Having considered the briefing submitted by the parties,[17] the Court will deny and grant the Motions in part.

## II. APPLICABLE LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6) challenging the sufficiency of a plaintiff's statement of claim, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[18] This is a plausibility standard, requiring more than a sheer possibility that a defendant acted unlawfully.[19]

## III. LEGAL DISCUSSION

### A. Count 9 – Breach of Fiduciary Duties

Managers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the company unless the operating agreement provides otherwise.[20] As the Court previously concluded, the limited liability company agreement of Bayou Holdings (the "Holdings LLC Agreement")[21] neither eliminates the Director Defendants' fiduciary duties nor exculpates liability for breaches of those duties.[22]

---

[15] *Id.* ¶¶ 119, 122.

[16] *Id.* ¶¶ 128-29, 132.

[17] Briefing on the Motions completed on December 27, 2022. *See* Adv. D.I. 64, 66, 67, 69, 70, 71.

[18] *Crystallex Int'l Corp. v Petrolesos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018) (quoting *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015)).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

[20] *See, e.g.*, *William Penn P'ship v. Saliba,* 13 A.3d 749, 756 (Del. 2011); *Largo Legacy Grp., LLC v. Charles*, No. 2020-0105, 2021 WL 2692426, at *12 (Del. Ch. June 30, 2021); *Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, at *10 (Del. Ch. Feb. 24, 2010); *Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658, 2009 WL 1124451, at *8 (Del. Ch. Apr. 20, 2009).

[21] The Debtors' limited liability agreements were submitted with the Director Defendants' briefing. *See, e.g.*, Adv. D.I. 67, Ex. 1 (limited liability agreement of Bayou Investment (the "Bayou Investment LLC Agreement")), Ex. 2 (limited liability agreement of BD LaPlace (the "BD LaPlace LLC Agreement")), Ex. 3 (limited liability agreement of Bayou Holdings (the "Holdings LLC Agreement")). The Court can consider them in rendering its decision as they are integral to the Trustee's claims. *Miller v. Bradley (In re W.J. Bradley Mortg. Cap., LLC)*, 598 B.R. 150, 166 (Bankr. D. Del. 2019) ("It would be judicially uneconomic for the Court to consider the Trustee's breach of fiduciary duty claims without considering the Operating Agreement.").

[22] *Bayou Steel*, 642 B.R. at 402-05.

"In the limited liability context, as in the corporate context, the duty of loyalty mandates that the best interest of the company and its stakeholders take precedence over any interest possessed by the manager and not shared by the stakeholders generally."[23] To state a claim for breach of the duty of loyalty, the plaintiff must allege facts showing that "a self-interested transaction occurred, and the transaction was unfair to the plaintiff."[24] A loyalty claim may also exist if a fiduciary fails to act in good faith.[25] The duty of care is the duty to act on an informed basis.[26] Duty of care violations are actionable when a director acts with "gross negligence."[27] To properly plead gross negligence, the plaintiff must allege facts that plausibly show the directors were "recklessly uninformed" or acted "outside the bounds of reason."[28]

### 1. The Black Diamond Directors

With respect to the Distribution, the Black Diamond Directors argue that the Trustee does not articulate how they breached their fiduciary duties to **Bayou Holdings** when **BD LaPlace** made the Distribution. They contend that the Trustee fails to allege any action taken by Bayou Holdings as parent with respect to the Distribution that would plausibly support a breach of fiduciary duty claim against them as members of its Board of Directors.

This argument overlooks the fact that the Black Diamond Directors, through their participation on the Bayou Holdings' Board of Directors, controlled the assets and operations of wholly-owned subsidiary BD LaPlace.[29] Under these circumstances, the Black Diamond Directors can breach their fiduciary duties to Bayou Holdings as parent regardless of whether the Challenged Transactions were implemented through BD LaPlace.[30] The Delaware Court of Chancery

---

[23] *Largo Legacy,* 2021 WL 2692426, at *13 (citing *CSH Theatres, LLC v. Nederlander of S.F. Assocs.*, No. 9380, 2018 WL 3646817, at *27 (Del. Ch. July 31, 2018), *aff'd in part, rev'd in part on other grounds sub. nom. In re Shorestein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39 (Del. 2019)).

[24] *Theseus Strategy Grp., LLC v. Barsa (In re Old Bpsush, Inc.)*, No. 20-1450, 2021 WL 4453595, at *11 (D. Del. Sept. 29, 2021) (citing *Liquidating Trust of Sols. Liquidation, LLC v. Stienes (In re Sols. Liquidation LLC)*, 608 B.R. 384, 401 (Bankr. D. Del. 2019)); *accord Off. Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 540 (Bankr. D. Del. 2009).

[25] *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

[26] *Buchwald Cap. Advisors, LLC v. Schoen (In re OPP Liquidating Co.)*, No. 19-10729, 2022 WL 774063, at *8 (Bankr. D. Del. Mar. 14, 2022).

[27] *Id.*; *see also Old Bpsush,* 2021 WL 4453595, at *8 ("A claim for breach of the duty of care requires a showing of gross negligence which generally requires directors and officers to fail to inform themselves fully and in a deliberate manner.").

[28] *Old Bpsush,* 2021 WL 4453595, at *8.

[29] *See* Bayou Investment LLC Agreement § 4.1(a) (vesting all management in BD Long Products as its sole "Manager"); BD LaPlace LLC Agreement § 4.1(a) (same); *see also* Holdings LLC Agreement at 1 (stating that BD Long Products, LLC changed its name on April 6, 2016 to Bayou Holdings).

[30] *Grace Bros., Ltd. v. Uniholding Corp.*, No. 17612, 2000 WL 982401 (Del. Ch. July 12, 2000); *see also In re Sunstates Corp. S'holder Litig.*, No. 13284, 2001 WL 432447, at *1 (Del. Ch. Apr. 18, 2001) (denying motion to dismiss claims that parent directors breached their duties of care and loyalty to the parent even though the transaction at issue was implemented through various subsidiaries rather than the parent and explaining:

> Those subsidiaries may, conceptually, have separate claims against their directors. They, or someone acting on behalf of their creditors, may also have claims against the parent corporation and

considered this issue in *Grace Brothers, Ltd. v. Uniholding Corp.* when confronted with a duty of loyalty claim and held that "[t]here is no safe harbor in our corporate law for fiduciaries who purposely permit a wholly-owned subsidiary to effect a transaction that is unfair to the parent company on whose board they serve."[31] "Directors of a parent board can breach their duty of loyalty if they purposely cause – or knowingly fail to make efforts to stop – action by a wholly-owned subsidiary that is adverse to the interests of the parent corporation and its stockholders."[32]

As explained in *Grace*, when a parent's directors participate on a wholly-owned subsidiary's board or have knowledge of its plans, they bear fiduciary responsibility to the parent to ensure that the subsidiary does not take actions that injure it.[33] In refusing "to adopt an 'uncontrollable child' theory of parent-subsidiary relations", the Chancery Court found it implausible that a parent's directors are powerless to control actions of a wholly-owned subsidiary:

> [D]efendants would have me pretend that the Zwirn who served as Chairman of UniHolding [parent] had no responsibility to control or know about the actions of the Zwirn who served as Chairman of UGL [subsidiary], even though "they" were in fact one person.
>
> This argument rests on the premise that the members of a parent board who also serve on the board of a subsidiary board may take action at the subsidiary level that is disloyal to the parent without bearing any fiduciary responsibility to the parent to help it exercise its power to stop the disloyal action. Put more simply, the plaintiffs argue that a director of a parent board such as Zwirn has no duty to stop himself from injuring the parent while wearing his subsidiary hat. The policy implications of accepting this premise are, to put it mildly, unappealing. I decline to endorse an approach that so obviously invites abuse and that would gut the duty of loyalty owed by Delaware directors to their stockholders.[34]

The Black Diamond Directors allegedly caused the Distribution by BD LaPlace to BDCM while simultaneously serving as managing directors of BDCM and members of Bayou Holdings' Board of Directors.[35] The Distribution was funded from the revolving loan, which was guaranteed

---

those who controlled it under some theory of recovery. The potential existence of those claims does not, however, mean that the parent company directors cannot be sued in that capacity for breach of fiduciary duty).

[31] *Grace Bros.*, 2000 WL 982401, at *13.

[32] *Id.* at *1.

[33] *Id.* at *12.

[34] *Id.* at **12-13.

[35] *See, e.g., Miller v. Anconnect, LLC (In re Our Alchemy)*, No. 16-11596, 2019 WL 4447541, at *15 (Bankr. D. Del. Sept. 16, 2019) ("To show that a director was self-interested, it usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." (quoting *Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 119 (Bankr. D. Del. 2008) (internal quotations omitted)). The First Amended Complaint does not state who authorized the Distribution. Based on the Independent Director's alleged lack of

by Bayou Holdings and Bayou Investment and upon which BD LaPlace's operations relied.[36] It occurred without meaningful consultation with management and despite expressed concerns regarding the negative impact it would have on BD LaPlace's precarious financial condition.[37] The Distribution worsened BD LaPlace's liquidity issues until a severe crisis occurred, rendered BD LaPlace insolvent, and necessitated a capital infusion.[38] The infusion came in the form of the BD Term Loan from the BDCM-managed Fund IV,[39] arguably round-tripping the funds received from the Distribution on account of its equity holdings but now extended on a secured basis with repayment priority over unsecured creditors. These allegations, if true, are sufficient to support a claim that the Black Diamond Directors breached their duties of care and loyalty to Bayou Holdings with respect to the Distribution.

With respect to the interested BD Term Loan and BD Lien Grant, the Black Diamond Directors argue that the Trustee fails to allege that these transactions were unfair. "Under the entire fairness standard of judicial review, . . . director defendants must establish to the court's satisfaction that the transaction was the product of both fair dealing *and* fair price."[40] The Trustee does not disagree that the entire fairness standard governs. Rather, he contends that the Black Diamond Directors must prove that the two Challenged Transactions were entirely fair and that the fact intensive nature of this inquiry precludes dismissal under Rule 12(b)(6). The Trustee is correct that courts generally avoid dismissing a breach of fiduciary duty claim at the pleading stage when entire fairness is the governing standard.[41] However, he overlooks that dismissals occur when the facts alleged fail to demonstrate that the transactions at issue were unfair.[42]

---

involvement and the Trustee's allegation that the Black Diamond Directors "arranged" it, it is reasonable for the Court to infer at this stage that the Black Diamond Directors authorized the Distribution. First Am. Compl. ¶¶ 72, 79.

[36] First. Am. Compl. ¶¶ 51, 68-70, 72-73, 189; *see also id.* ¶ 14 (noting that by the end of 2016, BD LaPlace was the only operating entity in the Debtors' corporate structure).

[37] *Id.* ¶¶ 67, 71-75, 78, 81, 189.

[38] *Id.* ¶¶ 81, 93-117, 148-49.

[39] *Id.* ¶¶ 114-15, 148-49.

[40] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *modified,* 636 A.2d 956 (Del. 1994); *accord Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) ("There is no "safe harbor" for such divided loyalties in Delaware. When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain. The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." (internal citations omitted)).

[41] *See, e.g.*, *In re Carvana Co. S'holders Litig.*, No. 2020-0415, 2022 WL 2352457, at *17 (Del. Ch. June 30, 2022); *Tornetta v. Musk*, 250 A.3d 793, 813 (Del. Ch. 2019); *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 589 (Del. Ch. 2015).

[42] *See, e.g., Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 40 (Del. 1996) (dismissing amended complaint for failure to state a claim because plaintiff did not allege facts showing the transaction was unfair), *aff'g* No. 12563, 1995 WL 250375 (Del. Ch. Apr. 21, 1995); *Monroe Cnty. Emps. Retire. Sys. v. Carlson*, No. 4587, 2010 WL 2376890, at *2 (Del. Ch. June 10, 2010) (dismissing complaint because the plaintiff failed to make factual allegations regarding unfair price and explaining that "[t]he entire fairness test is not a bifurcated one; dealing and price must both be considered."); *c.f. Musk*, 250 A.3d at 812-13 (determining that the well-pled facts demonstrated that the Award was unfair to Tesla and denying the motion to dismiss); *Calma*, 114 A.3d at 589 (determining that the facts alleged showed that the self-interested transaction was not fair).

The Trustee maintains that his amended complaint sets forth sufficient facts that the BD Term Loan and BD Lien Grant were unfair. The concept of fair dealing "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."[43] Fair price relates to economic and financial considerations.[44] The First Amended Complaint alleges that a liquidity crisis ensued following the Distribution, which necessitated the Debtors' need for funding.[45] Fund IV then provided the BD Term Loan after negotiating a subordinated loan structure with BoA.[46] The loan was secured and subject to a 12% paid-in-kind interest rate.[47] Originally, $15 million was available under the loan but after that was exhausted, borrowing availability was increased several times until ultimately $33 million was extended.[48] The Trustee alleges that the Black Diamond Entities knew when they made the BD Term Loan that the Debtors could not repay it and that, in fact, the Debtors never repaid any portion.[49] Resting upon these facts, the Trustee concludes that the Black Diamond Directors breached their fiduciary duties because the BD Term Loan should have been an equity infusion and not a secured loan.[50]

The Court cannot conclude that a plausible claim has been stated from these alleged facts. The Debtors required funding to continue. There are no allegations that the terms of the BD Term Loan were unusual or inconsistent with those available in the marketplace. Also missing are allegations that another party was willing to fund on better terms or that the Black Diamond Entities were required to do so.[51] The loan was negotiated with the Debtors' senior secured third party lender, BoA, and it is reasonable to infer that the borrowings were increased multiple times (over the amount of the Distribution) when the Debtors' liquidity needs demanded. These alleged facts coupled with the allegation that the Black Diamond Entities knew that they would never be repaid[52] are at odds with the Trustee's theory that the BD Term Loan was unfair to the Debtors.

The unfairness posited by the Trustee stems solely from the alleged fact that the loan was necessitated by an inappropriate distribution. The Trustee does not argue that the funding should not have been advanced – just that it should have been an equity infusion to repay the Distribution.

---

[43] *Weinberger*, 457 A.2d at 711.

[44] *Id.*

[45] *See, e.g.*, First Am. Compl. ¶¶ 93-114.

[46] *Id.* ¶¶ 115-16,

[47] *Id.* ¶¶ 119-22, 128.

[48] *Id.* ¶¶ 117, 123-28.

[49] *Id.* ¶¶ 130, 132, 134.

[50] *Id.* ¶ 189(d).

[51] *Monroe Cnty.*, 2010 WL 2376890, at *2 (noting that complaint made conclusory allegations that the price was unfair but had no factual allegations that put the price into perspective or demonstrated that the services could have been obtained for a better price elsewhere).

[52] To the extent that the Trustee is attempting to plead a deepening insolvency claim, such a claim is not recognized under Delaware law. *Trenwick Am. Litig. Trust v. Billett*, 931 A.2d 438 (Del. 2007), *aff'g Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.3d 168, 204-07 (Del. Ch. 2006) ("Delaware law imposes no absolute obligation on the board of a company that is unable to pay its bills to cease operations and to liquidate. Even when the company is insolvent, the board may pursue, in good faith, strategies to maximize the value of the firm.").

However, the Trustee advances no support (legally or factually) that would allow this Court to conclude that the Black Diamond Entities were legally obligated to provide funding to the Debtors, let alone in the form of an equity infusion beyond the amount of the Distribution. Absent such obligation, the Debtors were left to the marketplace, and there are no alleged facts for this Court to conclude that the Debtors could have done any better than they did.[53]

## 2. The Independent Directors

The Trustee claims that the Independent Directors breached their fiduciary duty of loyalty by failing to be informed or prevent the Challenged Transactions.[54] For the reasons just discussed, the claims related to the BD Term Loan and BD Lien Grant will be dismissed. However, the Court will not dismiss the claim as it relates to the Distribution.

The requirement to act in good faith is a subsidiary element of the duty of loyalty.[55] To state a claim that a fiduciary acted in bad faith, the alleged conduct must show more than gross negligence.[56] "A lack of good faith is shown by alleging conduct motivated by a subjective bad intent, or conduct that is an 'intentional dereliction of duty or the conscious disregard for one's responsibilities.'"[57] Examples identified by the Delaware Supreme Court of conduct demonstrating a lack of good faith are:

> [1] where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, [2] where the fiduciary acts with the intent to violate applicable positive law, or [3] where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.[58]

After reviewing the current complaint as a whole, assuming all facts therein are true, and construing all reasonable inferences in favor of the Trustee, the Court concludes that the Trustee

---

[53] There is an argument that, but for the allegedly inappropriate $30 million Distribution, the outstanding secured obligations under the BD Term Loan would total only approximately $6.5 million rather than $36.5 million. If so, the Court may be able to remedy the harm to creditors as a result of the extra $30 million secured claim of BDCM and Fund IV through the Trustee's equitable subordination claim.

[54] First Am. Compl. ¶ 189(c). While the allegations of the First Amended Complaint are broad, the Trustee in his opposition brief clarifies that the fiduciary duty claim against the Independent Directors is limited to the duty of loyalty. Adv. D.I. 69 at 16.

[55] *Stone*, 911 A.2d at 370 (citing *Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003)).

[56] *OPP Liquidating*, 2022 WL 774063, at *10 ("Pleading a violation of the duty of good faith requires a higher standard than a violation of the duty of care, namely that the conduct was not merely grossly negligent but 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" (quoting *In re Chelsea Therapeutics Int'l Ltd. S'holders Litig.*, No. 9640, 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016)); *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 65 (Del. 2006) ("[G]rossly negligent conduct, without more, does not and cannot constitute a breach of the fiduciary duty to act in good faith.").

[57] *Old Bpsush,* 2021 WL 4453595, at *11 (quoting *McPadden v. Sidhu*, 964 a.2d 1262, 1274 (Del. Ch. 2008)).

[58] *Walt Disney,* 906 A.2d at 67.

plausibly alleges that the Independent Directors breached their duty of loyalty with respect to the Distribution. As alleged, the Independent Directors (at least one of whom was aware of the Debtors' poor financial health in the fall of 2016)[59] did not participate or involve themselves in the decision to authorize the Distribution, including making any inquiry as to its impact on the Debtors' financial position.[60] Rather, it was the Black Diamond Directors who allegedly controlled the amount and timing of the Distribution.[61] These facts support an inference that the Independent Directors failed to undertake their fiduciary responsibilities and simply yielded to the interested directors when the Debtors' liquidity issues required their attention.[62]

The Independent Directors contend that the Trustee's fiduciary duty claim against them is not viable because the Holdings LLC Agreement gave the Class A Members the authority to approve the Distribution, the Class A Members did so through the Black Diamond Directors, and the Independent Directors could not stop the decision.[63] This argument does not support Rule 12(b)(6) dismissal. The Court has made a reasonable inference from the Trustee's allegations that the Black Diamond Directors caused the Distribution while serving as members of Bayou Holdings' Board of Directors. The record is not sufficiently developed for it to make a finding that they did so – let alone on behalf of the Class A Member(s).[64] Moreover, even if the Court

---

[59] First Am. Compl. ¶ 62(v).

[60] *Id.* ¶ 79; *see also id.* ¶ 80 (noting the non-existence of any resolutions or written consents of the Board of Directors approving the Distribution).

[61] *See, e.g., id.* ¶¶ 66-67, 71-72.

[62] *Walt Disney,* 906 A.2d at 63 (noting there is "no substantive difference" between the Delaware Court of Chancery's 2003 definition of bad faith – a 'conscious[ ] and intentional[ ] disregard[ ] [of] responsibilities, adopting a 'we don't care about the risks' attitude . . . – and its 2005 post-trial definition – an 'intentional dereliction of duty, a conscious disregard for one's responsibilities.' Both formulations express the same concept, although in slightly different language."); *In re Cornerstone Therapeutics, Inc. S'holder Litig.*, 115 A.3d 1173, 1184 (Del. 2015) ("Our common law of corporations has rightly emphasized the need for independent directors to be willing to say no to interested transactions proposed by controlling stockholders."); *see also OPP Liquidating*, 2022 WL 774063, at **10-11 (denying the defendants motion to dismiss where the facts alleged demonstrate that the director-defendants "did nothing more than rubber stamp management's actions."); *Bridgeport Holdings, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings. Inc.)*, 388 B.R 548, 565-66 (Bankr. D. Del. 2008) (determining the facts alleged supported a claim that the director-defendants breached their duty of loyalty and failed to act in good faith by abdicating crucial decision-making authority to a new chief operating officer and then failing to monitor his actions); *In re Pattern Energy Grp. Inc. S'holders Litig.*, No. 2020-0357, 2021 WL 1812674, at **60-61 (Del. Ch. May 6, 2021) (determining that director-defendants' alleged decisions to delegate the drafting and filing of a merger proxy to conflicted management and forego reviewing it before filing, as well as their failure to correct the proxy's alleged inaccurate statements, were actionable as bad faith).

[63] The Independent Directors argue that the claim should be dismissed because the Trustee fails to state a claim for the breach of the duty of oversight colloquially known as a *Caremark* claim. *In re Caremark Int'l Inc. Deriv. Litig.*, 689 A.2d 959 (Del. Ch. 1996). The Court agrees that the none of the hallmarks of a *Caremark* claim are present in the Trustee's allegations. *See Stone*, 911 A.2d at 370 (holding that "*Caremark* articulates the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting system or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disability themselves from being informed of risks or problems requiring their attention."). However, the allegations support a loyalty claim arising from the Independent Directors' alleged abdication of their management responsibilities to the Black Diamond Directors.

[64] Interestingly, the Black Diamond Directors have not argued that the Class A Members (or the Black Diamond Directors on behalf of the Class A Members) approved the Distribution and that the Board of Directors had no authority to stop them. Moreover, the identities of the Class A Members are unknown. Exhibit A of Holdings LLC

were to find in the future that the Class A Members authorized the Distribution and had the authority to do so under the Holdings LLC Agreement,[65] "Delaware law presumes that managers of limited liability companies owe fiduciary duties unless explicitly disclaimed."[66] Nothing in the Holdings LLC Agreement eliminates or modifies the Board of Directors' default fiduciary duties in the circumstance advanced by the Independent Directors.

### B. Count 10 – Aiding and Abetting

Under Delaware law, the elements of an aiding and abetting a breach of fiduciary duty claim are "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach."[67] The Black Diamond Directors challenge only the second prong of this standard, arguing that the Trustee has not alleged sufficient facts to support a plausible claim that that Bayou Holdings breached its fiduciary duties to BD LaPlace and Bayou Investment. For the reasons already addressed, the Court disagrees with respect to the Distribution but agrees with respect to the BD Term Loan and BD Lien Grant.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. Counts 9 and 10 related to the BD Term Loan and BD Lien Grant are dismissed.

2. All other relief requested in the Motions is denied.

Dated: April 26, 2023

Karen B. Owens
United States Bankruptcy Judge

---

Agreement provides that Bayou Steel BD Holdings II, LLC is the sole Class A Member. The Trustee alleges that BDCM owns 100% of Bayou Holdings' membership interests. First Am. Compl. ¶ 19. Thus, the Court believes it reasonable to infer that BDCM owns Bayou Steel BD Holdings, II, LLC and may be the Class A Member (or at least control the Class A Member(s)). However, these are not established facts.

[65] The Independent Directors cite to section 3.1(b) of the Holdings LLC Agreement to support their theory that the Class A Members were co-managers of Bayou Holdings, but they ignore section 5.4(a), which permits only the Board of Directors "in its sole discretion" to determine the amount and timing of distributions. Holdings LLC Agreement § 5.4(a) ("The Company shall distribute Distributable Assets only at such times and in such amounts as is determined by the Board in its sole discretion . . . .").

[66] *Largo Legacy*, 2021 WL 2692426, at *12.

[67] *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 836 (Del. Ch. 2011) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)) (internal punctuation omitted).