# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, LLC, *et al.*,<br><br>Debtors, | Chapter 7<br><br>Case No. 19-12153 (KBO)<br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>BLACK DIAMOND CAPITAL MANAGEMENT, LLC; BDCM OPPORTUNITY FUND IV, L.P.; BLACK DIAMOND COMMERCIAL FINANCE, LLC; SAM FARAHNAK; PHIL RAYGORODETSKY; ROB ARCHAMBAULT; TERRY TAFT; and BOB UNFRIED,<br><br>Defendants. | Adv. No. 21-51013 (KBO) |

**NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS**
**DIRECTED TO TRUIST FINANCIAL CORPORATION**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 45, as made applicable by Federal Rule of Bankruptcy 7030 and 9016, notice is hereby given that Defendants Black Diamond Capital Management, LLC ("BDCM" or "Black Diamond"), BDCM Opportunity Fund IV, LP ("Fund IV"), Black Diamond Commercial Finance, LLC ("BDCF"), Sam Farahnak, and Phil Raygorodetsky, (collectively, the "Black Diamond Defendants"), request Truist Financial

150049869.1

Corporation produce the documents described in Exhibit A of the Subpoena attached hereto on November 3, 2023, at the location specified on the subpoena.

Date: October 3, 2023

| | |
|---|---|
| /s/ *Seth A. Niederman* | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
| Seth A. Niederman (DE No. 4588) | William J. Trunk (admitted *pro hac vice*) |
| FOX ROTHSCHILD LLP | Jack A. Herman (admitted *pro hac vice*) |
| 919 N. Market Street, Suite 300 | Paul Brzyski (admitted *pro hac vice*) |
| Wilmington, DE 19801-3062 | 2000 K Street NW, 4th Floor |
| Tel.: (302) 654-7444 | Washington, DC 20006 |
| Fax: (302) 656-8920 | Tel: (202) 775-4500 |
| sniederman@foxrothschild.com | Fax: (202) 775-4510 |
| | wtrunk@kramerlevin.com |
| FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP | ZAIGER LLC |
| Lawrence S. Robbins (admitted *pro hac vice*) | Jeffrey H. Zaiger (admitted *pro hac vice*) |
| 7 Times Square | Judd A. Linden (admitted *pro hac vice*) |
| New York, NY 10036 | 2187 Atlantic Street, 9th Floor |
| Tel: (212) 883-1118 | Stamford, CT 06902 |
| Fax: (212) 373-7918 | Tel: (917) 572-7701 |
| lrobbins@fklaw.com | jzaiger@zaigerllc.com |

*Counsel for the Black Diamond Defendants*

# EXHIBIT A

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of Delaware

In re: Bayou Steel BD Holdings, LLC, *et al.*
Debtor

Case No. 19-12153 (KBO)

Chapter 7

*(Complete if issued in an adversary proceeding)*

George L. Miller, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, LLC, et al.
Plaintiff

v.

Black Diamond Capital Management, LLC, et al.
Defendant

Adv. Proc. No. 21-51013 (KBO)

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

To: Truist Financial Corporation, 214 North Tryon Street, Charlotte, NC 28202

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Fox Rothschild LLP, 101 N. Tryon Street, Suite 1300, Charlotte, NC 28246 | November 3, 2023 |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 3, 2023

CLERK OF COURT

OR

_____      /s/ Seth A. Niederman
*Signature of Clerk or Deputy Clerk*      *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Black Diamond Defendants, who issues or requests this subpoena, are:

Seth A. Niederman, Esq., Fox Rothschild LLP, 919 N. Market Street, Suite 300, Wilmington, DE 19801 (302 654-7444)

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 21-51013-KBO    Doc 95    Filed 10/03/23    Page 5 of 17

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____  .

    I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                  _____
                                                         *Server's signature*

                                                        _____
                                                        *Printed name and title*

                                                        _____
                                                         *Server's address*

Additional information concerning attempted service, etc.:

Case 21-51013-KBO    Doc 95    Filed 10/03/23    Page 6 of 17

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**SCHEDULE A**

**DOCUMENTS TO BE PRODUCED PURSUANT TO**
**SUBPOENA DUCES TECUM TO TRUIST FINANCIAL CORPORATION**

**DEFINITIONS**

1. Except as otherwise defined specifically herein, the definitions set forth in the Federal Rules of Civil Procedure (the "Federal Rules") and in the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") (together, the "Rules") are hereby incorporated by reference.

2. All words, terms, and phrases not specifically defined in these Requests are to be given their normal and customary meaning in the context in which they are used herein.

3. "Bayou Holdings" shall mean Bayou Steel BD Holdings, LLC (f/k/a BD Long Products, LLC) as well as its agents, attorneys, representatives, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, area or regional offices, directors, officers, employees, nominees to the board, or representatives of the foregoing, and/or all other Persons acting or purporting to on behalf of any of those entities.

4. "Bayou Investment" shall mean BD Bayou Steel Investment, LLC as well as its agents, attorneys, representatives, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, area or regional offices, directors, officers, employees, nominees to the board, or representatives of the foregoing, and/or all other Persons acting or purporting to on behalf of any of those entities.

5. "BD LaPlace" shall mean BD LaPlace, LLC (f/k/a ArcelorMittal LaPlace, LLC) as well as its agents, attorneys, representatives, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, area or regional offices, directors, officers, employees, nominees to the board, or representatives of the foregoing, and/or all other Persons acting or purporting to on behalf of any of those entities.

6. "BD Term Loan" shall mean the Subordinated Loan and Security Agreement dated as of December 21, 2017 between Debtors, Black Diamond Commercial Finance, LLC, and BDCM Opportunity Fund IV, LP, as well as all related documents, agreements, amendments, draws, and disbursements.

7. "Communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and shall have the broadest meaning possible under the Rules and shall include any transmittal and/or receipt of information, whether oral or written, and whether by chance, prearranged, formal, or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail, instant messages, text messages, voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

8. "Concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

9. "Debtors" shall mean Bayou Holdings, Bayou Investment, and BD LaPlace.

10. "Distribution" shall mean the $30 million distribution received by BDCM Opportunity Fund IV, LP on March 17, 2017, in connection with the sales proceeds following the Vinton Sale.

11. "Documents" shall have the broadest meaning possible under the Rules and shall include any written, typed, printed, recorded material, or electronically stored information, however produced or reproduced, of any type or description, regardless of origin or location, including all correspondence, records, data compilations, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), electronic mail, messages (including all reports of telephone conversations and conferences), instant

messages, studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other Communications (including all inter- and intra-office communications and electronic mail communications), questionnaires, contracts, agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer-generated matter, photographs, photographic negatives, tape recordings, wire recordings, other mechanical recordings, transcripts or logs of any such recordings, all other data compilations from which information can be obtained or translated if necessary, and any other tangible thing of a similar nature.

12.     "Person" or "Persons" shall have the broadest meaning possible under the Rules and include any natural person or entity, present or former, including any business or governmental entity, domestic or foreign, which for an entity includes its such entity's subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership, or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, members, consultants, accountants, attorneys, or anyone else acting on its behalf, including all individuals currently acting in such capacity and those who have done so in the past.

13.     "Revolving Loan" shall mean the Loan and Security Agreement, dated as of April 4, 2016, between BD Bayou Steel Investment, LLC, BD Long Products, LLC, ArcelorMittal LaPlace, LLC, ArcelorMittal Vinton LLC, ArcelorMittal Metal Processing LLC, Bank of America, N.A., and SunTrust Bank, as well as all related documents, agreements, amendments, draws, and disbursements. For the avoidance of doubt, this definition includes the First Amendment to the Loan and Security Agreement (dated March 16, 2017), the Second Amendment to the Loan and Security Agreement (dated June 23, 2017), the Third Amendment to the Loan and Security Agreement (dated May 15, 2019), and the letter dated December 16, 2016, subject line: "Consent

to Sale of Membership Interests in BD VINTON LLC and BD METAL PROCESSING LLC."

14. "Truist" shall mean Truist Financial Corporation, Truist Securities, Inc., SunTrust Robinson Humphrey, Inc., SunTrust Bank, as well as their agents, attorneys, representatives, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, area or regional offices, directors, officers, employees, nominees to the board, or representatives of the foregoing, and/or all other Persons acting or purporting to on behalf of any of those entities.

15. "Vinton Sale" shall mean the sale of BD Vinton LLC to Kyoei Steel America LLC in December 2016.

16. "You" and "Your" shall mean Truist.

## INSTRUCTIONS

1. Each Request calls for You to produce all responsive Documents in Your possession, custody, or control, or otherwise available to You through Your attorneys, accountants, agents, employees, representatives, or any other Person directly or indirectly employed by or connected with You or Your attorneys or anyone else subject to Your control.

2. For purposes of interpreting or construing the scope of these Requests, all terms shall be given their most expansive and inclusive interpretation. This includes, without limitation, construing:

   a. "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the Request more inclusive and bring within the scope of a Request any information that might otherwise be construed to be outside the scope of the Request;

   b. the singular form of the word to include the plural, and the plural form to include the singular;

4

  c.  the term "include" and "including" to mean "including but not limited to" or "including without limitation";

  d.  the term "all" to mean "any and all," and vice versa;

  e.  the term "each" to include "every," and construing "every" to include "each";

  f.  the term "between" to include "among" and vice versa;

  g.  the use of a verb in any tense as the use of the verb in all other tenses; and

  h.  and interpreting all spelling, syntax, grammar, abbreviations, idioms, and proper nouns to give proper meaning and consistency to their context.

  3.  The Requests are continuing in nature and require supplemental responses between the time responses are served and the time of any trial, in accordance with Federal Rule Civil Procedure 26(e). Any Document created, identified, or that comes into Your possession, custody, or control after service of any response to these Requests that would have been produced in response had the Document then existed, been identified, or been within Your possession, custody, or control shall promptly be produced.

  4.  Documents must be produced in the order in which they are kept in the ordinary course. All Documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other Documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, clips, or any other method, shall be left so segregated or separated.

  5.  If any copy of any Document, the production of which is requested, is not identical to any other copy thereof, by reason of any alterations, marginal notes, comments, metadata, omissions, or material contained therein or attached thereto, or otherwise, then all such non-identical copies shall be produced separately. For the avoidance of doubt, a Document with

handwritten, typewritten, or other types of notes or editing marks shall not be deemed to be identical to one without such modifications.

6. Each Request shall be deemed to include a Request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to a Document in addition to the Document itself, without abbreviation or redaction.

7. All Documents that cannot be legibly copied must be produced in their original form.

8. If any portion of any Document is responsive to any Request, then You must produce the entire Document.

9. A Request for a Document shall be construed to include a request for all electronic versions of such documents.

10. All Communications and Documents produced should conform to the following requirements:

   a. Images: Hard-copy scanned documents ("Hard-copy") and Electronically Stored Information ("ESI") shall be produced with images delivered as single-page 300-dpi-resolution Group IV TIF format ("TIFF"). Each image should have a unique file name and should be named with the beginning Bates number assigned to it. Image file names should not contain spaces.

   b. Text: Text should be produced in the form of document-level .TXT files. Text from Hard-copy documents should be obtained by utilizing optical character recognition ("OCR"), and text from ESI should be produced as extracted full text. Text from redacted pages may be obtained by utilizing OCR rather than produced as extracted full text.

c. Native Files: Spreadsheets (e.g., Excel), databases (e.g., Microsoft Access and Microsoft Project), presentations (e.g., Microsoft PowerPoint), audio/visual files, and any other file types that are not readily useful when imaged or printed, should be produced in native format with a cross-link .DAT file to a Bates- stamped placeholder sheet.

d. Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent record) should be preserved and produced.

e. Duplicates: When documents are produced for multiple custodians or from multiple sources, the production should be de-duplicated globally at the family level after populating a field to identify all custodians who had copies of the document including the copy produced. The production should contain one (1) copy of an email message or non-email document regardless of how many custodians had copies of it. The information to identify all custodians who had copies of the document including the copy produced will appear in a field named "Dupe Custodians" or similar.

f. Load Files: Database load files should consist of: (1) a comma-delimited values (".DAT") file containing the fields identified in the following paragraph; and (2) an Opticon (".OPT") file to facilitate the loading of TIFF images. All load files should be named to match the production volume name. Bates numbers and production volume names must not be duplicated and should run consecutively throughout the entirety of the production(s).

g. Load Files Format: The first line of the .DAT file should contain metadata field headers, and below the first line there should be only one line for each record. Each

      subsequent line must contain the same number of fields as the field header line. The database structure should be maintained across the entire document production. Database load files should be produced in Concordance default format, which consists of the following characters:

      i.   ASCII code 020 ("¶") is used as a comma;

      ii.  ASCII code 254 ("þ") is used as a text qualifier (or "quote"); and

      iii. ASCII code 174 ("®") denotes a new line.

h. **Data Structure:** Images should be provided within a root-level folder named "Images" containing reasonably structured subfolders (preferably not to exceed 2,000 images per subfolder), text files should be provided in a single root-level folder named "Text," native files should be provided in a single root- level folder named "Natives," and load files should be provided in a root-level folder named "Data."

i. **Metadata:** You shall provide the following metadata fields (where a listed field would contain more than one type of data, you must produce the data in separate fields):

    i.    Beginning Bates Number;

    ii.   Ending Bates Number;

    iii.  Beginning Attachment Bates Number;

    iv.  Ending Attachment Bates Number;

    v.    Custodian Name;

    vi.  Dupe Custodians

    vii. Confidentiality Designation (if any);

      viii. To;

        ix. From

         x. Author;

        xi. CC;

       xii. BCC;

      xiii. EmailSubject

      xiv. Filename;

       xv. Filepath

      xvi. Created Date;

     xvii. Modified Date;

    xviii. Sent Date;

      xix. Sent Time;

       xx. Page Count;

      xxi. File Extension

     xxii. Message ID (Outlook email metadata)

    xxiii. Conversation Index (where email threading of produced documents is desired)

    xxiv. Nativelink (populated where applicable); and

     xxv. Text or Textpath.

j. Objective Coding Fields: For Hard-copy documents, the following Objective Coding Fields should be provided:

    i. Beginning Bates Number;

    ii. Ending Bates Number;

   iii. Beginning Attachment Bates Number;

   iv. Ending Attachment Bates Number;

   v. Confidentiality Designation (if any); and

   vi. Source/Custodian/Location/Box/Folder.

11. If a claim of privilege is asserted in any objection to any document request or portion thereof, and documents are withheld on the basis of that assertion of privilege, the objection shall:

  a. the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, the state's privilege rule being invoked; and

  b. (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

12. The time period for these Requests is July 1, 2015 to October 1, 2019.

## REQUESTS FOR PRODUCTION

1. Documents and Communications concerning the Revolving Loan.

2. Documents and Communications concerning the Distribution, including any analyses, evaluations, and approvals of the Distribution or the First Amendment to the Revolving Loan.

3. Documents and Communications concerning the BD Term Loan.

4. Documents and Communications concerning the Vinton Sale, including its negotiation, approval, and execution, as well as the use of sale proceeds.

5. Documents and Communications concerning appraisals of Debtors' inventory. For the avoidance of doubt, this Request includes analyses performed by Sector3 Appraisals, Inc.

6. Documents and Communications concerning Debtors' solvency or capital adequacy.

7. Documents and Communications concerning any reports, updates, or evaluations provided to You from the Debtors.

8. Documents and Communications concerning or reflecting any analyses, evaluation, or opinion as to the financial condition of Debtors.