## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., *et al.*, | Adv. Proc. No.: 21-51013 (KBO) |
| Plaintiff, | |
| v. | |
| BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C., *et al.*, | |
| Defendants. | |

**ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendants Rob Archambault, Terry Taft, and Bob Unfried (collectively, the "Independent Directors") respectfully request that the Court deny Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion") for the reasons stated below and the concurrently filed brief in opposition filed by the Black Diamond Defendants (the "BD Brief").[2]

---

[1]  The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C. (1984), BD Bayou Steel Investment, LLC (1222), and BD LaPlace, LLC (5783).

[2]  The Black Diamond Defendants are Black Diamond Capital Management, LLC, BDCM Opportunity Fund IV, L.P. ("Fund IV"), Black Diamond Commercial Finance, L.L.C. (collectively, "Black Diamond"), Sam Farahnak, and Phil Raygorodetsky (together with Mr. Farahnak, the "Black Diamond Directors").

**I.     PRELIMINARY STATEMENT**

1.      After several years of litigation and the completion of fact discovery, the Trustee[3] seeks leave to file a proposed second amended complaint (the "SAC") which adds a new claim to this case and "renews" claims that the Court previously—and correctly—dismissed. The Trustee only has one big problem: the amendment is futile. To be clear, that is not the only problem. The Trustee's proposed amendment should also be rejected because it prejudices the Independent Directors.

2.      The proposed amendments are futile for two independent reasons: they are time barred and they fail on their face. Specifically, the breach of fiduciary duty claims are subject to a contractual one-year statute of limitations that has long since passed. Further, even if the claims were not time barred, they would still fail. The Trustee argues that the Distribution was unauthorized because it did not comply with Section 5.4(a) of the Bayou Steel BD Holdings, L.L.C. ("Bayou Holdings") LLC Agreement. (SAC ¶ 81) The problem is that the Trustee does not allege that Bayou Holdings made the Distribution. To the contrary, the Trustee alleges that BD LaPlace, LLC ("BD LaPlace") made the Distribution. (SAC ¶ 69) The Trustee's argument regarding the Subordinated Loan and BD Term Loan fail for the same reason the Court dismissed them in the first place. Nothing in the SAC cures the deficiencies identified by the Court.

3.      But even if amendment was not futile, the Motion should still be denied because it would work undue prejudice on the Independent Directors. The Trustee has had documents from both the Independent Directors and the Black Diamond Defendants for years. The notion that

---

[3]   Capitalized terms not otherwise defined herein shall have the meanings provided in the First Amended Complaint (the "Complaint") filed on August 26, 2022 [D.I. 59].

the Trustee only recently discovered facts supporting his new theory is implausible, and foreclosed by the face of the complaint. Indeed, the Complaint *already* alleged that "records available to the Trustee reflect no involvement on their part in the decision to authorize the Distribution[.]" (Complaint ¶ 79) There is no new information, so there is no justification for the Trustee's delay.

## II.     BACKGROUND[4]

4.    The Trustee's claims arise from two transactions between Black Diamond and BD LaPlace. The first was a $30 million distribution paid by BC LaPlace to Fund IV on March 17, 2017. (SAC ¶ 69) The second was the Subordinated Loan through which Fund IV provided more than $33 million in funding to BD LaPlace. (SAC ¶¶ 119-120; 135)

5.    At all relevant times, BC LaPlace was wholly owned by Fund IV through several wholly owned subsidiaries. BD LaPlace was a wholly owned subsidiary of Bayou Steel Investment, LLC ("Bayou Investment"). (SAC ¶ 18) Bayou Investment was a wholly owned subsidiary of Bayou Holdings. (SAC ¶ 18) Bayou Holdings was a wholly owned subsidiary of Bayou Steel BD Holdings II, LLC ("Holdings II") which was a wholly owned subsidiary of Fund IV. (BD Brief Ex. 1)[5]

---

[4]    All facts in this section are based on the allegations in the SAC (which are assumed to be true for purposes of this motion only), documents integral to the SAC, and documents that are a matter of public record. *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 164 (Bankr. D. Del. 2019).

[5]    This ownership structure is also reflected in the exhibits attached to the complaint, as well as the LLC Agreement of Holdings II (which is attached to the BD Brief as Exhibit 1, which are integral to the complaint and can be considered by this Court. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007).

6. Each of the entities referenced above is a limited liability company whose governance and operation is controlled by its own LLC Agreement[6] and, to the extent not modified by those respective LLC Agreements, the Delaware Limited Liability Company Act. 6 *Del. C.* § 18-101 *et seq*.

7. The Independent Directors and Black Diamond Directors sat on the Board of Directors of Bayou Holdings. (SAC ¶¶ 19, 28-29) The Board of Directors of Bayou Holdings had "full power to manage the business and affairs of the Company" but that power was "subject to the ultimate control and authority of the Class A Members." (SAC Ex. A, § 3.1(a)) In other words, Holdings II—wholly owned by Fund IV—had "ultimate control and authority" over Bayou Holdings. However, the Bayou Holdings LLC Agreement goes further and provides that Holdings II "shall have the power to act for, sign for and do any act on behalf of the Company, and to make any expenditures and incur any obligations on behalf of the Company or authorized any of the foregoing." (SAC Ex. A, § 2.1(a)(ii)) Holdings II also had the power to "authorize any Person (including any Member, Director or Officer) to enter into and perform any document on behalf of the Company." (SAC Ex. A, § 1.6(b)) Further, any "duly authorized Officer" can cause the Company to "enter into and perform any and all documents, agreements and instruments contemplated by such approval, all without any further act, vote or approval of any Member." (SAC Ex. A, § 1.6(b))

8. In August 2021, the Trustee filed the initial complaint bringing a bevy of claims including, relevant to the Motion, breach of fiduciary duty claims against the Black Diamond Directors and Independent Directors. After an initial round of motion to dismiss briefing, the

---

[6] The LLC Agreements of BD LaPlace, Bayou Investment, and Bayou Holdings are attached to the SAC (SAC Ex. A-C [D.I. Nos. 123-1, 123-2, and 123-4]), and the LLC Agreement of Holdings II is attached to the BD Brief as Exhibit 1.

Court dismissed many of the claims including, relevant to the Motion, the breach of fiduciary duty claims.

9. The Trustee was permitted to file an amended complaint and he did so. The Amended Complaint—the current operative complaint—contained myriad allegations regarding the Distribution and Subordinated Loan. The Complaint alleged that the Black Diamond directors "arranged the Distribution." (Complaint ¶ 72) According to the Complaint—and based on "records available to the Trustee"—the Independent Directors had "no involvement or participation on their part in the decision to authorized the Distribution" (Complaint ¶ 79) and "[t]he Board did not execute any resolutions or written consents approving the … Distribution." (Complaint ¶ 80)

10. Regarding the Subordinated Loan, the Complaint alleged that Farahnak executed the relevant agreement "on behalf of each Debtor" (Complaint ¶ 118) and each draw of the loan "was approved by Farahnak on behalf of Debtors[.]" (Complaint ¶ 126) Notably, Farahnak signed as Vice President and not director of each of the Debtors. (SAC Ex. E at 68)[7]

11. After a second round of motion to dismiss briefing, the Court dismissed all the breach of fiduciary duty claims except one: the Court held that the Complaint plausibly alleged a breach of fiduciary duty to Bayou Holdings regarding the Distribution.

12. After fact discovery closed in May 2024, the Trustee filed the Motion. The Motion seeks permission to amend the Complaint to "renew" the dismissed breach of fiduciary duty claims because of "additional facts adduced during discovery" that the Distribution and Subordinated Loan were made "without authority… because they were not approved by any vote

---

[7] While the Subordinated Loan and Security Agreement was attached to the SAC as an exhibit, it was not attached to the Complaint. However, it is cited and quoted from throughout the Complaint, so it is integral to the Complaint.

of the Bayou Holdings' Board of Directors or authorized by appropriate Board resolutions or written consents." (Motion ¶ 3) The same facts underpinning all of the allegations in the Complaint that was filed long before the close of discovery.

### III. ARGUMENT

#### A. Legal Standard

13. "A motion for leave to amend can be denied if there is bad faith or a dilatory motive behind the amendment, there is undue prejudice to the opposing party by granting the motion, or if amendment is futile." *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 50 (3d Cir. 2019). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

#### B. Amendment Is Futile Because the Claims are Time Barred

14. Because the Trustee stands "in the shoes of each of the debtors that could have asserted such a claim against its officers and directors," the Trustee can only bring a claim "as to which the statute had not expired as of the petition date[.]" *In re Art Inst. of Philadelphia LLC*, 2022 WL 18401591, at *9 (Bankr. D. Del. Jan. 12, 2022). Thus, absent some form of tolling, any of the breach of fiduciary duty claims filed after the expiration of the statute of limitations is time-barred. *See, e.g., In re AMC Invs., LLC*, 637 B.R. 43, 56 (Bankr. D. Del. 2022), *aff'd*, 656 B.R. 95 (D. Del. 2024).

15. Section 108 of the Bankruptcy Code governs the timing for the Trustee to file the relevant claims in this case. 11 U.S.C. § 108. In particular, Section 108 provides that the

Trustee has two years "after the order for relief" within which to file a claim.[8] However, there is an important catch: the Trustee can only file a claim if the limitations period for the claim "has not expired before the date of the filing of the petition." 11 U.S.C. § 108(a). Thus, to determine whether the claims in the SAC are timely, the Court must first determine whether the claims were timely as of the petition date. Then, and only if the claim was timely as of the petition date, the Court must analyze whether the claims fall within the appropriate period dictated by Section 108. For example, in *AMC* the Bankruptcy Court found that breach of fiduciary duty claims were time-barred because the claims were untimely as of the petition date so the Court found that Section 108 was not relevant. *AMC Invs.*, 637 B.R. at 66. So too, here. Each of the "renewed" claims in the SAC—indeed, all of the breach of fiduciary duty claims[9]—are time-barred because the relevant statute of limitations had expired long before Debtors filed for bankruptcy.

16. Under Delaware law, there are two potential frameworks for determining whether a claim is timely: statute of limitations or the equitable doctrine of laches. *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 7 (Del. 2009) ("Both the doctrine of laches and statutes of limitations function as time bars to lawsuits."). However, where a plaintiff presents an equitable claim but "only seeks money damages, then a modified form of laches applies." *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1194 (Del. Ch. 2022). In that circumstance, "[a]bsent some unusual circumstances, a court of equity will deny a plaintiff relief when suit is brought after the analogous statutory period." *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*,

---

[8] If the relevant statute of limitations has not yet run at the end of the two years, the Trustee can still file the claim through the end of the statutory time period. 11 U.S.C. § 108(a).

[9] Now that fact discovery has concluded, the Independent Directors expect to file for summary judgment on all claims on this basis.

677 A.2d 497, 502 (Del. 1996). Here, the Trustee seeks only monetary damages for the alleged breaches of fiduciary duty, so the modified form of laches applies

17. By default, in Delaware, breach of fiduciary duty claims are subject to a three-year statute of limitations. *Bren v. Cap. Realty Grp. Senior Hous., Inc.*, 2004 WL 370214, at *5 (Del. Ch. Feb. 27, 2004); 10 *Del. C.* § 8106. However, under Delaware law parties can agree to contractually shorten statutes of limitations. *See, e.g.*, *GRT, Inc. v. Marathon GTF Technology, Ltd.*, 2011 WL 2682898, at *3 (Del. Ch. July 11, 2011) ("Delaware law does not have any bias against contractual clauses that shorten statutes of limitations"); *Cf.*, *Kiss Electric, LLC v. Conboy & Mannion Contracting, Inc.*, 2019 WL 5268630, at *6 (Del. Sup. Ct. Oct. 9, 2019) ("It is well-settled under Delaware and federal law that parties may validly contract to limit the time period for filing a federal cause of action."). This is because Delaware "respects the right to contract in general" and recognizes that parties "may weigh the interests addressed by statute differently when it comes to the particular circumstances of their agreement." *Eni Holdings, LLC v. KBR Group Holdings, LLC*, 2013 WL 6186326, *1 (Del. Ch. Nov. 27, 2013).

18. Each of the Independent Directors, as inducement to serve as a director, was provided with indemnification pursuant to an indemnification agreement (attached to this brief as Exhibit 1). That indemnification agreement provides that any claim brought "by or in the right of the Company" must be brought within one year "from the date of accrual of such cause of action," otherwise the claim is extinguished. (Ex. 1 at 4-5). Debtors filed for bankruptcy on October 1, 2019, therefore any claim brought by the Trustee must have accrued no earlier than October 1, 2018.

19. First, the claim regarding the Distribution is time-barred. As alleged by the Trustee, the Distribution was made on March 17, 2017. (SAC ¶ 69) Even under the most

generous reading of the SAC, any breach of fiduciary duty claim for the Distribution accrued long before October 1, 2018. As alleged in the SAC, the Independent Directors allegedly breached their fiduciary duties by "[f]ailing to be fully informed and/or to take actions to prevent the payment of the Distribution[.]" (SAC ¶ 200(c)) But, the SAC alleges that the Independent Directors were fully informed of the implications of the Distribution no later than the Q2 2017 Board meeting. (SAC ¶ 112) Thus, even if the breach of fiduciary duty claim regarding the Distribution did not accrue until the Independent Directors learned of its impacts on the Company and they failed to do anything about it, that claim would have still accrued in 2017. No amendment—much less any of the amendments proposed in the SAC—can salvage the breach of fiduciary duty claims.

20.     The same is true for the claims regarding the Subordinated Loan. As alleged, Debtors entered into the Subordinated Loan on December 21, 2017. (SAC ¶ 119) Just as with the claim regarding the Distribution, the Trustee alleges that the Independent Directors breached their fiduciary duties by either not being fully informed or failing to prevent the Subordinated Loan. (SAC ¶ 200(c)) Again, just as with any claim regarding the Distribution, the claim regarding the Subordinated Loan accrued long before the October 1, 2018 expiration of the statute of limitations.

21.     The only possible argument the Trustee can make to salvage the claims is that the one-year period should be tolled. "There are three tolling doctrines recognized in Delaware: inherently unknowable injuries, fraudulent concealment, and equitable tolling." *AMC Invs.*, 637 B.R. at 56. There is one common unifying feature of all three doctrines: each only applies until "discovery of facts constituting the basis for the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudent on inquiry which, if pursued,

would lead to the discovery of such facts." *Id.; accord In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) ("Under the doctrine of inherently unknowable injuries, the running of the statute of limitations is tolled while the discovery of the existence of a cause of action is a practical impossibility."); *Collis*, 287 A.3d at 1214 (fraudulent concealment "[t]olling ends when the plaintiff is placed on inquiry notice"); *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 95 (Del. Ch. 2023) ("Equitable tolling consequently applies until the point of inquiry notice.").

22. The Trustee has alleged nothing—in the Complaint or the SAC—that would justify application of any of the three tolling doctrines. Debtors' lenders knew about the Distribution. (Complaint ¶ 68) Debtors' management knew about the Distribution. (Complaint ¶¶ 72, 76) The same is true for the Subordinated Loan. (*See, e.g.*, Complaint ¶¶ 115-117; 122) Because there are no allegations that the relevant facts were hidden, none of the tolling doctrines apply.

23. Given that any possible breach of fiduciary duty claim in the SAC expired prior to October 1, 2018, amendment is futile and the Motion should be denied.

**C.    Amendment Is Futile Because the Claims Are Insufficiently Stated**

24. Even if the "renewed" claims were not time-barred, amendment would still be futile because the claims would fail to survive a motion to dismiss. For judicial efficiency and to avoid unnecessary briefing, the Independent Directors formally adopt in its entirety the argument from the BD Brief § II and incorporate it by reference into this brief.

**IV.    CONCLUSION**

25. Ultimately, the Trustee is attempting to get a do-over. It lost the earlier rounds of motion to dismiss briefing, and the Motion is an ill-fated attempt to try again. The SAC offers no new information, and the factual underpinnings of the amendments were all known to the

Trustee years ago.  Additionally, amendment is futile because all the new claims—or rather, "renewed" claims—against the Independent Directors are time barred.  In any event, they also fail to state a claim and would be unable to withstand a motion to dismiss.

| | |
|---|---|
| Dated:  August 2, 2024 | BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP |

   */s/ Andrew D. Kinsey*
Jennifer R. Hoover (No. 5111)
Andrew D. Kinsey (No. 6490)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com

-and-

Sven T. Nylen (admitted *pro hac vice*)
Jacob H. Marshall (admitted *pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Email: snylen@beneschlaw.com
         jmarshall@beneschlaw.com

*Counsel to Defendants Rob Archambault, Terry Taft, and Bob Unfried*